UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL NUNGESSER,<br><br>                              Plaintiff,<br><br>            v.<br><br>COLUMBIA UNIVERSITY,<br>TRUSTEES OF COLUMBIA UNIVERSITY,<br>LEE C. BOLLINGER, individually and as<br>agent of Columbia University, and JON KESSLER,<br>individually and as agent of Columbia University,<br><br>                              Defendants. | No. 15-cv-3216 (GHW)<br><br><u>Oral Argument Requested</u> |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE
## <u>AMENDED & SUPPLEMENTED COMPLAINT</u>

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Columbia University, Trustees of Columbia*
*University, Lee C. Bollinger, and Jon Kessler*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ............................................................................................3

ARGUMENT ................................................................................................................6

I.     Plaintiff Fails to State a Title IX Claim ............................................................6

     A.    The Conduct Alleged Was Not Sexual Harassment ............................... 8

     B.    Plaintiff Was Not Barred from Access to Educational Opportunities ................... 9

     C.    Title IX Does Not Require that Columbia Should Have Silenced or Disciplined Ms. Sulkowicz.................................................................................... 12

II.    Plaintiff Fails to State a Claim for Breach of Contract .....................................16

     A.    Confidentiality ................................................................................... 16

     B.    Retaliation ......................................................................................... 19

     C.    Gender-Based Harassment ................................................................. 20

III.   Plaintiff Fails to State a Claim for Violation of General Business Law § 349 .................20

IV.   Plaintiff's Other State Law Claims Also Fail ..................................................22

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Anthony J. Demarco, Jr., P.C.* v. *Bay Ridge Car World, Ltd.*,
    565 N.Y.S.2d 176 (N.Y. App. Div. 2d Dep't 1991) ............................................21

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)..............................................................................................6

*Babiker* v. *Ross Univ. Sch. of Med.*,
    No. 98 Civ. 1429, 2000 WL 666342 (S.D.N.Y. May 19, 2000),
    *aff'd*, 86 F. App'x 457 (2d Cir. 2004) ...............................................................16

*Barnville* v. *Mimosa Cafe*,
    No. 14 Civ. 518, 2014 WL 3582878 (S.D.N.Y. July 10, 2014) ............................6

*Chira* v. *Columbia Univ.*,
    289 F. Supp. 2d 477 (S.D.N.Y. 2003)..................................................................16

*New York* v. *Colo. State Christian Coll. of Church of Inner Power, Inc.*,
    346 N.Y.S.2d 482 (N.Y. Sup. Ct. 1973) ..............................................................21

*Corcino* v. *Filstein*,
    820 N.Y.S.2d 220 (N.Y. App. Div. 1st Dep't 2006) ...........................................22

*Davis* v. *Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999).......................................................................................*passim*

*Dawson* v. *N.Y.C. Transit Auth.*,
    No. 13 Civ. 06593, 2014 WL 5343312 (S.D.N.Y. Oct. 21, 2014) ...................6, 14

*DeJesus* v. *Sears, Roebuck & Co., Inc.*,
    87 F.3d 65 (2d Cir. 1995),
    *cert. denied*, 519 U.S. 1007 (1996).....................................................................25

*Doe* v. *East Haven Bd. of Educ.*,
    200 F. App'x 46 (2d Cir. 2006) ............................................................................9

*Doe* v. *Univ. of Mass.-Amherst*,
    No. 14 Civ. 30143, 2015 WL 4306521 (D. Mass. July 14, 2015)..........................7

*Faiaz* v. *Colgate Univ.*,
    64 F. Supp. 3d 336 (N.D.N.Y. 2014).....................................................................22

*Ferguson* v. *City of N.Y.*,
    988 N.Y.S.2d 207 (N.Y. App. Div. 2d Dep't 2014) ............................................23

*Fraad-Wolff* v. *Vassar Coll.*,
932 F. Supp. 88 (S.D.N.Y. 1996) ...................................................................24

*Gagliardo* v. *Arlington Cent. Sch. Dist.*,
489 F.3d 105 (2d Cir. 2007) .........................................................................2

*Gally* v. *Columbia Univ.*,
22 F. Supp. 2d 199 (S.D.N.Y. 1998) ...........................................................16

*Genesco Entm't* v. *Koch*,
593 F. Supp. 743 (S.D.N.Y. 1984) ..............................................................21

*Gomez-Jimenez* v. *New York Law Sch.*,
956 N.Y.S.2d 54 (N.Y. App. Div. 1st Dep't 2012) .....................................21

*Hawkins* v. *Sarasota Cnty. Sch. Bd.*,
322 F.3d 1279 (11th Cir. 2003) ...................................................................10

*Hayut* v. *State Univ. of N.Y.*,
352 F.3d 733 (2d Cir. 2003)...........................................................................8

*Heskin* v. *Insite Adver., Inc.*,
No. 03 Civ. 2598, 2005 WL 407646 (S.D.N.Y. Feb. 22, 2005) .................22

*Hill* v. *Cundiff*,
No. 13-15444, 2015 WL 4747048 (11th Cir. Aug. 12, 2015) ....................10

*Holmes* v. *Lorch*,
329 F. Supp. 2d 516 (S.D.N.Y. 2004)..........................................................23

*Huron Grp., Inc.* v. *Pataki*,
785 N.Y.S.2d 827 (N.Y. Sup. Ct. 2004) ......................................................19

*James* v. *DeGrandis*,
138 F. Supp. 2d 402 (W.D.N.Y. 2011) .........................................................24

*Jus Punjabi, LLC* v. *Get Punjabi Inc.*,
No. 14 Civ. 3318, 2015 WL 2400182 (S.D.N.Y. May 20, 2015)..................3

*Kickertz* v. *New York Univ.*,
971 N.Y.S.2d 271 (N.Y. App. Div. 1st Dep't 2013) ...................................20

*Kinsman* v. *Fla. State Univ. Bd. of Trs.*,
No. 15 Civ. 235, ECF No. 69 (N.D. Fla. Aug. 12, 2015) ...........................10

*Lloyd* v. *MBNA Am. Bank, N.A.*,
27 F. App'x 82 (3d Cir. 2002) .....................................................................19

*Maas* v. *Cornell Univ.*,
   721 N.E.2d 966 (N.Y. 1999) ...................................................................16

*Mastrovincenzo* v. *City of N.Y.*,
   435 F.3d 78 (2d Cir. 2006) ......................................................................14

*McCauley* v. *Univ. of the Virgin Islands*,
   618 F.3d 232 (3d Cir. 2010) ......................................................................2

*Mendez* v. *Bank of Am. Home Loans Servicing, LP*,
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) .......................................................23

*Murrell* v. *Sch. Dist. No. 1*,
   186 F.3d 1238 (10th Cir. 1999) ..................................................................8

*Nabozny* v. *Podlesny*,
   92 F.3d 446 (7th Cir. 1996) ......................................................................11

*New York Univ.* v. *Cont'l Ins. Co.*,
   662 N.E.2d 763 (N.Y. 1995) .....................................................................20

*Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*,
   633 F.3d 81 (2d Cir. 2011).....................................................................2, 15

*T.P. ex rel. Patterson* v. *Elmsford Union Free Sch. Dist.*,
   No. 11 Civ. 5133, 2012 WL 860367 (S.D.N.Y. Feb. 27, 2012) .................22

*Regents of Univ. of Mich.* v. *Ewing*,
   474 U.S. 214 (1985)...............................................................................2, 15

*Riccio* v. *New Haven Bd. of Educ.*,
   467 F. Supp. 2d 219 (D. Conn. 2006) ..........................................................8

*Romer* v. *Bd. of Trs. of Hobart & William Smith Colls.*,
   842 F. Supp. 703 (W.D.N.Y. 1994) ...........................................................23

*Routh* v. *Univ. of Rochester*,
   981 F. Supp. 2d 184 (W.D.N.Y. 2013) .............................................7, 12, 24

*Sahm* v. *Miami Univ.*,
   No. 14 Civ. 698, 2015 WL 2406065 (S.D. Ohio May 20, 2015)...............7

*Sanches* v. *Carrollton-Farmers Branch Indep. Sch. Dist.*,
   647 F.3d 156 (5th Cir. 2011) ......................................................................9

*Sauerhaft* v. *Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*,
   No. 05 Civ. 09087, 2009 WL 1576467 (S.D.N.Y. June 2, 2009), *aff'd sub nom. R.S.* v. *Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371 F. App'x 231 (2d Cir. 2010) ..........................................................................11, 15

*Scott* v. *WorldStarHipHop, Inc.*,
   No. 10Civ. 9538, 2011 WL 5082410 (S.D.N.Y. Oct. 25, 2011) .........................7

*Sheehy* v. *New Century Mortg. Corp.*,
   690 F. Supp. 2d 51 (E.D.N.Y. 2010) ...............................................................20

*People ex rel. Spitzer* v. *Applied Card Sys., Inc.*,
   805 N.Y.S.2d 175 (N.Y. App. Div. 3d Dep't 2005) .........................................21

*Strauss* v. *N.Y. Dep't of Educ.*,
   805 N.Y.S.2d 704 (N.Y. App. Div. 3d Dep't 2005) .........................................22

*Sweezy* v. *New Hampshire*,
   354 U.S. 234 (1957)............................................................................................14

*T.Z.* v. *City of N.Y.*,
   634 F. Supp. 2d 263 (E.D.N.Y. 2009) ...........................................................8, 11

*Talbot* v. *N.Y. Inst. of Tech.*,
   639 N.Y.S.2d 135 (N.Y. App. Div. 2d Dep't 1996) .........................................23

*Teller* v. *Bill Hayes, Ltd.*,
   630 N.Y.S.2d 769 (N.Y. App. Div. 2d Dep't 1995) .........................................20

*Tesoriero* v. *Syosset Cent. Sch. Dist.*,
   382 F. Supp. 2d 387 (E.D.N.Y. 2005) ..........................................................8, 23

*Theno* v. *Tonganoxie Unified Sch. Dist No. 464*,
   377 F. Supp. 2d 952 (D. Kan. 2005).................................................................8

*Tyrrell* v. *Seaford Union Free Sch. Dist.*,
   792 F. Supp. 2d 601 (E.D.N.Y. 2011) .............................................................11

*Vance* v. *Spence Cnty. Pub. Sch. Dist.*,
   231 F.3d 253 (6th Cir. 2000) ...........................................................................8

*Vought* v. *Teachers Coll., Columbia Univ.*,
   511 N.Y.S.2d 880 (N.Y. App. Div. 2d Dep't 1987) .........................................23

*Ward* v. *New York Univ.*,
   No. 99 Civ. 8733, 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000).........................23

*Watts* v. *Jackson Hewitt Tax Serv. Inc.*,
  579 F. Supp. 2d 334 (E.D.N.Y. 2008) ................................................................20

*Weinstock* v. *Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000)....................................................................................22

*Wolfe* v. *Fayetteville, Ark. Sch. Dist.*,
  648 F.3d 860 (8th Cir. 2011) ..................................................................................9

*Yu* v. *Vassar Coll.*,
  No. 13 Civ. 4373, 2015 WL 1499408 (S.D.N.Y. Mar. 31, 2015) ..........7, 12, 22, 23

*Yusuf* v. *Vassar Coll.*,
  35 F.3d 709 (2d Cir. 1994)......................................................................................6

*Zucco Partners, LLC* v. *Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................25

**Statutes**

20 U.S.C. §§ 1681–88............................................................................... *passim*

20 U.S.C. § 1011a ................................................................................................13

N.Y. Executive Law § 296....................................................................................22

N.Y. General Business Law § 349.................................................................20, 21, 22

Defendants Columbia University, the Trustees of Columbia University (together, "Columbia" or "the University"), Lee C. Bollinger, and Jon Kessler respectfully submit this memorandum in support of Defendants' motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended & Supplemented Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff alleges that, after Columbia found him to be not responsible on a charge of sexual misconduct brought by another undergraduate, Emma Sulkowicz, Ms. Sulkowicz orchestrated a public campaign intended to protest Columbia's handling of her case. Plaintiff further alleges that Columbia permitted Ms. Sulkowicz to carry out that campaign and, by awarding her academic credit for one of her projects, encouraged her to do so. The Complaint clearly alleges that Plaintiff found Ms. Sulkowicz's protests to be personally offensive. But what his Complaint does not allege is a violation of Title IX, or any other basis on which Plaintiff is entitled to relief from this Court.

Title IX prohibits educational institutions that receive federal funds from discriminating against their students, or depriving their students of the benefits of their educational programs, on the basis of sex. A private lawsuit brought to enforce Title IX must allege intentional gender discrimination by the educational institution. Therein lies the fatal flaw in the Complaint—for however much Plaintiff alleges that Ms. Sulkowicz harassed him, or that Columbia failed to stop her, nowhere does he allege (1) that her protests constituted "sexual harassment," (2) that such harassment was so "severe" and "pervasive" that it effectively excluded him from access to educational opportunities, and (3) that Columbia demonstrated "deliberate indifference" to the alleged harassment in the sense that its response to Ms. Sulkowicz's actions was "clearly unreasonable" under the circumstances.

Plaintiff's Complaint reflects his view that Columbia had an obligation under Title IX to silence Ms. Sulkowicz, preventing her from speaking publicly on the issue of sexual assault on college campuses—an issue of national concern. The core of his Complaint appears to be Plaintiff's allegation that the University should have prevented Ms. Sulkowicz from carrying a mattress around campus as part of her protests. However, at colleges and universities like Columbia the "atmosphere of speculation, experiment, and creation is essential to the quality of higher education." *McCauley* v. *Univ. of the Virgin Islands,* 618 F.3d 232, 243 (3d Cir. 2010). Title IX was never intended to curb this cherished tradition of vigorous, even raucous, debate. Moreover, the academic, curricular, and disciplinary determinations of universities like Columbia are accorded great deference by the courts. *Regents of Univ. of Mich.* v. *Ewing*, 474 U.S. 214, 226 (1985) (recognizing a "reluctance to trench on the prerogatives" of educational institutions (quoting *Keyishian* v. *Bd. of Regents*, 385 U.S. 589, 603 (1967))). Indeed, because only in "rare education cases [is] it [] appropriate for a court to intervene," *Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011), "federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy,'" *Gagliardo* v. *Arlington Cent. Sch. Dist.,* 489 F.3d 105, 113 (2d Cir. 2007) (quoting *Bd. of Educ. of Henrick Hudson Cent. Sch. Dist.* v. *Rowley*, 458 U.S. 176, 206, 208 (1982)).

What Plaintiff asks this Court to do is to second guess the kinds of decisions made by professors and administrators at Columbia in applying disciplinary and academic policies, respecting free speech, and preventing sexual misconduct, as Columbia did in good faith here. This Court cannot and should not accept Plaintiff's invitation to do so.

# STATEMENT OF FACTS

The University, informed by guidance from the federal government,[1] has implemented, and continues to update and implement, policies for investigating and disciplining gender-based misconduct. These policies define such misconduct, provide procedures for the investigatory and hearing processes, and clarify the extent to which confidentiality applies to these proceedings, making clear that although privacy and confidentiality are encouraged, they are not guaranteed. *See* 2013 Gender-Based Misconduct Policies for Students ("2013 Policy") at 2, 10–12, 14–15; 2014 Gender-Based Misconduct Policy for Students ("2014 Policy") at 5, 6–7, 11–18. The Policies also prohibit retaliation for participation in a gender-based misconduct proceeding. *See* 2013 Policy at 11; 2014 Policy at 10, 20.

In the spring of 2013, then Columbia sophomore Emma Sulkowicz filed a complaint against Plaintiff for sexual misconduct, alleging that during an otherwise consensual encounter, Plaintiff physically restrained and raped her.[2] (Compl. ¶¶ 26, 33.) Pursuant to its procedures, the University began an investigation into Ms. Sulkowicz's allegations. (*Id.* ¶ 34.) On October 29, 2013, the University convened a panel that heard testimony from both Ms. Sulkowicz and Plaintiff, and ultimately found Plaintiff "not responsible" for non-consensual sexual intercourse based on a preponderance of the evidence standard. (*Id.* ¶¶ 34–35.) Ms. Sulkowicz appealed that decision, and on November 20, 2013, the University denied her appeal and affirmed the finding that Plaintiff was not responsible. (*Id.* ¶ 44.)

---

[1]  *See generally* U.S. Dep't of Educ., Office of Civil Rights ("OCR"), Questions & Answers on Title IX & Sexual Violence (Apr. 29, 2014); OCR, Dear Colleague Letter (Apr. 4, 2011) ("2011 Dear Colleague Letter"); OCR, Dear Colleague Letter (July 28, 2003); OCR, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties (Jan. 19, 2001) ("2001 OCR Guidance").

[2]  Defendants assume the facts stated herein by Plaintiff to be true solely for the purposes of this motion to dismiss. *Jus Punjabi, LLC* v. *Get Punjabi Inc.*, No. 14 Civ. 3318, 2015 WL 2400182, at *3 (S.D.N.Y. May 20, 2015) (Woods, J.) ("[A] court must accept all factual allegations as true and draw all inferences in the plaintiff's favor.").

Thereafter, three additional complaints were filed against Plaintiff by other Columbia students, two female and one male. (*Id.* ¶¶ 39–40, 100–02.) None of these resulted in a University determination that Plaintiff was responsible for the alleged misconduct. (*Id.*) In one of those proceedings, the University terminated the investigation after concluding there was a lack of reasonable suspicion, and in the other two, Plaintiff was found not responsible at the conclusion of the proceedings. (*Id.*)

The Complaint identifies a number of incidents that occurred in the aftermath of the University's finding that Plaintiff was "not responsible" with respect to the complaint filed by Ms. Sulkowicz. First, it alleges that another undergraduate student who was the president of Plaintiff's co-ed fraternity where Plaintiff and Ms. Sulkowicz were both members notified the alumni board and certain other student members that "an alleged rapist" was living at the fraternity house. (*Id.* ¶ 47.) It also alleges that Plaintiff was "ambushed" in December 2013 by reporters from the New York Post and followed by a paparazzo. (*Id.* ¶ 48.) Lastly, it alleges that Ms. Sulkowicz spoke to a reporter for Bwog, an independent, student-run news site,[3] as part of a January 2014 article on sexual assault. (*Id.* ¶ 49.)

Other than these alleged incidents, Plaintiff was not publicly identified until May 2014, when his name appeared along with the names of other students in bathroom graffiti and on flyers on campus. (*Id.* ¶ 58.) Plaintiff does not allege that it was Ms. Sulkowicz who was responsible for the bathroom graffiti or the flyers. (*Id.*) Plaintiff also does not allege that the University failed to remove the offending graffiti or that the perpetrators were known to the University. (*Id.*) The Complaint alleges that the Columbia Spectator, another independent, student-run publication,[4] published an article in May reporting on Ms. Sulkowicz's frustration

---

[3]    *See* Bwog.com, About Us, http://bwog.com/about/.
[4]    *See* Columbia Daily Spectator, About Us, http://columbiaspectator.com/about-us.

with the University's decision in her case, identifying Plaintiff as the respondent, and her filing of a police report. (*Id.* ¶¶ 63–64.) Plaintiff does not deny that Ms. Sulkowicz did in fact file such a police report naming him and does not allege that Columbia's policies would have prevented her from doing so. (*Id.* ¶¶ 64–66.)

Motivated by her view that the University had mishandled her case and in an effort to raise awareness about sexual assault on campus, Ms. Sulkowicz, a visual arts major, then began a performance or "endurance" art project entitled "Mattress Performance (Carry That Weight)" ("Thesis Project") in fulfillment of her senior thesis requirement. (*Id.* ¶¶ 68–77.) The Thesis Project was intended to highlight the issue of sexual assault on college campuses but was not focused on Plaintiff and did not mention him by name. (*Id.* ¶¶ 71–72.) Ms. Sulkowicz commenced her project in September 2014, the fall of her senior year, and the project attracted significant media and political attention. (*Id.* ¶¶ 73, 75, 78–84.)

In the spring of 2015, several weeks before he and Ms. Sulkowicz graduated, Plaintiff himself filed a complaint with the University against Ms. Sulkowicz and the male student who had filed a sexual misconduct complaint against him. (*Id.* ¶ 166.) After reviewing that complaint, the University determined that the conduct in question did not constitute actionable retaliation. (*Id.*)

The Complaint also alleges that, just before graduation, in May 2015, certain art prints by Ms. Sulkowicz, depicting the alleged sexual assault and superimposed on New York Times articles about campus sexual assault that identified Plaintiff by name, were on display as part of an undergraduate visual arts thesis exhibition. (*Id.* ¶¶ 114–16.) The Complaint alleges that the Thesis Project culminated with Ms. Sulkowicz carrying the mattress onstage at Class Day in May 2015, despite having been instructed by University administrators twice not to do so.

(*Id.* ¶¶ 127–30.)  Ms. Sulkowicz and Plaintiff both graduated in May 2015 and are no longer students at the University.  (*Id.* ¶ 123.)

**ARGUMENT**

While a court, when deciding a motion to dismiss, "must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party," *Dawson* v. *N.Y.C. Transit Auth.*, No. 13 Civ. 06593, 2014 WL 5343312, at *4 (S.D.N.Y. Oct. 21, 2014) (Woods, J.), that does not mean that all of a plaintiff's allegations must be accepted at face value.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  In other words, the factual allegations "must be enough to raise a right to relief above the speculative level."  *Barnville* v. *Mimosa Cafe*, No. 14 Civ. 518, 2014 WL 3582878, at *2 (S.D.N.Y. July 10, 2014) (Woods, J.) (quoting *Bell Atl. Corp.* v. *Twombly* 550 U.S. 544, 555 (2007)).

**I.      Plaintiff Fails to State a Title IX Claim**

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  A private action against an educational institution is cognizable only when a student has been "excluded from participation in," "denied the benefits of," or "subjected to" discrimination under the institution's "programs or activities."  *See Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650, 659 (1999).

The courts have generally recognized two categories of Title IX claims:  (1) in the context of student discipline, claims of an erroneous outcome from a flawed disciplinary proceeding or selective enforcement, *Yusuf* v. *Vassar Coll.,* 35 F.3d 709, 714–15 (2d Cir. 1994);

and (2) claims of "deliberate indifference" to known student-on-student or teacher-on-student harassment. *Davis*, 526 U.S. at 643.

Any claim under a selective enforcement or erroneous outcome theory must fail because the Complaint contains no allegations that any disciplinary actions or decisions by the University were motivated by Plaintiff's gender, as would be required to substantiate such a claim. *Yu* v. *Vassar Coll.*, No. 13 Civ. 4373, 2015 WL 1499408, at *11, *27 (S.D.N.Y. Mar. 31, 2015).[5] As discussed below, however, Plaintiff fails to plead a Title IX claim under a "deliberate indifference" theory as well.

The United States Supreme Court, in *Davis* v. *Monroe County Board of Education*, 526 U.S. 629 (1999), first extended the scope of Title IX liability to reach discriminatory harassment of students by other students. The Court took pains to explain that while liability for student-on-student harassment can exist under Title IX, it must be confined to "certain limited circumstances," where the school's "own deliberate indifference effectively '*cause[d]*' the discrimination." *Id.* at 642–43 (alteration in original) (emphasis added). Thus, according to the Supreme Court, when a plaintiff alleges discriminatory harassment by other students, a University can be liable for the alleged harassment only when the following three conditions are satisfied: (1) the harassment must be "sexual" in nature; (2) the harassment must be "so severe, pervasive, and objectively offensive," and must have "so undermine[d]" and

---

[5]    Selective enforcement or erroneous outcome claims under Title IX have become more common in recent years, typically when male students complain they were erroneously found to have engaged in sexual misconduct at their college or university. *See, e.g., Doe* v. *Univ. of Mass.-Amherst*, No. 14 Civ. 30143, 2015 WL 4306521 (D. Mass. July 14, 2015); *Sahm* v. *Miami Univ.*, No. 14 Civ. 698, 2015 WL 2406065 (S.D. Ohio May 20, 2015); *Yu*, 2015 WL 1499408; *Routh* v. *Univ. of Rochester*, 981 F. Supp. 2d 184 (W.D.N.Y. 2013).  Plaintiff, however, is not alleging here that the outcomes of the proceedings against him were "erroneous" or that they somehow violated Title IX.  To the extent that Plaintiff is pursuing an erroneous outcome claim in connection with the University's decision not to pursue Ms. Sulkowicz for her protests, Defendants are not aware of any cases in which an "erroneous outcome" or "flawed proceeding" claim was asserted based on a school's *failure* to discipline a student.  Rather, the theory is invoked in cases where the target of a disciplinary action is challenging that action.  *E.g., Scott* v. *WorldStarHipHop, Inc.*, No. 10 Civ. 9538, 2011 WL 5082410, at *5 (S.D.N.Y. Oct. 25, 2011).

"detract[ed]" from the student's educational experience that it effectively "bar[red]" the student from access to educational opportunities or benefits; and (3) the school demonstrated "deliberate indifference" to known acts of harassment because its actions were "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 633, 650; *Hayut* v. *State Univ. of N.Y.*, 352 F.3d 733, 749–50 (2d Cir. 2003); *Tesoriero* v. *Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005); *see also* 2001 OCR Guidance, Preamble. The *Davis* court made it clear that this is not merely a matter of evidentiary proof, but a pleading standard as well. 526 U.S. at 649.

### A. The Conduct Alleged Was Not Sexual Harassment

Cases finding Title IX liability based on student-on-student harassment typically concern conduct that is overtly sexual in nature, often involving allegations of sexual touching or assault. *See, e.g.*, *Vance* v. *Spence Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 256, 259 (6th Cir. 2000) (female student was repeatedly propositioned, groped, and hit over period of years, including when two male students held her while others pulled her hair and attempted to disrobe her while another began undressing and said he was going to have sex with her); *Murrell* v. *Sch. Dist. No. 1*, 186 F.3d 1238, 1243–44 (10th Cir. 1999) (disabled female student alleged repeated sexual assault, including incident witnessed by janitor yet teachers told her not to tell her mother about the incidents); *T.Z.* v. *City of N.Y.*, 634 F. Supp. 2d 263, 271 (E.D.N.Y. 2009) (middle school special needs student groped by male student who held her down while another male student removed her clothing and touched her buttocks as several other students watched). Similarly, such cases frequently involve allegations of the use of gender-related slurs such as "bitch," "whore," "faggot," or "dyke." *See, e.g.*, *Vance*, 231 F.3d at 256 ("whore"); *Riccio* v. *New Haven Bd. of Educ.*, 467 F. Supp. 2d 219, 222 (D. Conn. 2006) ("dyke," "bitch"); *Theno* v. *Tonganoxie*

*Unified Sch. Dist No. 464*, 377 F. Supp. 2d 952, 968 (D. Kan. 2005) ("faggot," "jack-off boy," "queer," "flamer"). Plaintiff has not alleged any student-on-student harassment like this here.

Moreover, in order to be actionable, the alleged harassment must be *because of gender*, not "merely tinged with offensive sexual connotations." *See Wolfe* v. *Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 864 (8th Cir. 2011) (quoting *Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)). Here, Ms. Sulkowicz's Thesis Project and other public statements were a criticism of Columbia's treatment of what she claimed to be a sexual assault committed against her by a male fellow student. Her protests concerned Columbia's (and perhaps Plaintiff's) alleged *conduct*, not Plaintiff's *status* as a male. Even if Ms. Sulkowicz's public statements (which did not identify Plaintiff by name) were construed to be *ad hominem* attacks on Plaintiff, personal animus is not the same thing as gender animus, and only the latter can form the basis of a Title IX violation. *See, e.g.*, *Sanches* v. *Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165–66 (5th Cir. 2011) (finding taunting and buttock slapping to be insufficient to state a claim on the basis of sex because "[t]here is nothing in the record to suggest that [the harasser] was motivated by anything other than personal animus").[6]

B.    **Plaintiff Was Not Barred from Access to Educational Opportunities**

In the situation of student-on-student harassment, a mere finding of sexual harassment is not enough. In order to be actionable under Title IX, student-on-student sexual harassment must also be "so severe, pervasive, and objectively offensive" that it is "serious enough to have the systemic effect of denying the victim equal access to" education. *Davis*, 526

---

[6]    The Second Circuit's summary order in *Doe* v. *East Haven Board of Education*, 200 F. App'x 46 (2d Cir. 2006), affirming the denial of a Rule 50 motion after a jury verdict in plaintiff's favor, is not to the contrary. There, a student who claimed she was raped by two fellow students was subsequently subjected to verbal abuse by other students. *Id.* at 47–48. In finding that the harassment "would not have occurred but for the girl's sex," the court pointed to not only harassment concerning her rape allegation, but also to the fact that the harassment consisted of persistent name-calling (names like "slut" and "whore") that "reflect[ed] sex-based stereotypes." *Id.* at 48.

U.S. at 652. Thus, the "effects of the harassment [must] touch the whole or entirety of an educational program or activity." *Hawkins* v. *Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th Cir. 2003).

First, Plaintiff has not alleged any "overt, physical deprivation of access to school resources," *Davis*, 526 U.S. at 650, or "concrete, negative effect on . . . [his] ability to receive an education," *Hawkins*, 322 F.3d at 1288–89. Nowhere does the Complaint allege that Plaintiff was prevented from attending classes at Columbia or otherwise accessing University resources. He does not allege that his grades suffered, that he was systematically excluded from classroom participation or attendance, or that he had to withdraw from Columbia. *See id.* at 1289 (no Title IX liability because plaintiffs did not suffer "a decline in grades" or "any change in . . . classroom participation"); *Kinsman* v. *Fla. State Univ. Bd. of Trs.*, No. 15 Civ. 235, ECF No. 69, at *10–11 (N.D. Fla. Aug. 12, 2015) (plaintiff was forced "to leave school and prevented [] from returning to continue her education"). To the contrary, Plaintiff ended up graduating on time and in good standing. While Plaintiff alleges that "[t]he Mattress Project and related events precluded [him] from attending vital on-campus career recruiting events," (Compl. ¶ 109), even after amending his Complaint, he not only fails to provide anything by way of specifics or elaboration about which career events he is talking about (or how many), but his alleged inability to attend a recruiting event does not rise to the type of "severe" conduct prohibited under Title IX in any event.

Not surprisingly, Plaintiff's allegations do not in any way approach the offensiveness, pervasiveness, or severity of cases where Title IX or similar violations have been found. In *Davis* itself, for example, a fifth-grade girl was subjected to physical and verbal sexual harassment over a prolonged period of time. 526 U.S. at 633. In *Hill* v. *Cundiff*, No. 13 Civ.

15444, 2015 WL 4747048 (11th Cir. Aug. 12, 2015), an eighth-grade girl was raped in a bathroom by a male student (who had previously been disciplined for harassment of female students) after school officials decided to use her as "bait" in a sting operation to try to "catch [the harasser] in the act." *Id.* at *17. And in *Nabozny* v. *Podlesny*, 92 F.3d 446 (7th Cir. 1996), which has been recognized as a predecessor for Title IX liability in the context of student-on-student harassment, a gay student was subjected to "various forms of physical abuse" for several years, including being spat on, pushed, attacked, assaulted, and urinated on. *Id.* at 452; *see also T.Z.*, 634 F. Supp. 2d at 271 (middle school special needs student suffered serious sexual assault); *Sauerhaft* v. *Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, No. 05 Civ. 09087, 2009 WL 1576467, at *4 (S.D.N.Y. June 2, 2009), *aff'd sub nom. R.S.* v. *Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371 F. App'x 231 (2d Cir. 2010) (finding no Title IX violation where "[i]t [wa]s undisputed that there was no physical . . . component to the harassment"). Nothing like the facts in these cases has been or could be alleged here.

What Plaintiff does allege amounts primarily to social disapproval on the part of some of his peers, including at the co-ed fraternity where he and Ms. Sulkowicz were both members. (Compl. ¶¶ 105–106.) But losing friendships because of another student's protests is not the "severe, pervasive and objectively offensive" impact that would constitute the kind of systematic educational exclusion prohibited by Title IX. For this reason, the Supreme Court pointed out in *Davis* that "[p]eer harassment, in particular, is less likely" to demonstrate a systematic denial of equal access to educational benefits. *Davis*, 526 U.S. at 653; s*ee also Tyrrell* v. *Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 623 (E.D.N.Y. 2011) (conduct "consist[ing] merely of insults, name-calling and pushing . . . is not sufficiently severe or offensive as to be actionable under Title IX").

**C.    Title IX Does Not Require that Columbia Should Have Silenced or Disciplined Ms. Sulkowicz**

Even assuming (as is not the case) that the harassment that Plaintiff alleges was sufficiently "severe, pervasive, and objectively offensive" as to systematically deny him access to an education, Columbia can be liable only if it was "deliberately indifferent" in the sense that its "response to the harassment or lack thereof [was] *clearly unreasonable* in light of the known circumstances." *Davis*, 526 U.S. at 648 (emphasis added). The *Davis* Court clarified that the adverb "clearly" has real meaning here—this "is not a mere 'reasonableness' standard." *Id.* at 649. Thus, school administrators are not required to "purg[e] their schools of actionable peer harassment," or to take "particular disciplinary action," nor does Title IX grant a student the "right to make particular remedial demands." *Id.* at 648. In other words, as Justice O'Connor explained, "there is no reason why" a court, on a motion to dismiss in an "appropriate case," should not be able to "identify a response as not 'clearly unreasonable' as a matter of law." *Id.* at 649.

As an initial matter, the Complaint does not contain any allegations that the University's actions were "clearly unreasonable" because Columbia was motivated by Plaintiff's gender. For example, Plaintiff has not alleged that the University condones the harassment of men by women, but punishes men who harass women, or that Columbia affords more free expression rights to women than to men. *See Yu*, 2015 WL 1499408, at *27 ("'[A male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University.'" (quoting *Mallory* v. *Ohio Univ.*, 76 F. App'x 634, 634 (6th Cir. 2003))); *Routh*, 981 F. Supp. 2d at 211 (student's Title IX claim against university dismissed for failure to allege that he was discriminated against because of his gender, while defamation claim against female complainant survived). Indeed, Plaintiff's own pleading, which

touts the accuracy of the results in the four University disciplinary decisions in his favor, but takes issue with the outcome of the 2015 proceeding he initiated, is inconsistent with any inference that the University was motivated by gender bias here.

Plaintiff also does not allege that the University failed to make any accommodations for him or that the University failed to act reasonably in response to his requests. To the contrary, an article cited in the Complaint reflects that Columbia had issued a no-contact order between Ms. Sulkowicz and Plaintiff. *See* Katie Van Syckle, *The Columbia Student Carrying a Mattress Everywhere Says Reporters are Triggering Rape Memories*, New York Magazine, http://nymag.com/thecut/2014/09/columbia-emma-sulkowicz-mattress-rape-performance-interview.html (Sept. 4, 2014) (cited in Compl. ¶ 66).[7]

The core of Plaintiff's case is that the University should have prevented Ms. Sulkowicz from carrying out her Thesis Project, which did not use his name or likeness. (*See, e.g.*, Compl. ¶ 182.) Because most of Plaintiff's allegations concern speech and expression by Ms. Sulkowicz and other students regarding the issue of campus sexual assault, the University also needed to be mindful of the free speech rights of its students. The applicable OCR guidance, for example, reflects a judgment that proscriptions affecting speech and expression must be implemented carefully, and therefore recognizes that some subjectively offensive speech must be tolerated. *See* OCR, Dear Colleague Letter (July 28, 2003); OCR, Questions and Answers on Title IX and Sexual Violence at 43–44 (Apr. 29, 2014); Higher Education Opportunity Act, 20 U.S.C. § 1011a(a)(2)(C) ("It is the sense of Congress that . . . an institution of higher education should facilitate the free and open exchange of ideas."). Columbia's own

---

[7] While Plaintiff alleges that he requested a public safety escort on the National Day of Action (Compl. ¶ 112), that allegation is a red herring. Plaintiff fails to allege (nor could he) that he was not accompanied by a University Public Safety officer that day. Nor has Plaintiff identified a single actual act of harassment that took place either at a sexual respect workshop (which he voluntarily attended in lieu of the option he was offered of writing a paper) (*id.* ¶ 111), or on the National Day of Action.

policies embody this same principle. *See* Columbia University, Rules of University Conduct, § 440, *available at* http://www.essential-policies.columbia.edu/university-regulations ("While the University as a private institution is not subject to the Constitutional provisions on free speech and due process of law, the University by its nature is dedicated to the free expression of ideas and to evenhanded and fair dealing with all with whom it conducts its affairs. The Rules of University Conduct are thus enacted by the University to provide as a matter of University policy the maximum freedom of expression consistent with the rights of others.").[8]

These same concerns apply to the visual arts pre-commencement exhibition containing art by Ms. Sulkowicz. (Compl. ¶¶ 114–122.) "For purposes of First Amendment coverage, the Constitution looks beyond written or spoken words as mediums of expression, extending its protection to include, *inter alia,* pictures, films, paintings, drawings, and engravings." *Mastrovincenzo* v. *City of N.Y.*, 435 F.3d 78, 91–92 (2d Cir. 2006) (internal quotation marks and citations omitted). By the time of that exhibition, Ms. Sulkowicz's views about the University's handling of her complaint against Plaintiff were already well-known, widely reported on, and part of the larger public discourse. Indeed, by that point, Plaintiff *himself* had already voluntarily spoken to the press about these issues. (*See* Compl. ¶ 80 n.31); *see also* Cathy Young, *Columbia Student: I Didn't Rape Her*, The Daily Beast (Feb. 3, 2015), http://www.thedailybeast.com/articles/2015/02/03/columbia-student-i-didn-t-rape-her.html.

As for Plaintiff's allegations that Ms. Sulkowicz received academic credit for her Thesis Project or graduated with honors (Compl. ¶ 133, 182), only the University may determine "what may be taught" and "how it shall be taught." *Sweezy* v. *New Hampshire*, 354 U.S. 234,

---

[8]    All of Columbia's policies are either incorporated by reference in the Complaint or are policies that Plaintiff knew of when bringing the instant suit. *See Dawson*, 2014 WL 5343312, at *4 (Woods, J.) ("[T]he Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.").

263 (1957). Content-based restrictions on academic pursuits are antithetical to the free expression of ideas to which Columbia—and every other great university—is committed. Academic work is not rejected at the University because it deals with uncomfortable topics or takes unpopular positions. Crediting an undergraduate student's thesis on the issue of sexual assault on college campuses is a decision at the heart of academic freedom and therefore cannot be "clearly unreasonable" under the circumstances. *See Regents of Univ. of Mich.*, 474 U.S. at 226; *Papelino*, 633 F.3d at 94 ("[C]ourts must show the 'utmost restraint' in intervening in controversies involving a student's academic qualifications."). This is especially true here, where Ms. Sulkowicz was a visual arts major and inherently subjective judgments of aesthetic value were at issue.

Finally, the *Davis* Court made a special effort to draw a distinction between the elementary school at issue in that case and a college or university, which is not "expected to exercise the same degree of control over its students that a grade school would enjoy." 526 U.S at 649. The perfect example of this point is what Plaintiff alleges happened with respect to Ms. Sulkowicz at the Class Day ceremony. By Plaintiff's own admission, "Columbia administrators approached [Ms. Sulkowicz] twice, once immediately before and once during the graduation ceremony, asking her to not to [sic] carry the mattress." (Compl. ¶ 128.) Where an institution "takes timely and reasonable measures to end [any alleged] harassment, it is not deliberately indifferent." *See Sauerhaft*, 2009 WL 1576467, at *6 n.10 (quoting *Tesoriero*, 382 F. Supp. 2d at 398). Here, taking action against Ms. Sulkowicz by literally grabbing the mattress out of her hands would have disrupted the ceremony for all the graduating students and their families and could have been dangerous given the space limitations and the size of the crowd. As a result, the University's decision not to engage in a disruptive argument and possible physical altercation

with her at commencement cannot be "clearly unreasonable" as a matter of law. *Davis*, 526 U.S. at 633.

## II.     Plaintiff Fails to State a Claim for Breach of Contract

While a student can sue his school for breach of contract, *Babiker* v. *Ross Univ. Sch. of Med.*, No. 98 Civ. 1429, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd*, 86 F. App'x 457 (2d Cir. 2004), "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted," *Gally* v. *Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998). In other words, "[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student." *Id.*

Thus, in order to properly state a contract claim, a student must identify the specific representation that supposedly creates a contractual obligation. *See Chira* v. *Columbia Univ.*, 289 F. Supp. 2d 477, 485–86 (S.D.N.Y. 2003); *Maas* v. *Cornell Univ.*, 721 N.E.2d 966, 969–70 (N.Y. 1999). Here, however, Plaintiff identifies no specific provision in Columbia's Policies that would have required the University to take any specific action against Ms. Sulkowicz, such as not offering credit for her Thesis Project.

### A.     Confidentiality

To the extent that Plaintiff's breach of contract claim rests on the assertion that the University should have acted to address an alleged violation of the 2013 and 2014 Policies' confidentiality provisions, there is no language in those Policies that creates such an obligation. University Policies require only that Columbia officials (not students) maintain the confidentiality of disciplinary proceedings. For example, the 2013 Policy, in effect until August 2014 (and therefore, the policy applicable to any alleged public identification of Plaintiff following the disciplinary proceeding), states in relevant part as follows:

The University will make all reasonable efforts to maintain the confidentiality and privacy of the parties involved in gender-based misconduct investigations, restricting information to those with a legitimate need to know. Individuals participating in an investigation, proceeding, or hearing are encouraged to maintain the privacy of the process . . . . Strictly confidential on-campus resources include counseling services, medical care providers, the Rape Crisis/Anti-Violence Support Center, and clergy members. All other University administrators, such as faculty and advising staff, *cannot promise strict confidentiality* but can provide private support.

2013 Policy at 10 (emphasis added).[9]

Plaintiff does not (and cannot) allege that any University official disclosed his name or identity at any point in time. While he alleges that his co-ed fraternity president and that New York Post reporters knew his identity, he does not allege that University officials alerted these individuals to his identity. (Compl. ¶ 241.) Indeed, it was not until May 2014 that Plaintiff's name allegedly was made known to the general public, appearing in bathroom graffiti and in a Columbia Spectator article. Plaintiff does not allege that any University personnel were responsible either for the bathroom graffiti or that article. (*Id.* ¶ 58.) Nor do his allegations regarding the art exhibition state a claim for breach of contract: as discussed above, Plaintiff's name had already been publicized well before the pre-commencement exhibition began.

Contrary to Plaintiff's allegations, neither the 2013 Policy nor the 2014 Policy restricts a complainant from discussing the conduct that underlies a gender-based misconduct complaint. While University personnel must take reasonable efforts to protect confidentiality,

---

[9] Plaintiff actually misquotes the 2013 Policy as stating: "Breaches of confidentiality/privacy or retaliation against any person involved in the investigation, including the complainant, respondent, witnesses, or the investigators, may result in additional disciplinary action." (Compl. ¶ 159.) This language is from the 2012 Gender-Based Misconduct Policies for Students and does not appear in either the 2013 Policy or 2014 Policy. The 2014 Policy, which did not come into effect until August 2014, makes this point even more explicitly in stating: "*The University will reveal information about its investigations and adjudication of gender-based misconduct only to those who need to know the information in order to carry out their duties and responsibilities*. . . . [The University] will inform all University personnel participating in an investigation, proceeding, or hearing that they are expected to maintain the privacy of the process. This does not prohibit either a complainant or respondent from obtaining the assistance of family members, counselors, therapists, clergy, doctors, attorneys, or similar resources." 2014 Policy at 11.

and while students like Plaintiff and Ms. Sulkowicz are "*encouraged* to maintain" privacy, they are "not prohibit[ed] . . . from obtaining the assistance of family members, counselors, therapists, clergy, doctors, attorneys, or similar resources," and the University does not prevent individuals from discussing their own experiences.  2013 Policy at 10 (emphasis added); 2014 Policy at 11.  This, again, is consistent with the applicable OCR guidance which frowns upon gag orders on complainants in gender-based misconduct proceedings.  2011 Dear Colleague Letter at 14 ("[P]ostsecondary institutions may not require a complainant to abide by a nondisclosure agreement, in writing or otherwise, that would prevent redisclosure of [information a University must disclose under FERPA and the Clery Act, including the outcome of any institutional disciplinary proceeding brought alleging a sex offense].").

Columbia's Policies also do not prohibit a student complainant from contacting law enforcement officials, as Ms. Sulkowicz  is alleged to have done here.  (Compl. ¶ 61); 2013 Policy at 9 ("Students may also choose to file a report with the New York City Police Department or the local law enforcement agency where the misconduct occurred."); 2014 Policy at 7 ("Students may report gender-based misconduct to the New York City Police Department, the Manhattan District Attorney's Office, or the local law enforcement agency where the misconduct occurred if the misconduct occurred outside of New York City.").  There are important reasons why the Policies are written this way.  It surely cannot be the case that a complainant, by availing herself of Columbia's gender-based misconduct policies and procedures, gives up the right to otherwise discuss the conduct about which she complained so that she is prevented from speaking in a way that she would not have been had she never chosen to bring a complaint in the first place.

### B. Retaliation

Plaintiff claims that the University should have acted in response to an alleged violation of the Policies' anti-retaliation provisions. (Compl. ¶ 166.) The 2014 Policy defines retaliation as "[a]ny adverse action, or attempted adverse action, against an individual . . . *because of their participation* in any manner in an investigation, proceeding, or hearing." 2014 Policy at 20 (emphasis added). The conduct alleged by Plaintiff here does not constitute an adverse action against him *because of* his *participation* in a disciplinary proceeding. A far more plausible inference is that Ms. Sulkowicz's actions were motivated not by Plaintiff's participation in the disciplinary proceeding which had concluded before her protests began, but instead by her disagreement with the outcome of that proceeding and her belief that more public attention needs to be paid to victims of campus sexual assault.

In addition, the 2013 Policy does not require that the University take disciplinary action in the event of retaliatory action, but instead suggests only that retaliation "*may* result in disciplinary action." 2013 Policy at 11 (emphasis added). Such permissive language necessarily denotes discretion on the part of Columbia. *See Huron Grp., Inc.* v. *Pataki*, 785 N.Y.S.2d 827, 851 (N.Y. Sup. Ct. 2004) (contrasting the word "shall" in one contractual provision with the word "may" in a different provision); *see also Lloyd* v. *MBNA Am. Bank, N.A.*, 27 F. App'x 82, 85 (3d Cir. 2002) ("The use of the word 'may' ipso facto makes this provision not mandatory.").[10] Moreover, Columbia administrators are routinely called upon to apply Columbia's Policies, which cover diverse topics such as campus safety, student conduct, free speech, and academic standards. Here, as discussed above, while Columbia has an anti-

---

[10] The 2013 Policy was in effect only until August 2014 (when it was superseded by the 2014 Policy) and therefore was not applicable to much of the conduct alleged in the Complaint, including when Plaintiff filed his retaliation complaint against Ms. Sulkowicz in 2015.

retaliation policy, it also has a policy about the importance of free speech on campus. *See* Columbia University, Rules of University Conduct, § 440.

### C. Gender-Based Harassment

Plaintiff's breach of contract theory based on the University's gender-based harassment policy fares no better. To constitute gender-based harassment under the University's Policies, "the conduct must unreasonably interfere with an individual's education or educational activities or create an intimidating, hostile, demeaning, or offensive academic or living environment." 2014 Policy at 20; *see* 2013 Policy at 3. Plaintiff's claim for breach of this provision therefore fails for exactly the same reasons as his deliberate indifference claim discussed above.

### III. Plaintiff Fails to State a Claim for Violation of General Business Law § 349

To state a claim under Section 349 of New York's General Business Law ("GBL"), "a plaintiff must allege that the defendant's challenged act was consumer-oriented and materially misleading and resulted in injury to the plaintiff." *Kickertz* v. *New York Univ.*, 971 N.Y.S.2d 271, 277 (N.Y. App. Div. 1st Dep't 2013). GBL § 349 was intended "to empower consumers, especially the disadvantaged and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses." *Watts* v. *Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008) (internal quotation marks omitted).

Thus, a plaintiff must demonstrate "that the acts or practices have a broad impact on consumers at large," *Sheehy* v. *New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 74 (E.D.N.Y. 2010) (internal quotation marks omitted), and are not "limited to just the parties," *Teller* v. *Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (N.Y. App. Div. 2d Dep't 1995). *See also New York Univ.* v. *Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) ("Private contract disputes unique to the parties . . . would not fall within the ambit of [GBL § 349]." (quoting *Oswego Laborers' Local*

*214 Pension Fund* v. *Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995))).  The "[t]ypical violation" under GBL § 349 "involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Genesco Entm't* v. *Koch*, 593 F. Supp. 743, 751 (S.D.N.Y. 1984).  These include a lender's direct mail solicitations informing consumers that they had been pre-approved for credit limits, but failing to state that most consumers did not receive even half of the amount listed, *People ex rel. Spitzer* v. *Applied Card Sys., Inc.*, 805 N.Y.S.2d 175 (N.Y. App. Div. 3d Dep't 2005), or delivery of an automobile by a dealer without notifying the purchaser that the automobile was subject to recall, *Anthony J. Demarco, Jr., P.C.* v. *Bay Ridge Car World, Ltd.*, 565 N.Y.S.2d 176 (N.Y. App. Div. 2d Dep't 1991).

While GBL § 349 claims have been pursued in the educational context, they have succeeded only when the factual allegations meet this demanding standard.  Thus, in *New York* v. *Colorado State Christian College of Church of Inner Power, Inc.*, 346 N.Y.S.2d 482 (N.Y. Sup. Ct. 1973), the court held that the plaintiff had stated a claim when the defendant, which sold doctoral degrees through the mail, had no trained faculty, no formal entrance requirements, no accredited curriculum, no physical presence, and therefore did not "qualify as a college or institution of higher learning."  *Id.* at 484.  Similarly, in *Gomez-Jimenez* v. *New York Law Sch.*, 956 N.Y.S.2d 54 (N.Y. App. Div. 1st Dep't 2012), the First Department recently affirmed a trial court's dismissal of a GBL § 349 claim against New York Law School on the theory that even though the postgraduate employment statistics and salary data that it published were so "incomplete" that they were "less than candid," a party does not violate GBL § 349 by "simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information."  *Id.* at 58–59.

The same principles require the dismissal of Plaintiff's GBL § 349 claim here. Plaintiff alleges that Columbia caused him "to believe that Columbia would follow its policies," and that "Columbia had no intention of following its own policies and procedures when it . . . knowingly permit[ed] Columbia student Emma [] to engage in prolonged gender-based harassment and misconduct." (Compl. ¶¶ 262–63.) But Columbia's "policies and procedures" do not constitute the kind of concrete, fraudulent guarantees impacting consumers at large prohibited by GBL § 349. *See Corcino* v. *Filstein*, 820 N.Y.S.2d 220, 221 (N.Y. App. Div. 1st Dep't 2006). Indeed, the fact that, as discussed above, Columbia substantially complied with its own procedures defeats Plaintiff's GBL § 349 claim here in any event. *Yu*, 2015 WL 1499408, at *29.

## IV.     Plaintiff's Other State Law Claims Also Fail

"Claims under the New York Human Rights Law are evaluated under the same standard as analogous claims under Title IX." *T.P. ex rel. Patterson* v. *Elmsford Union Free Sch. Dist.*, No. 11 Civ. 5133, 2012 WL 860367, at *9 (S.D.N.Y. Feb. 27, 2012); *see also Weinstock* v. *Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000). Thus, Plaintiff's Executive Law §§ 296(4) and (6) claims, brought against the University as well as Defendants Bollinger and Kessler, fail for the same reasons as his Title IX claims.[11]

Plaintiff's claim for breach of the covenant of good faith and fair dealing fails because it is duplicative of his breach of contract claim. It is black letter law that the same facts cannot give rise to both a claim for breach of contract and a claim for breach of an implied duty

---

[11]    Because Plaintiff has failed to plead a violation of § 296(4), his § 296(6) claims against Defendants Bollinger and Kessler also must fail. *See Strauss* v. *N.Y. Dep't of Educ.*, 805 N.Y.S.2d 704, 709 (N.Y. App. Div. 3d Dep't 2005). And even if Plaintiff had sufficiently pled discrimination under 296(4), he has not met the second prong of a 296(6) claim, which requires him to plead facts showing that Defendants Bollinger and Kessler took part in the discrimination or displayed an intent to discriminate. *Heskin* v. *Insite Adver., Inc.*, No. 03 Civ. 2598, 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005); *see also Faiaz* v. *Colgate Univ.*, 64 F. Supp. 3d 336, 367 (N.D.N.Y. 2014) (failure to state a 296(6) claim based on "lack of personal involvement" by the university president in the alleged discrimination).

of good faith and fair dealing.  *See, e.g.*, *Mendez* v. *Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 651–52 (E.D.N.Y. 2012).

A claim for promissory estoppel cannot survive where, as here, "defendants have neither breached the implicit contract between the parties nor violated the University's rules and procedures."  *Ward* v. *New York Univ.*, No. 99 Civ. 8733, 2000 WL 1448641, *6 (S.D.N.Y. Sept. 28, 2000); *accord Holmes* v. *Lorch*, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004).  To the extent Plaintiff's claim is one of equitable estoppel for intentional failure to follow procedures, it fails where (and again, as here) the applicable procedures were in fact followed.  *Yu*, 2015 WL 1499408, at *29; *Romer* v. *Bd. of Trs. of Hobart & William Smith Colls.*, 842 F. Supp. 703, 710 (W.D.N.Y. 1994).

Plaintiff also fails to state a claim for negligence.  Absent some separate voluntary undertaking, a university owes its students no other, non-contractual duty of care.  *See, e.g.*, *Talbot* v. *N.Y. Inst. of Tech.*, 639 N.Y.S.2d 135, 136–37 (N.Y. App. Div. 2d Dep't 1996); *Vought* v. *Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881–82 (N.Y. App. Div. 2d Dep't 1987). Universities in New York do not owe an *in loco parentis* duty of care to their students, *see* *Talbot*, 639 N.Y.S.2d at 136–37, and even if they did, such duty clearly would not extend to the individual defendants in any event.  *See Ferguson* v. *City of N.Y.*, 988 N.Y.S.2d 207, 208 (N.Y. App. Div. 2d Dep't 2014).

Finally, the hurdles for pleading the common law tort of intentional infliction of emotional distress in New York are extremely high.  Plaintiff fails to plead, as he must, that the University and the individual defendants "*intended* to cause [him] severe emotional distress."  *Tesoriero*, 382 F. Supp. 2d at 403.  Nor does Plaintiff allege conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

23

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," as is required in order to state such a claim. Indeed, in New York, "[e]ven a false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim." *James* v. *DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2011); *see also Routh*, 981 F. Supp. at 215 (dismissing claim against student-employee who allegedly made false charges of rape to University, police, and family court); *Fraad-Wolff* v. *Vassar Coll.*, 932 F. Supp. 88, 93–94 (S.D.N.Y. 1996) (college's handling of investigation and hearing was not sufficiently "extreme and outrageous"). While the Complaint seeks to paint a picture of "deliberate indifference" on the part of the University and Defendants Bollinger and Kessler, it alleges no affirmative conduct that comes close to meeting this stringent standard.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety, with prejudice.[12]

Dated: August 28, 2015

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____/s/ Roberta A. Kaplan_____

Michele S. Hirshman
Roberta A. Kaplan
Caitlin E. Grusauskas

1285 Avenue of the Americas
New York, NY 10019-6064
Main: 212.373.3000
Fax: 212.757.3990
mhirshman@paulweiss.com
rkaplan@paulweiss.com
cgrusauskas@paulweiss.com

*Attorneys for Columbia University,*
*Trustees of Columbia University,*
*Lee C. Bollinger, and Jon Kessler*

---

[12] Recognizing that the Court's July 1, 2015 Order, (ECF No. 15), contemplates allowing Plaintiff to file a third amended complaint in response to this motion, Defendants respectfully request that Plaintiff not be granted an opportunity to amend his complaint for a third time here. Plaintiff has already amended his complaint on two separate occasions, (Amended Complaint, ECF No. 10; Amended and Supplemented Complaint, ECF No. 26). As a matter of judicial efficiency and burden, Defendants ought not to have to expend additional time and resources to file another motion to dismiss when all of the relevant facts were known to Plaintiff by the time he filed his second amended complaint. *See DeJesus* v. *Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 71–72 (2d Cir. 1995) (not abuse of discretion to dismiss a complaint without leave to replead "when a party has been given ample prior opportunity to allege a claim"), *cert. denied*, 519 U.S. 1007 (1996); *see also Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) (noting that, where plaintiff was granted leave to amend and failed to add the requisite particularity, "the district court's discretion to deny leave to amend is particularly broad" (internal quotation marks and citation omitted)).