UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

PAUL NUNGESSER,                              | Civ. Act. No. 1:15-cv-03216-GHW

                    Plaintiff,               |

        v.                                   |

COLUMBIA UNIVERSITY, TRUSTEES                 |
OF COLUMBIA UNIVERSITY,                       |
LEE C. BOLLINGER, and JON KESSLER,            |

                    Defendants.              |

------------------------------------------------------------x


**PLAINTIFF PAUL NUNGESSER'S MEMORANDUM OF LAW
IN OPPOSITION TO THE COLUMBIA DEFENDANTS' MOTION TO DISMISS**


NESENOFF & MILTENBERG LLP
*Attorneys for Plaintiff Paul Nungesser*
363 Seventh Avenue - Fifth Floor
New York, New York 10001
212.736.4500


Of Counsel:    Philip A. Byler, Esq.
               Andrew T. Miltenberg, Esq.
               Diana Zborovsky, Esq.
               Jeffrey S. Berkowitz, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iii

PRELIMINARY STATEMENT .............................................................................1

THE ALLEGATIONS OF THE COMPLAINT .......................................................4

THE STANDARD ON A MOTION TO DISMISS ...................................................7

ARGUMENT .........................................................................................................8

I.     NUNGESSER STATES A MERITORIOUS TITLE IX CLAIM ....................8

    A.     The Complaint Alleges Sexual Harassment ......................................9

          1.     Nungesser Pleads Gender-Based Harassment More Serious
              Than Many Cases.....................................................................10

          2.     Sulkowicz's Words And Actions Accusing Nungesser Of Being
              A Rapist Were Directed At Nungesser As A Male............................10

    B.     The Complaint Alleges The Harassment Was So Severe, Pervasive
        And Offensive That Nungesser Was Denied Equal Access To
        Educational Opportunities And Benefits At Columbia.....................................12

          1.     Defendants Misstate The "Denial Of Equal Access" Element..........................13

          2.     The Complaint Pleads Specifics As To Denial of Access.......................13

          3.     The Pleaded Offensiveness, Pervasiveness And Severity Is
              Consistent With Case Law.........................................................14

          4.     Nungesser Pleads Far More Than Social Disapproval......................15

    C.     Columbia Had Actual Knowledge of the Gender-Based Harassment.................15

    D.     The Complaint Alleges Columbia's Indifference Was Unreasonable.................15

          1.     The Complaint Pleads Gender Bias In The Failure To Protect Nungesser..........16

          2.     The Facts in the Instant Matter are Unique From Other
              Cases of Sexual Harassment..........................................................16

          3.     Favorable Disciplinary Decisions Do Not Reflect
               Absence Of Gender Bias.............................................................16

| | 4. | The Issue Is The Failure To Stop Gender-Based Defamatory Harassment | 17 |
|---|---|---|---|
| | 5. | The Mattress Project Was Gender-Based Defamatory Harassment | 17 |
| | 6. | Sulkowicz's Pornographic Exhibition Was Gender-Based Defamatory Harassment | 19 |
| | 7. | Granting Credit for Gender-Based Harassment Was Not Academic Freedom | 20 |
| | 8. | Columbia Failed To Stop Gender-Based Harassment At Graduation | 20 |
| II. | | NUNGESSER STATES A BREACH OF CONTRACT CLAIM | 21 |
| | A. | Columbia Breached Its Policy Concerning Gender-Based Harassment | 21 |
| | B. | Columbia Breached Its Policy Concerning Confidentiality | 21 |
| | C. | Columbia Breached Its Policy Concerning Retaliation | 22 |
| III. | | NUNGESSER STATES A GENERAL BUSINESS LAW § 349 CLAIM | 23 |
| IV. | | NUNGESSER STATES OTHER STATE LAW CLAIMS | 24 |
| CONCLUSION | | | 25 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................7,8

*Atria v. Vanderbilt Univ.*, 142 F. App'x 246 (6th Cir.2005) ...............................25

*Barnville v. Mimosa Café*, 2014 WL 3582878 (S.D.N.Y. July 10, 2014) ..................8

*Babiker v. Ross Univ. Sch. Of Med.*, 2000 WL 666342 (S.D.N.Y. May 19, 2000),
    *aff'd*, 86 F. App'x 457 (2d Cir. 2004) ..................................................................21

*Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982) ...................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2008) ...............................................8

*Christensen v. Harris County*, 529 U.S. 576 (2000) .............................................19

*Corcinno v. Filstein*, 32 A.D.3d 201, 820 N.Y.S.2d 220 (1st Dep't 2006) ..................23

*Davis v. Monroe County Bd. of Education*, 526 U.S. 629 (1999) ..................1,8,9,12,13,14,15

*Dawson v. N.Y.C. Transit Auth.*, 2014 WL 5343312 (S.D.N.Y. Oct. 21, 2014)...................7

*Doe v. Univ. of the South*, 2011 WL 1258104 (E.D. Tenn. Mar. 31,2011) ..................25

*Ferguson v. City of New York*, 118 A.D.3d 849, 988 N.Y.S.2d 207 (2d Dep't 2014) ..................25

*Filner v. Shapiro*, 633 F.2d 139 (2d Cir. 1980) ...................................................24

*Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105 (2d Cir. 2007) ......................3

*Gally v. Columbia Univ.*, 22 F.Supp.2d 199 (S.D.N.Y. 1998) ..................................21

*Hartman v. Pena*, 914 F. Supp. 225 (N.D. Ill. 1995) .........................................12

*Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279 (11th Cir. 2003) ..................13,14

*Hill v. Cundiff*, No. 13 Civ. 15444, 2015 WL 4747048 (11th Cir. Aug. 12, 2015) ..................14

*Hurley v. Irish Am. Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995) ........................19

*Immuno A.G. v. Moor-Jankowski*, 77 N.Y.2d 235, 567 N.E.2d 1270,
   566 N.Y.S.2d 906, *cert. denied*, 500 U.S. 954 (1991) ........................18

*Jew v. University of Iowa*, 749 F. Supp. 946 (S.D. Iowa 1990) ........................12

*Kaplan v. California*, 413 US. 115 (1972) ........................20

*Keyishan v. Bd. of Regents*, 385 U.S. 589 (1967) ........................3

*Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 188 N.E. 163 (N.Y. 1933)........................

*Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d 857 (1992) ........................18

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006) ........................19

*McCauley v. University of the Virgin Islands*, 618 F.3d 232 (3d Cir. 2010) ........................2

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ........................18

*Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999) ........................10,21

*Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996) ........................14

*New York v. Colorado State Christian College of Inner Power*,
   76 Misc.2d 50, 346 N.Y.S.2d 482 (Sup.Ct. N.Y. Co. 1973) ........................23

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995)........................23

*Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 402 N.E.2d 1150, 426 N.Y.S.2d 248 (1980)........................21

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ........................11

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 663 F.3d 81 (2d Cir. 2011) ........................3

*Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985) ........................3

*Riccio v. New Haven Bd. Of Educ.*, 467 F.Supp.2d 219 (D. Conn. 2006) ........................10

*Routh v. Univ. of Rochester*, 981 F.Supp.2d 184 (W.D.N.Y. 2013) ........................16

*R.S. v. Bd. of Educ. Of Hastings-on Hudson Union Free Sch. Dist.*,
   371 F. App'x 231 (2d Cir. 2010) ........................14

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 157 (5th Cir. 2011) .........................11

*Sheey v. New Century Mortg. Corp.*, 690 F.Supp.2d 51 (E.D.N.Y. 2010) .............................................23

*Talbot v. N.Y. Inst. Of Tech.*, 225 A.D.2d 611, 639 N.Y.S.2d 135 (2d Dep't 1996).............................25

*Thomas H. v. Paul B.*, 18 N.Y.3d 580, 965 N.E.2d 939, 942 N.Y.S.2d 437 (2012) ...............................18

*Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp.2d 952 (D. Kan. 2005) .........................10

*Tyrell v. Seaford Union Free Sch. Dist.*, 792 F.Supp.2d 601 (E.D.N.Y. 2011) ....................................15

*T.Z. v. City of New York*, 634 F. Supp.2d 263 (E.D.N.Y. 2009) .......................................................10,14

*Vance v. Spence County Pub. Sch. Dist.*, 231 F.3d 256 (6th Cir. 2000) ..............................................10,21

*Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 511 N.Y.S.2d 880 (2d Dep't 1987).....25

*Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860 (8th Cir. 2011).................................................12

*Yu v. Vassar Coll.*, 2015 WL 1499408 (S.D.N.Y. Mar. 31, 2015) .......................................................16

*Yusuf v. Vassar Corp.*, 35 F.3d 709, 715 (2d Cir. 1994)..................................................................9

## Statutes and Rules

20 U.S.C. §§ 1681 ........................................................................................................................8

42 U.S.C. § 1983 ..........................................................................................................................2

New York Executive Law, Article 15, Human Rights Law § 296(4).....................................................24

New York Executive Law, Article 15, Human Rights Law § 296(6) ....................................................24

New York General Business Law § 349 ..............................................................................................23

Rule 12(b)(6), Federal Rules of Civil Procedure ................................................................................1

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ...................................*passim*

## Other Authorities

Dear Colleague Letter, U.S. Department of Education ....................................................................18,19

## PRELIMINARY STATEMENT

Plaintiff Paul Nungesser ("Nungesser") respectfully submits this Memorandum of Law in opposition to the motion, made by Defendants Columbia University ("Columbia"), Trustees of Columbia University, Columbia President Lee C. Bollinger and Columbia Professor Jon Kessler (collectively, "Defendants"), to dismiss the Amended and Supplemented Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion should be denied on the grounds that the Complaint amply pleads Title IX and state law claims upon which relief may be granted.

The Complaint adequately pleads that Defendants intentionally discriminated against Nungesser on the basis of his sex. Nungesser was found not responsible on a charge of sexual misconduct brought by fellow Columbia student Emma Sulkowicz ("Sulkowicz"), but Defendants failed to protect Nungesser from sex-based defamatory harassment initiated by Sulkowicz. Instead, Defendants condoned and participated in that sex-based defamatory harassment. In this case, Nungesser has adequately pleaded a violation of Title IX: (1) Sulkowicz, supported by Defendants, engaged in sex-based defamatory harassment; (2) the sex-based defamatory harassment was so severe, offensive and pervasive that it denied Nungesser equal access to educational benefits and opportunities; (3) Defendants had actual knowledge of the sex-based defamatory harassment; and (4) Defendants not only demonstrated deliberate indifference to the sex-based defamatory harassment, but also condoned and participated in it. *See Davis v. Monroe County Bd. of Education*, 526 U.S. 629 (1999) ("*Davis*").

Defendants, to justify their meritless motion, resort to mischaracterizing the facts as alleged, making false statements about the Complaint and invoking certain inapplicable notions.

Defendants mistreat, as "protest," Sulkowicz's publicly labeling of Nungesser as a "rapist" and "serial rapist," her carrying of a mattress for earned college credit at Columbia, publicly displaying at Columbia her pornographic prints graphically depicting Nungesser as a rapist, and participating in public appearances, identifying herself as a rape victim of Nungesser. Defendants' characterization of sex-based defamatory harassment as free speech reflects a failure to discern the difference between opinionated protest and sex-based harassment defaming an identified male student as a rapist in fact.

Defendants falsely assert that the Complaint reflects the view that Columbia had an obligation "to silence Sulkowicz, preventing her from speaking publicly on the issue of sexual assault on college campuses." (Def. Mem. 2.) In fact, the Complaint does not call for anyone to be silenced from speaking on the issue of sexual assault on college campuses. Rather, it pleads that Defendants violated Title IX and state law in failing to protect Nungesser from sex-based defamatory harassment. The Complaint holds Columbia responsible for deliberate indifference to, and condoning and participating in, Title IX proscribed sex-based student-on-student harassment and teacher-on-student harassment.

Defendants exalt having an "atmosphere of speculation, experiment and creation," citing *McCauley v. University of the Virgin Islands*, 618 F.3d 232 (3d Cir. 2010). There, however, a student accused of violating the Student Code of Conduct brought an action under 42 U.S.C. § 1983 that the Third Circuit upheld in major part by striking down as too vague the university code provisions against offensive signs and conduct causing emotional distress. It was in that context that free speech values were invoked. The Third Circuit did uphold against First Amendment challenge the university code provision against indecent, obscene conduct. Sulkowicz's harassment, condoned and

participated in by Columbia, was not part of an atmosphere of "speculation, experiment and creation," but was indecent character assassination that led to physical threats to Nungesser's person. Defendants nonetheless assert that "Title IX was never intended to curb this cherished tradition of vigorous, even raucous, debate." (Def. Mem. 2.) No Title IX text or legislative history is cited in support. What happened here was not part of open debate, but a personal attack.

Defendants also appeal to the deference that courts give to colleges and universities with respect to educational decisions, but cite cases that do not support its position in the context of Title IX. Four of the five cases cited by Defendants concerned academic issues and performance where deference has appropriately been accorded. *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985) (evaluation of academic performance by the university leading to student dismissal); *Keyishan v. Bd. of Regents*, 385 U.S. 589 (1967) (grounds for dismissal or barring a person from public school employment); *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105 (2d Cir. 2007) (placement of disabled child in private school as opposed to public school); *Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982) (sign language interpreter in the classroom for an eight year old deaf student not required given student academic performance). In the one Title IX case cited by Defendants, *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 663 F.3d 81, 93-94 (2d Cir. 2011), the Second Circuit *upheld* Title IX sex discrimination and retaliation claims filed by three students who had been disciplined for purported cheating on exams after one of them had complained of sexual harassment by a professor. The Second Circuit comment about intervention in education cases being "rare" was in the context of ruling it was appropriate to consider the university charges of cheating in connection with the students' Title IX and contract claims.

Defendants still complain that Nungesser is asking the Court "to second guess the kinds of decisions made by professors and administrators at Columbia . . . in good faith." (Def. Mem. 2.) But not protecting Nungesser from Sulkowicz's public labeling and graphic depiction of Nungesser as a "rapist" and "serial rapist" is not a good faith educational decision. Nor is condoning and engaging in sex-based harassment a good faith educational decision.

## THE ALLEGATIONS OF THE COMPLAINT

As indicated in the Preliminary Statement, Defendants do not accurately state the allegations of the Complaint and further make assertions characterizing Sulkowicz's words, actions and productions that are contrary to the Complaint. (Def. Mem. 3-6.) The following is provided to correct some of the misstatements and omissions in Defendants' discussion of the Complaint.

1. Defendants begin by misstating Columbia's Policies and omitting reference to the Nungesser-Sulkowicz relationship, which moved from friendship to "friends with benefits" at Sulkowicz's request in their freshmen year. Social media messages between the two demonstrate the consensual nature of the relationship that continued until their sophomore year. (Cmplt. ¶¶ 13-31.)

2. Sulkowicz did not file her complaint with Columbia until April 2013, seven months after the September 2012 hook up. Sulkowicz accused Nungesser of strangling and hitting her during what allegedly became non-consensual sex, and she sought Nungesser's expulsion from Columbia. Sulkowicz, however, had no evidence supporting the accusations; and despite the one-sided procedures favoring Sulkowicz, Nungesser was eventually found not responsible of sexual misconduct, and not guilty of three other complaints brought by Sulkowicz's friends, at her request. Sulkowiz's appeal to Columbia was rejected in November 2013. (Cmplt. ¶¶ 32-45, 100-103.)

3. In December 2013, Nungesser was "ambushed" by a *New York Post* reporter and a paparazzo about the case. Sulkowicz's communications with the reporter about her accusations violated Columbia's Confidentiality Policy, but Columbia failed to take action. Sulkowicz then appeared at an April 2014 press conference at Columbia with Senator Gillibrand announcing that Sulkowicz's rapist was still on campus. In May 2014 a "rapist-list" appeared in Columbia bathrooms listing Nungesser as a "serial rapist," and the *Columbia Spectator* published Sulkowicz's false charges while including Nungesser's name in the story. Sulkowicz filed charges with the New York Police Department, but in August 2014, the District Attorney determined no charges would be brought because there was no reasonable basis to proceed. (Cmplt. ¶¶ 37, 48-67.)

4. Defendants' glorification of the Sulkowicz "Mattress Project" is not based on the Complaint, which tells a different true story. With the help, encouragement, and direction of Defendant Kessler, Sulkowicz carried a mattress around campus, publicly stating she would carry the mattress to all of her classes and to every campus building for as long as her "rapist" remained on campus, publicly calling Nungesser a "serial rapist" and publicly vowing to carry the mattress to their graduation if Nungesser were in attendance. Sulkowicz's statements made clear that the Mattress Project was not about art, but instead was specifically about Nungesser and stalking him. Defendant Kessler, who was responsible as Sulkowicz's Thesis Advisor, stated that Sulkowicz's university bed represented the site of her rape. Columbia allowed Sulkowicz to carry the mattress into each of her classes, the library, and on Columbia-provided transportation, while awarded course credit for the entirety of her senior year. She received public sympathy from Defendant Bollinger and widespread news coverage nationally and internationally. In adherence to Columbia's Confidentiality

Policy, Nungesser did not discuss the investigations with his classmates. Sulkowicz did the opposite to gain support from classmates, professors and the administration. (Cmplt. ¶¶ 68-84, 104.)

5. Nungesser received physical threats, as Columbia actively encouraged Sulkowicz's campaign of gender-based defamatory harassment. Sulkowicz's Mattress Project was publicly promoted on a Columbia-owned website, Institute for Research on Women and Gender at Columbia University ("IRW&G"). IRW&G presented as fact that Nungesser had sexually assaulted Sulkowicz, who was called a survivor, and supported the "Carry That Weight National Day of Action" which took place on October 29, 2014. Columbia provided financial support of the "Carry That Weight National Day of Action" by paying a portion of the clean-up fee for a Columba campus rally at which Sulkowicz publicly declared that Nungesser was her rapist. Defendant President Bollinger co-authored an article in *The New Republic* that opened with a large picture of Sulkowicz carrying her mattress and discussed making the campus safer from sexual assault and other forms of gender-based misconduct. Michela Weihl, a Columbia student and a member of the Presidential Advisory Committee on Sexual Assault, called Nungesser "an ongoing threat to the community" and a "serial rapist." (Cmplt. ¶¶ 85-96.)

6. Nungesser's social and academic experience suffered. University resources such as the dorms, libraries, dining halls, and gym were not reasonably available for his access. Attending classes was problematic; he endured constant harassment and would have his photo taken against his will. He was precluded from attending on-campus recruiting events and was suspended from his two main social activities. Nungesser requested a security escort for a mandatory sexual respect workshop, but his request was denied and instead he was told not to attend. A similar request for an

escort was made for the day of a protest centered around the Mattress Project. This request was also denied and Nungesser spent that day fearful of accessing campus facilities. (Cmplt. ¶¶ 104-113.)

7. From May 11, 2015 to May 15, 2015, just prior to graduation, Columbia displayed Sulkowicz's pornographic prints on campus at the University Visual Arts Program. These prints included explicit, nude and sexual portrayals of Nungesser, printed over *New York Times* articles, identifying Nungesser by his full name, and portrayed him as engaged in sexual assault. Columbia's faculty approved the display of Sulkowicz's prints, facilitated their installation in the gallery and supervised the exhibition. Columbia was on notice, but did nothing. (Cmplt. ¶¶ 114-122.)

8. Columbia administrators e-mailed all graduating students the night before the graduation ceremonies, instructing them not to bring "large objects which could interfere with the proceedings or create discomfort to others in close, crowded spaces shared by thousands of people." Nungesser, led to believe that the mattress would not be allowed at the graduation ceremony, attended, with his parents, the graduation ceremonies the following day. Columbia allowed Sulkowicz to carry her mattress into the graduation ceremony and on stage to receive her diploma. (Cmplt. ¶¶ 123-127.)

## THE STANDARD ON A MOTION TO DISMISS

Defendants quote this Court that when deciding a motion to dismiss, a federal court "must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party." *Dawson v. N.Y.C. Transit Auth.*, 2014 WL 5343312, *4 (S.D.N.Y. Oct. 21, 2014)(Woods, J.). Defendants then falsely submit that the standard recognized in *Dawson* "does not mean that all of the plaintiff's allegations must be accepted at face value." (Def. Mem. 6.)

Defendants quote *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and

also quote this Court in *Barnville v. Mimosa Café*, 2014 WL 3582878, *2 (S.D.N.Y. July 10, 2014)(Woods, J.), when quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008), that the factual allegations "must be enough to raise a right to relief above the speculative level." Defendants appear to misread the quoted *Twombly* and *Iqbal* language to authorize ignoring pleaded factual allegations supportive of a claim and substituting assumptions contrary to the Complaint, which those cases certainly do not do. In *Twombly*, the Supreme Court ruled that the Complaint, in alleging the facts of parallel business conduct and a bare assertion of conspiracy, did not state a Sherman Act § 1 claim because pleaded facts were required showing "plausible grounds" from which an agreement in restraint of trade could be inferred. 550 U.S at 553-560, 564-570. In *Iqbal*, the Supreme Court ruled that the *Iqbal* Complaint, in alleging the number of Middle Eastern Muslims detained, did not state a *Bivens* claim for purposeful and unlawful discrimination because Mr. Iqbal, a Muslim Pakistani, had failed to plead facts showing that Attorney General Ashcroft and FBI Director Mueller had adopted and implemented the subject detention policies to discriminate because of race, religion and national origin and not for neutral investigative reasons. 556 U.S. at 675-678.

## ARGUMENT

## I.  NUNGESSER STATES A MERITORIOUS TITLE IX CLAIM.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX may be violated by a school's failure to prevent or remedy sexual harassment or assault, *Davis*, or by "the imposition of university discipline where gender is a motivating factor in

the decision to discipline," *Yusuf v. Vassar Corp.*, 35 F.3d 709, 715 (2d Cir. 1994). In either case, the statute is enforceable through an implied private right of action. *Yusuf*, 35 F.3d at 714.

Here, Nungesser properly pleads that Columbia failed to prevent and remedy sexual harassment, by satisfying the four elements set out in *Davis*, (526 U.S. at 640-654): (A) the harassment is sexual in nature; (B) the harassment must be so severe, pervasive and objectively offensive that it denied the student from equal access to educational opportunities or benefits; (C) the school had actual knowledge of the gender based harassment; and (D) the school demonstrated deliberate indifference to known acts of harassment because its actions were clearly unreasonable in light of the known circumstances. This case satisfied these four elements.

## A.   The Complaint Alleges Sexual Harassment.

Nungesser has properly pled the first element, that the harassment is sexual in nature, *Davis*, 526 U.S. at 651-653. The Complaint alleges: "Columbia, in violation of Title IX, intentionally discriminated against Paul [Nungesser] on the basis of his male sex by condoning a hostile educational environment by knowingly permitting Columbia student Emma [Sulkowicz] and Defendant Kessler to engage in a campaign of gender-based harassment and defamation against Paul [Nungesser], based on what Columbia determined to be untrue allegations of sexual misconduct." (Cmplt. ¶ 175.) Specifically, the Complaint alleges that Sulkowicz's publicly labeling Nungesser as a "rapist" and "serial rapist," carrying a mattress as the place of her rape for earned college credit at Columbia, publicly displaying pornographic prints graphically depicting Nungesser as a rapist and participating in public appearances as a rape victim of Nungesser demonstrates Title IX proscribed sexual harassment. (Complaint ¶¶ 46-49, 56-63, 68-94, 114-139.) Defendants make two meritless arguments that sexual harassment is not pleaded.

## 1. Nungesser Pleads Gender-Based Harassment More Serious Than Many Cases.

Defendants argue that Nungesser has not alleged the kind of student-on-student harassment that has occurred in a number of other cases. (Def. Mem. 8-9.) In fact, Nungesser has alleged gender-based harassment that is more serious than the type alleged in a number of the cited cases.

To be sure, Defendants cite some cases involving sexual battery: *Vance v. Spence County Pub. Sch. Dist.*, 231 F.3d 256 (6th Cir. 2000) (jury verdict under Title IX against school for ineffectively dealing with harassment of female student that included *inter alia* chest and buttocks inappropriately touched); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999) (Complaint sufficiently alleged school district liability under Title IX for failing to take effective steps against male student who engaged in sexual assault of disabled female student on multiple occasions); *T.Z. v. City of New York*, 634 F. Supp.2d 263 (E.D.N.Y. 2009) (summary judgment denied to City where female special needs student was sexually assaulted by two male students, one who touched the female's breasts and held her legs while the other touched the female's vagina and caressed her buttocks). But there are other cases cited by Defendants that involve just name calling: *Riccio v. New Haven Bd. Of Educ.*, 467 F.Supp.2d 219 (D. Conn. 2006) (summary judgment denied to School Board where harassment consisted of calling female plaintiff student "dyke," "bitch," "lesbian"); *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp.2d 952 (D. Kan. 2005) (summary judgment denied to school district for harassment of male student called "faggot," "queer," flamer").

Nungesser's case involves more serious harassment than the name calling cases. The sexual battery cases serve as precedent for holding schools liable under Title IX for failures to take effective measures against harassment.

### 2. Sulkowicz's Words And Actions Accusing Nungesser Of Being A Rapist Were Directed At Nungesser As A Male.

Defendants argue that Sulkowicz's words and actions were a criticism of Columbia, and perhaps of Nungesser, but were not directed to Nungesser as a male, and that Sulkowicz's public statements showed personal animus rather than gender bias. (Def. Mem. 9.) This assertion is specious: falsely accusing a male of being a "rapist" and displaying pornographic prints depicting that male as a rapist in fact is inherently gender based and was directed to Nungesser as a male. Defendants substitute their own mischaracterizations of Sulkowicz's actions, rather than address the allegations that Columbia condoned a hostile educational environment and that Nungesser was identified and depicted as a "rapist" in fact. (Cmplt. ¶¶ 46-49, 56-63, 68-94, 114-139.)

The cases cited by Defendants do not support their argument. In *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860 (8th Cir. 2011), after the school's summary judgment motion was denied and a trial held, a jury found that the name calling of the plaintiff student (that he was a homosexual) was not based on the belief that the plaintiff student was actually gay (he was not) but was a way of attacking him for mistreating other students. In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), some same sex workplace harassment was recognized as actionable under Title VII, with the Supreme Court cautioning that the plaintiff must still prove job discrimination. In *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 157 (5th Cir. 2011), summary judgment was granted to the school for the lack of sex-based harassment. The harassing student, a female cheerleader, was angry with the plaintiff because, first, plaintiff's mother had reported to the school inappropriate Facebook pictures posted by the harassing student, who as a result was suspended for a week from cheerleading, and second, plaintiff was dating the harassing student's ex-boyfriend. The

harassing student allegedly called the plaintiff a "ho," slapped her ex-boyfriend's buttocks in front of plaintiff and spread rumors that plaintiff had a hickey on one of her breasts and was pregnant.

Quite differently, Sulkowicz accused Nungesser of being a rapist in fact, as shown by Sulkowicz's words (repeatedly calling Nungesser a "serial rapist"), actions (carrying a mattress) and pornographic prints (showing the likeness of Nungesser raping her superimposed over the *New York Times* report identifying Nungesser). (Cmplt. ¶¶ 46-47, 56-63, 68-94, 114-139.) Just as there is sexual harassment liability for workplace sexual slanders, as the First Amendment does not provide a defense to sexual harassment liability where sexually harassing speech involved defamation, *Jew v. University of Iowa*, 749 F. Supp. 946 (S.D. Iowa 1990), so there is sexual harassment liability for campus sexual defamatory harassment. Just as an anti-male sexual harassment and diversity training seminar can constitute sexual harassment of males, *Hartman v. Pena*, 914 F. Supp. 225 (N.D. Ill. 1995), so can the creation of an anti-male hostile educational environment.

**B.    The Complaint Alleges Nungesser Was Denied Equal Access To Educational Opportunities And Benefits At Columbia Due to Harassment**

Second, Nungesser properly pled that the harassment "is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect," *Davis*, 526 U.S. at 652-653. The Complaint alleges, among other things, that "[b]y permitting Emma [Sulkowicz] and Defendant Kessler to engage in a campaign of gender based harassment and defamation against Paul [Nungesser], Columbia had actual knowledge of, and was deliberately indifferent to, sexual harassment that was so severe, pervasive and objectively offensive that it deprived Paul [Nungesser] of equal access to the educational opportunities, benefits and resources available to other students at Columbia" and that Columbia gave "apparent approval of said gender-

based harassment and gender-based misconduct, with the consequence that Paul [Nungesser] has been effectively denied equal access to Columbia's resources and opportunities, thereby undermining and detracting from Paul [Nungesser]'s educational experience." (Cmplt. ¶¶ 180-181.) The Complaint pleads specifics of the harassment and the denials of access referenced above (pp. 5-6). (Cmplt. ¶¶ 85-87, 105-106, 109-113, 183-184.) Defendants make four meritless arguments to deny the Complaint pleaded this element.

## 1. Defendants Misstate The "Denial Of Equal Access" Element.

Defendants first misstate the element, sliding from the *Davis* denial of "equal access to education" to a misuse of *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279 (11th Cir. 2003), to rephrase the element as being "barred from access to educational opportunities." (Def. Mem. 9-10.) In *Hawkins*, a second grade boy harassed three girl classmates with vulgar language and offensive touching that made the girls anxious and caused them to feign sickness to avoid school; the school took effective measures, including suspending the boy and providing counseling; the Eleventh Circuit ruled that the harassment did not have "the systemic effect of denying the girls equal access to education" as "[n]o physical exclusion or denial of access to facilities is involved in this case." 322 F.3d at 1288-1289. *Hawkins* adhered to the *Davis* denial of "equal access" requirement.

## 2. The Complaint Pleads Specifics As To Denial Of Access.

Defendants assert that Nungesser has not alleged denial of physical access to school resources (Def. Mem. 10), which erroneously reads *Davis* and *Hawkins* to require denial of physical access. In doing so, Defendants seek to mislead as to the Complaint. In *Davis*, a fifth grade boy sexually harassed a girl classmate with attempted touching of her breasts and genitals and use of sexually vulgar language and behavior. There was no denial of physical access to school resources, but the

harassed girl did suffer from a drop in grades and depression. It was in that context the U.S. Supreme Court stated actual denial of physical access was *not* required and *upheld* the complaint, noting that "petitioner contends that the harassment had a concrete, negative effect on her daughter's ability to receive an education." 526 U.S. at 650-651, 654. As noted above, there was no denial of access to physical facilities in *Hawkins*, but that was just one consideration in finding the harassed girls were not denied equal access to education. As noted above, the Complaint here alleges specifics as to Nungesser's exclusion: the dorms, libraries, dining halls and gym were not reasonably available to Nungesser; attendance of classes became problematic; he was suspended and ostracized from his two main social activities; was precluded from attending on-campus recruiting events; and was advised not to attend a mandatory workshop. (Cmplt. ¶¶ 85-87, 105-106, 109-113.) Thus, Nungesser suffered from "a concrete, negative effect on [his] ability to receive an education." *Davis*, 526 U.S. at 654.

### 3. The Pleaded Offensiveness, Pervasiveness And Severity Is Consistent With Case Law.

Defendants argue that Nungesser has not alleged the offensiveness, pervasiveness and severity seen in cases where Title IX or similar violations were found. (Def. Mem. 10-11.) But the cited cases do not support the proposition that the Complaint falls short on this point. As just discussed, *Davis* supports the sufficiency of the Complaint as to offensiveness, pervasiveness and severity. Extreme cases, such as *Hill v. Cundiff*, 2015 WL 4747048 (11th Cir. Aug. 12, 2015) (rape) and *T.Z. v. City of New York*, 634 F. Supp.2d 263 (sexual assault), do not define a minimum level of severity. *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996), was not a Title IX case but a § 1983 equal protection claim. No Title IX violation was found in *R.S. v. Bd. of Educ. Of Hastings-on Hudson Union Free Sch. Dist.*, 371 F. App'x 231 (2d Cir. 2010), because only three sexually explicit e-mails

in a ten-day period were involved, in contrast to Nungesser, who endured a campaign of gender-based defamatory harassment lasting over a year.

### 4. Nungesser Pleads Far More Than Social Disapproval.

Defendants finally argue that what Nungesser alleges "amounts primarily to social disapproval on the part of some of his peers." (Def. Mem. 11.) That is false; the Complaint pleads far more, as referenced above (p. 6). The one case cited by Defendants, *Tyrell v. Seaford Union Free Sch. Dist.*, 792 F.Supp.2d 601 (E.D.N.Y. 2011), is off point. *Tyrell* is a summary judgment decision rejecting a Title IX claim because sexual orientation is not a protected class under Title IX and the teasing of plaintiff as a lesbian due to a drunken same-sex sexual hook up was not severe enough.

### C.  Columbia Had Actual Knowledge Of The Gender-Based Harassment.

The third element of this kind of Title IX claim is that the school has actual knowledge of the gender-based harassment. *Davis*, 526 U.S. at 640-641. The Complaint is replete with allegations of the Defendants having such actual knowledge (Cmplt. ¶¶ 51, 165-166, 176-181, 185) and indeed goes further with allegations that the Defendants condoned the sexual harassment (Cmplt ¶¶ 68-77, 88-99, 114, 179). Defendants do not contest this element.

### D.   The Complaint Alleges Columbia's Indifference Was Unreasonable.

The fourth element of this kind of Title IX claim is that the school demonstrated deliberate indifference to known acts of harassment because its actions were clearly unreasonable in light of the known circumstances, *Davis*, 526 U.S. at 643-645, 654; and Nungesser properly pled this element. The Complaint alleges that Columbia showed deliberate indifference that was unreasonable by permitting the gender-based harassment. (Cmplt. ¶¶ 180-183, 186.) Columbia's defense to this "unreasonable deliberate indifference" element of Nungesser's Title IX claim is to assert that Title

IX did not require Columbia to silence or discipline Sulkowicz. (Def. Mem. 12-16.) To support that position, Defendants make eight arguments, all without merit.

### 1. The Complaint Pleads Gender Bias In The Failure To Protect Nungesser.

Defendants first assert, falsely, that the Complaint does not contain any allegations Columbia's actions were "clearly unreasonable" because Columbia was motivated by Nungesser's gender. (Def. Mem. 12.) The Complaint clearly states otherwise (Cmplt. ¶¶ 176-179.)

### 2. The Facts in the Instant Matter are Unique from other Cases of Sexual Harassment

Defendants argue, falsely, that Nungesser has not alleged Columbia condones the harassment of men by women and, acutely, that male plaintiffs must demonstrate that a female in similar circumstances was treated more favorably. (Def. Mem. 12.) That indefensible proposition was asserted in *Yu v. Vassar Coll.*, 2015 WL 1499408 (S.D.N.Y. Mar. 31, 2015), and was important to rationalizing the unsupportable result in that case. Nor does *Routh v. Univ. of Rochester*, 981 F.Supp.2d 184 (W.D.N.Y. 2013), help Defendants. The *Routh* court ruled that it was not intentional sex discrimination for the university to require the male student who wished to file a cross-complaint against his female accuser to do so in a complaint brought in a separate proceeding.

### 3. Favorable Disciplinary Decisions Do Not Reflect Absence Of Gender Bias.

Defendants argue that the decisions in university disciplinary proceedings favorable to Nungesser reflect the absence of gender bias. (Def. Mem. 12-13.) Not so: the Complaint carefully alleges facts demonstrating the procedural one-sidedness in favor of Sulkowicz and against Nungesser and demonstrating "the baselessness" of Sulkowicz's and two other claims such that there was "good reason" that Nungesser was cleared despite the procedural one-sidedness. (Cmplt. ¶¶ 41-45 (a) through (f).) Even a gender biased system could not help but get those decisions right.

### 4. The Issue Is The Failure To Stop Gender-Based Defamatory Harassment.

Defendants argue that Nungesser does not allege that Columbia failed to make accommodations for him and that Columbia issued a no-contact order between Sulkowicz and Nungesser during the Mattress Project. (Def. Mem. 13.) Defendants' argument is intended to draw attention away from what is alleged in the Complaint, which is that Columbia failed to stop the gender-based harassment; it was not a matter of accommodation. (Cmplt. ¶¶ 68-94, 114-139.)

### 5. The Mattress Project Was Gender-Based Defamatory Harassment.

Defendants argue that Nungesser's case is that Columbia should have prevented Sulkowicz from carrying her mattress around which Defendants say did not carry Nungesser's name or likeness, and that Columbia is dedicated to the free expression of ideas such that Sulkowicz's protest should not have been interdicted. (Def. Mem. 13-14.) The allegations of the Complaint, however, do not permit Defendants to posture that Sulkowicz's carrying of a mattress was a protest somehow independent of Sulkowicz's publicly labeling of Nungesser as a "rapist" and "serial rapist." (Cmplt. ¶¶ 68-77.) Defendants' argument is wrong in two critical ways.

*First*, according to the Complaint, the Mattress Project was directly linked to Nungesser. Before the Mattress Project, Sulkowicz had named Nungesser, making him identifiable to the public (Cmplt. ¶¶ 46-49, 58, 61-63); and during the Mattress Project, Sulkowicz repeatedly called Nungesser a "serial rapist" (Cmplt. ¶¶ 69, 75). Sulkowicz was focused on Nungesser and not on the subject of sexual misconduct generally: Sulkowicz vowed to carry the mattress so long as Nungesser was on campus and her public statements made clear that the mattress project was not about art but about stalking Nungesser. (Cmplt. ¶¶ 69-70.) Defendant Kessler, the Thesis Advisor, referred to the mattress as the site of Sulkowicz's rape. (Cmplt. ¶¶ 71-72.) A "Carry That Weight National Day of

Action" was held at Columbia prompted by the Mattress Project, and that event included publication

of a list of demands that specifically identified Nungesser as "an ongoing threat to the community."

(Cmplt. ¶¶ 90-94.) It was understood that Sulkowicz's carrying of the mattress was a statement that

she was raped there by Nungesser, and as a result, he was subjected to verbal and physical threats.

(Cmplt. ¶¶ 69, 77-87.)

*Second*, Sulkowicz's words and actions labeling Nungesser a rapist were not protected First

Amendment expression. Falsely accusing a person of a crime such as rape tends to expose a person

to public contempt, hatred, ridicule, aversion or disgrace and has been considered defamatory *per se*

and not constitutionally protected. *Thomas H. v. Paul B.*, 18 N.Y.3d 580, 584, 965 N.E.2d 939, 942,

942 N.Y.S.2d 437, 440 (2012); *Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344, 590 N.Y.S.2d

857 (1992). The current opinion-fact test stated in *Thomas H. v. Paul B.*, which involves a mixture of

the factors discussed in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) and *Immuno A.G. v.

Moor-Jankowski*, 77 N.Y.2d 235, 567 N.E.2d 1270, 566 N.Y.S.2d 906, *cert. denied*, 500 U.S. 954

(1991), places Sulkowicz's words and actions accusing Nungesser of rape in the category of

defamatory fact: (1) accusing someone of rape has a precise meaning that is readily understood; (2)

the accusation of rape can be proven true or false; and (3) the full context of the communication and

the broader social context signal that the accusation Nungesser raped Sulkowicz is a factual one.

*Thomas H. v. Paul B.*, 18 N.Y.3d at 584, 965 N.E.2d at 942, 942 N.Y.S.2d at 440. *See* Tawana

Brawley case, *Pagones v. Maddox, et al.*, No. 4595/88 (Sup.Ct. Dutchess Co. Oct. 1998) (Vocal

supporters of a false rape accusation found liable for damages resulting from defamation).

Defendants cite to the "Dear Colleague Letter" as authority for implementing speech and

expression proscriptions carefully, but because the "Dear Colleague Letter" was not put through the

APA notice and comment procedures, it is not given binding force, *Christensen v. Harris County*, 529 U.S. 576 (2000). Nevertheless, a consideration of First Amendment values per the "Dear Colleague Letter" does not protect the gender-based harassment in defaming a male student as a rapist in fact. When a student or teacher engages in a gender-based defamatory harassment campaign, as here, (Complt. ¶¶ 68-77), Title IX imposes an obligation on the college to stop it.

### 6. Sulkowicz's Pornographic Exhibition Was Gender-Based Defamatory Harassment.

Defendants argue that Sulkowicz's views on how Columbia handled her complaint against Nungesser as shown in her visual arts pre-commencement exhibition was free expression. (Def. Mem. 14.) The allegations of the Complaint do not permit Defendants to posture that Sulkowicz's pornographic prints graphically depicting Nungesser as a rapist in fact was art to be protected as part of free expression. (Cmplt. ¶¶ 114-122.) Defendants are confusing politically charged art, such as Soviet era dissident paintings protesting totalitarianism, with gender-based harassment aimed at defaming a male student as a rapist in fact, which is what occurred here.

To be sure, the First Amendment does look beyond written and spoken words to pictures, film, paintings and the like, but the case cited by Defendants for that proposition, *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006), is illustrative in upholding a New York City ordinance requiring street vendors to have a license to sell clothing provided with custom designs as consistent with any First Amendment protection of such "art." In the two U.S. Supreme Court decisions relied upon in *Mastrovincenzo* for the coverage of the First Amendment, *Hurley v. Irish Am. Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995), ruled that the First Amendment did not require the organizers of the St. Patrick's Day Parade in Boston to include a gay group in the parade, and

*Kaplan v. California*, 413 US. 115 (1972), ruled that California could proscribe "hard core" conduct as obscenity. Invoking the First Amendment does not end the matter.

Here, the First Amendment protection given to "art" does not remove from Title IX coverage the proscribing of gender-based defamatory harassment contained in graphic presentations that identify a specific male as a rapist in fact after he has been cleared of the accusation. When a student or teacher at a college engages in the kind of gender-based defamatory harassment as alleged here, (Complt. ¶¶ 114-122), Title IX imposes an obligation on the college to not allow it.

### 7. Granting Credit For Gender-Based Harassment Was Not Academic Freedom.

Defendants argue that Sulkowicz's receiving academic credit for her Mattress Project is a matter of university academic freedom. (Def. Mem. 14-15.) Law, however, puts a limit on academic freedom. If a professor were to offer to sponsor for credit an art thesis that included having a male student plaster campus walls with statements that a specific identified female is a "whore", Defendants would not allow it on the basis that it was gender-based harassment. Here, Title IX does limit what a college can give academic credit. By giving credit to Sulkowicz for the Mattress Project, Defendants are condoning teacher-on-student and student-on-student harassment.

### 8. Columbia Failed To Stop Gender-Based Harassment At Graduation.

Defendants argue that what Columbia allowed to happen at graduation was not clearly unreasonable, that Columbia asked Sulkowicz not to go to the graduation dais with the mattress but that it would have been disruptive to stop her. (Def. Mem. 15-16.) Defendants are offering irresponsible excuses that do not work on a motion to dismiss. By allowing Sulkowicz to carry the mattress upon the graduation dais, Defendants were guilty of not taking effective action, just as the

schools were so found in *Vance v. Spence County Pub. Sch. Dist.*, 231 F.3d 256, and *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238.

## II. NUNGESSER STATES A BREACH OF CONTRACT CLAIM.

Nungesser has stated a cause of action for breach of contract against Columbia under New York law. (Cmplt. ¶¶ 214-251.) New York law recognizes that an implied contract arises once a student is admitted to a university. *Olsson v. Bd. of Higher Ed.*, 49 N.Y.2d 408, 414, 402 N.E.2d 1150, 426 N.Y.S.2d 248 (1980); *Babiker v. Ross Univ. Sch. Of Med.*, 2000 WL 666342 at *6 (S.D.N.Y. May 19, 2000), *aff'd*, 86 F. App'x 457 (2d Cir. 2004). While specific breached promises or obligations need to be identified, *Gally v. Columbia Univ.*, 22 F.Supp.2d 199, 207 (S.D.N.Y. 1998), Nungesser has stated with specificity three provisions of Columbia's Policies that were violated: (A) freedom from gender-based harassment and discrimination (Cmplt. ¶¶ 219-227); (B) confidentiality (Cmplt. ¶¶ 228-237); and (C) freedom from retaliation (Cmplt. ¶¶ 238-251).

### A. Columbia Breached Its Policy Concerning Gender-Based Harassment.

Despite Nungesser's clear pleading of breach of the Policy regarding freedom from gender-based harassment and discrimination (Cmplt. ¶¶ 219-227), Defendants ignore that pleading and instead argue that Columbia did not breach its Policy concerning gender-based harassment for the same reasons that it denies there was deliberate indifference to the gender-based harassment complained of by Nungesser. (Def. Mem. 20.) But as pleaded in the Complaint (Cmplt. ¶¶ 219-227), Columbia did breach its 2013 Confidentiality/Privacy & Non-Retaliation Policy ("Policy") regarding freedom from gender-based harassment and discrimination and did show deliberate indifference as discussed above (pp. 16-21).

### B. Columbia Breached Its Policy Concerning Confidentiality.

The Complaint alleges Columbia had a duty to protect students' privacy and reveal information only on a need to know basis, a duty which Columbia breached by not disciplining Sulkowicz for widespread disclosure of Nungesser as the accused. (Cmplt. ¶¶ 228-237.) Defendants argue that Columbia did not breach its Policy, asserting that that the provisions apply only to university officials and that what is quoted in the Complaint as part of the Policy (Cmplt. ¶ 159) was really part of the 2012 Policy. (Def. Mem. 16-17 & n. 9.) Defendants are flat wrong. The January 2013 Policy, effective April 2013, stated that breaches of confidentiality/privacy or retaliation against any person involved in the investigation, including the complainant, respondent and witnesses, may result in additional disciplinary action. Defendants, in contesting a factual allegation in the Complaint (which is accurate), is making an improper argument on a motion to dismiss.

Defendants also note that the 2014 Policy allows a complainant or respondent to obtain assistance from family members, counselors, therapists, clergy, doctors or attorneys and do not prevent a student from complaining to law enforcement. (Def. Mem. 17-18.) These exceptions, however, were for a limited class of persons for limited purposes. The people to whom the Complaint alleges Sulkowicz disclosed information in a widespread disclosure about the Nungesser disciplinary proceedings do not fall into those categories. (Cmplt. ¶¶ 46-51, 68-94, 114-139.)

## C. **Columbia Breached Its Policy Concerning Retaliation.**

Despite Nungesser's clear pleading of the breach of the Policy regarding freedom from retaliation (Cmplt. ¶¶ 238-251), Defendants ignore that pleading and instead argue that Columbia did not breach its Policy because: (i) the conduct complained of did not constitute an adverse action against Nungesser due to his participation in a disciplinary hearing; (ii) Columbia was not required to take corrective action; and (iii) Columbia has a free speech policy. (Def. Mem. 19-20.) These

arguments are senseless, irresponsible rationalizations of sex-based discriminatory harassment (*see* pp. 16-23 above) that do not work on a motion to dismiss.

## III. NUNGESSER STATES A GENERAL BUSINESS LAW § 349 CLAIM.

Nungesser states a claim under New York General Business Law ("GBL") § 349 based on Columbia's false and misleading statements concerning Columbia's failure to follow its Policies. (Cmplt. ¶¶ 257-267.) Defendants' three arguments against the claim are without merit.

*First*, Defendants assert that a GBL § 349 plaintiff must show that the acts or practices have an impact larger than just a private contract dispute, citing such cases as *Sheey v. New Century Mortg. Corp.*, 690 F.Supp.2d 51 (E.D.N.Y. 2010) and *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995). (Def. Mem. 20.) But the "consumers" here are Columbia undergraduate and graduate students, which is not a small population of people.

*Second*, Defendants argue that the typical GBL § 349 case involves a purchaser of goods who has been victimized by false and misleading advertising and that when GBL § 349 has been applied in the educational context, it has only succeeded where there was false and misleading information supplied, as it was in *New York v. Colorado State Christian College of Inner Power*, 76 Misc.2d 50, 346 N.Y.S.2d 482 (Sup.Ct. N.Y. Co. 1973) (State Attorney General obtained injunction where "college" had no trained faculty, no entrance requirements, no accredited curriculum, no physical presence). (Def. Mem. 21.) But here, Columbia is alleged to have engaged in a false and misleading practices as to its Policies, and the issue is one of sufficient pleading, not final relief.

*Third*, Defendants argue that Columbia's policies are not the kind of concrete guarantees impacting consumers. The one case cited by Defendants in this connection, *Corcinno v. Filstein*, 32 A.D.3d 201, 820 N.Y.S.2d 220 (1st Dep't 2006), is way off point. There, a patient sued a doctor as a

result of permanent injuries from surgery, and the GBL § 349 claim was dismissed on summary judgment for lack of a false and misleading advertisement. Defendants' further argument that Columbia followed its Policies is, as discussed above (pp. 21-23), contradicted by the Complaint.

## IV. <u>NUNGESSER STATES OTHER STATE LAW CLAIMS.</u>

Nungesser states claims under the New York Executive Law, Article 15, Human Rights Law § 296(4) and § 296(6). (Cmplt. ¶¶ 191-206.) Defendants ignore what is pleaded in the Complaint and instead argue that because New York Human Rights Law claims are evaluated under the same standard as Title IX, Nungesser's Human Rights Law claims fail for the same reasons as his Title IX claim. (Def. Mem. 22.) But because Nungesser has a meritorious Title IX claim (pp. 8-22), his Human Rights Law claims are likewise valid.

Nungesser states a claim for breach of the implied contract covenant of good faith and fair dealing. (Cmplt. ¶¶ 252-256.) Under New York law, every contract includes an implied covenant of good faith and fair dealing. *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980), *citing Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87-88, 188 N.E. 163, 167 (N.Y. 1933). Defendants ignore what is pleaded in the Complaint and instead assert the claims for breach of contract and breach of implied contract duty of good faith are duplicative. (Def. Mem. 23.) That is insufficient on a motion to dismiss: the Complaint allegations do not establish that the two claims are duplicative. (*Compare* Cmplt. ¶¶ 214-251 *with* ¶¶ 252-256.)

Nungesser states a claim for promissory estoppel. (Cmplt. ¶¶ 268-274.) Defendants again ignore what is pleaded in the Complaint and instead argue that promissory estoppel cannot survive where defendants have neither breached the implied contract nor the university rules and procedures.

(Def. Mem. 23.) That argument, however, fails, because as discussed above (pp. 23-25), Defendants have breached the implied contract and have violated their rules and procedures.

Nungesser states a claim for negligence. (Cmplt. ¶¶ 280-284.) Defendants ignore what is pleaded in the Complaint and instead argue that Columbia did not owe a non-contractual duty of care. (Def. Mem. 23.) Defendants, however, rely on inapposite case law and miss the cases on point. The cases cited by Defendants -- *Talbot v. N.Y. Inst. Of Tech.*, 225 A.D.2d 611, 639 N.Y.S.2d 135 (2d Dep't 1996) (no university duty of care in dorms), *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 511 N.Y.S.2d 880 (2d Dep't 1987) (no fraud claim), and *Ferguson v. City of New York*, 118 A.D.3d 849, 988 N.Y.S.2d 207 (2d Dep't 2014) (social worker sued City for personal injuries) -- do not involve a sexual misconduct college disciplinary process. *Atria v. Vanderbilt Univ.*, 142 F. App'x 246 (6th Cir.2005), and *Doe v. Univ. of the South*, 2011 WL 1258104 *21 (E.D. Tenn. Mar. 31, 2011), rule that in the context of sexual misconduct college disciplinary processes, the schools do have a duty of care.

## CONCLUSION

For the reasons stated above, Plaintiff requests that the Court deny Defendants' motion to dismiss and grant such further and other relief as the Court deems just and proper.

Dated:  New York, New York
        September 21, 2015

**NESENOFF & MILTENBERG LLP**
*Attorneys for Plaintiff Paul Nungesser*
By: _____*Philip Byler*_____
      **Andrew T. Miltenberg, Esq. (AM 7006)**
      **Philip A. Byler, Esq. (PB 1234)**
      **Diana R. Zborovsky, Esq. (DZ 8288)**
      **Jeffrey S. Berkowitz (JB 4753)**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**