UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL NUNGESSER,

                          Plaintiff,

               v.

COLUMBIA UNIVERSITY,
TRUSTEES OF COLUMBIA UNIVERSITY,
LEE C. BOLLINGER, individually and as
agent of Columbia University, and JON KESSLER,
individually and as agent of Columbia University,

                          Defendants.

No. 15-cv-3216 (GHW)

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE AMENDED & SUPPLEMENTED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Columbia University, Trustees of Columbia University, Lee C. Bollinger and Jon Kessler*

# TABLE OF CONTENTS

                                                                                                                               **Page**

TABLE OF AUTHORITIES .................................................................................................... ii  
PRELIMINARY STATEMENT ...............................................................................................1  
ARGUMENT...............................................................................................................................2  
I.     Plaintiff Fails to State a Title IX Claim ......................................................................2  
         A.     The Conduct Alleged Was Not Sexual Harassment ............................................... 2  
         B.     Plaintiff Was Not Barred from Access to Educational Opportunities .................... 3  
         C.     Defendants' Actions Were Not Clearly Unreasonable under the Circumstances.. 7  
II.    Plaintiff's State Law Claims Also Fail as a Matter of Law .............................................10  
III.   This Court's Diversity Jurisdiction.................................................................................12  
CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................7

*Atria* v. *Vanderbilt Univ.*,
    142 F. App'x 246 (6th Cir. 2005) ....................................................................................12

*Bhandari* v. *Trs. of Columbia Univ.*,
    No. 00 Civ. 1735, 2000 WL 310344 (S.D.N.Y. Mar. 27, 2000) .....................................13

*Cooper* v. *Trs. of Coll. of Holy Cross*,
    No. 13 Civ. 8064, 2014 WL 2738545 (S.D.N.Y. June 17, 2014) ...................................14

*Davis* v. *Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ..............................................................................................3, 6, 7, 8

*Doe* v. *Univ. of the South*,
    No. 09 Civ. 62, 2011 WL 1258104 (E.D. Tenn. Mar. 31, 2011) ....................................12

*Emeldi* v. *Univ. of Oreg.*,
    698 F.3d 715 (9th Cir. 2012) .............................................................................................1

*Gomez* v. *Trs. for Harvard Univ.*,
    No. 87 Civ. 148, 1987 WL 16335 (D.D.C. Aug. 18, 1987).............................................14

*Hawkins* v. *Sarasota Cnty. Sch. Bd.*,
    322 F.3d 1279 (11th Cir. 2003) .........................................................................................7

*JFK Family Ltd. P'ship* v. *Millbrae Natural Gas Dev. Fund 2005, L.P.*,
    No. 07 Civ. 10591, 2008 WL 4308289 (N.Y. Sup. Ct. Sept. 16, 2008) ..........................12

*Kinsman* v. *Fla. State Univ. Bd. of Trs.*,
    No. 15 Civ. 235 (N.D. Fla. Aug. 12, 2015) .......................................................................7

*Liberman* v. *Gelstein*,
    605 N.E.2d 344 (N.Y. 1992) .............................................................................................8

*Medcalf* v. *Walsh*,
    938 F. Supp. 2d 478 (S.D.N.Y. 2013)................................................................................8

*Revell* v. *Lidov*,
    No. 00 Civ. 1268, 2001 WL 285253 (N.D. Tex. Mar. 20, 2001) ....................................13

*Riccio* v. *New Haven Bd. of Educ.*,
    467 F. Supp. 2d 219 (D. Conn. 2006) ................................................................................3

*Sauerhaft* v. *Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*,
    No. 05 Civ. 09087, 2009 WL 1576467 (S.D.N.Y. June 2, 2009), *aff'd sub
    nom. R.S.* v. *Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371
    F. App'x 231 (2d Cir. 2010) ................................................................................................6

*Theno* v. *Tonganoxie Unified Sch. Dist. No. 464*,
    377 F. Supp. 2d 952 (D. Kan. 2005) ...................................................................................3

*Thomas H.* v. *Paul B.*,
    965 N.E.2d 939 (N.Y. 2012) ................................................................................................8

*Wachovia Bank, Nat'l Ass'n* v. *Schmidt*,
    546 U.S. 303 (2006) ..........................................................................................................15

*Wolfe* v. *Fayetteville, Ark. Sch. Dist.*,
    648 F.3d 860 (8th Cir. 2011) ..............................................................................................2

**Statutes**

New York Executive Law § 296 ................................................................................................10

New York General Business Law § 349 ....................................................................................11

**Other Authorities**

Charter and Statutes of Columbia University in the City of New York ...............................13, 14

Defendants Columbia University, the Trustees of Columbia University (together, "Columbia" or "the University"), Lee C. Bollinger and Jon Kessler (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the Amended & Supplemented Complaint (the "Complaint").

## PRELIMINARY STATEMENT

With respect to at least one issue in this case, Plaintiff and Defendants completely agree—the core of Plaintiff's case focuses on the endurance art project of another Columbia undergraduate, Emma Sulkowicz, entitled "Mattress Performance (Carry That Weight)" (the "Thesis Project"). Plaintiff's theory is that Defendants should have prevented Ms. Sulkowicz from carrying a mattress around campus in order to protest Columbia's handling of her sexual misconduct claim against Plaintiff and to draw attention to the epidemic of rape on college campuses. Plaintiff's thesis is as simple as it is troubling: under Plaintiff's view, once the identity of an alleged sexual assailant becomes publicly known, the alleged victim must immediately be silenced, losing any right to speak about what happened or the issue of sexual assault on college campuses.

But nothing in Title IX supports such a drastic result. To the contrary, the very notion of silencing students involved in sexual assault proceedings is directly at odds not only with Title IX itself, *see, e.g.*, *Emeldi* v. *Univ. of Oreg.*, 698 F.3d 715, 725 (9th Cir. 2012), but with fundamental free speech principles that are the very lifeblood of American university campuses. Indeed, the chilling effects of a decision in Plaintiff's favor could have far-reaching negative consequences, particularly since, as this Court is no doubt aware, it is common in

today's world of social media for the name of alleged sexual assailants to become publicly identified.[1]

**ARGUMENT**

I. **Plaintiff Fails to State a Title IX Claim**

Defendants' moving brief established that Plaintiff fails to plead a Title IX claim of student-on-student harassment based on the University's "deliberate indifference" because: (1) the alleged harassment was not "sexual" or based on Plaintiff's gender; (2) the alleged harassment was not "so severe, pervasive, and objectively offensive" that it effectively "bar[red]" Plaintiff from access to educational opportunities or benefits; and (3) Defendants' actions in response to the alleged harassment were not "clearly unreasonable in light of the known circumstances." (Moving Br. at 7–16 (quoting *Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633, 650 (1999)).) Plaintiff's opposition only confirms that his Title IX claim should be dismissed for each of these reasons.

    A.    **The Conduct Alleged Was Not Sexual Harassment**

As to whether the conduct alleged constituted "sexual harassment" for purposes of Title IX, Plaintiff does not dispute that cases finding Title IX liability based on student-on-student harassment typically concern physical conduct that is overtly sexual in nature, including allegations of sexual touching or assault. (Moving Br. at 8.) Nor does Plaintiff dispute that cases finding Title IX liability based on verbal (not physical) harassment typically concern *gender-*related slurs such as "bitch," "whore" or "dyke." (*Id.*) And Plaintiff does not deny that his Complaint is devoid of any allegation of either sexual assault or gender-related verbal harassment. (*Id.*; *see also, e.g.*, *Wolfe* v. *Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 867 (8th Cir.

---

[1] *See, e.g.*, Walt Bogdanich, *A Star Player Accused, and a Flawed Rape Investigation*, N.Y. Times, Apr. 16, 2014, http://www.nytimes.com/interactive/2014/04/16/sports/errors-in-inquiry-on-rape-allegations-against-fsu-jameis-winston.html?_r=0.

2011) (for a deliberate indifference claim under Title IX, plaintiff is "required to show the harasser intended to discriminate against him 'on the basis of sex,' meaning the harassment was motivated by . . . gender or failure to conform with gender stereotypes").)

Plaintiff seeks to divert attention from these deficiencies by suggesting that his claim "involves more serious harassment" than that in cases like *Riccio* v. *New Haven Bd. of Educ.*, 467 F. Supp. 2d 219 (D. Conn. 2006), or *Theno* v. *Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952 (D. Kan. 2005), both of which were based primarily on allegations of verbal harassment. (Opp. at 10.) What Plaintiff ignores, however, is that the courts in those cases upheld the plaintiffs' claims precisely *because* the harassment at issue involved "sex-specific, derogatory language" that was "clearly gender-oriented," *Riccio*, 467 F. Supp. 2d at 225–26, and "[g]ender stereotyping" that disparaged plaintiff's "perceived lack of masculinity," *Theno*, 377 F. Supp. 2d at 964–65. Here, Plaintiff does not plausibly allege that the purported harassment he experienced was "clearly gender-oriented" or based on "gender stereotyping." Instead, he simply asserts that "falsely accusing a male of being a 'rapist'" is "inherently gender based." (Opp. at 11.) Not surprisingly, Plaintiff provides no support for his claim that accusations of rape are "inherently gender based." That is because such accusations are plainly based on a person's *conduct*, not his or her gender.

### B. Plaintiff Was Not Barred from Access to Educational Opportunities

Defendants' moving brief also established that the alleged harassment was not "so severe, pervasive, and objectively offensive" as "to have the systemic effect of denying [Plaintiff] equal access to" education. *Davis*, 526 U.S. at 652. In response, Plaintiff claims that he satisfies this element because the Complaint "pleads specifics of the harassment" and "specifics as to [Plaintiff's] exclusion." (Opp. at 13–14.) But no such "specifics" are actually present in the Complaint.

3

As an initial matter, Plaintiff does not dispute that the Thesis Project never referenced Plaintiff by name or likeness. Plaintiff now claims, however, that Ms. Sulkowicz's Thesis Project "was directly linked" to Plaintiff because, "[b]efore the [Thesis] Project, Sulkowicz had named [Plaintiff], making him identifiable to the public." (*Id.* at 17.) But the allegations from the Complaint that Plaintiff cites in support of this claim (Compl. ¶¶ 46–49, 58, 61–63), do not state that Ms. Sulkowicz or any University employee was the source of the information. Specifically, Paragraphs 46 and 47 do not allege that Ms. Sulkowicz disclosed Plaintiff's identity to anyone, much less that she did so in a way that made him "identifiable to the public." Paragraph 48 alleges that Ms. Sulkowicz identified Plaintiff to a reporter for the New York Post, but does not—and cannot—allege that Plaintiff was identified in the subsequent article. Paragraph 49 alleges that Ms. Sulkowicz "forwarded" Plaintiff's name to a reporter for an independent, student-run blog, but acknowledges that the reporter did not publish Plaintiff's name. Paragraph 58 alleges that Plaintiff's name appeared on a so-called "rapist list" that appeared on bathroom walls and in fliers, but does not allege that Ms. Sulkowicz played any role in creating or distributing that list, and does not allege that Plaintiff's name was tied to Ms. Sulkowicz in any way on that list. Paragraphs 61 and 62 merely allege that Ms. Sulkowicz went to the police "to criminally charge [Plaintiff] with rape," an action that Plaintiff does not dispute is contemplated and permitted by the University's policies. And Paragraph 63 simply alleges that the Columbia Spectator (an independent, student-run newspaper) reported on that criminal charge.[2]

---

[2] Equally unsupported by the allegations in the Complaint is Plaintiff's claim that "during the [Thesis] Project, Sulkowicz repeatedly called [Plaintiff] a 'serial rapist.'" (Opp. at 17.) The paragraphs cited by Plaintiff simply note that Ms. Sulkowicz referred to the person who allegedly raped her as a "serial rapist," and do not say that she identified Plaintiff by name. (*See* Compl. ¶¶ 69, 75.) Indeed, the Complaint alleges only three discrete instances in which Plaintiff was publicly identified by name, and with respect to each of those instances, Plaintiff does not allege that the University or Ms. Sulkowicz was the source of the information. (*See id.* ¶¶ 58, 63, 116; Moving Br. at 4–5.)

4

Similarly, although Plaintiff claims that he "endured a campaign of gender-based defamatory harassment lasting over a year" (Opp. at 15), what Plaintiff does not state in his Complaint may actually be far more significant than what he does allege. Unlike the plaintiff in the recent *Kinsman* case, nowhere in Plaintiff's 77-page, 284-paragraph Complaint is there any allegation that he was repeatedly or even once attacked, stalked, threatened or assaulted by anyone at Columbia, including Ms. Sulkowicz or other students. *See* Complaint ¶ 112, *Kinsman* v. *Fla. State Univ. Bd. of Trs.*, No. 15 Civ. 235 (N.D. Fla. Jan. 7, 2015), ECF No. 1 (noting that plaintiff received multiple threats on her life, that personal information about her was leaked and spread across the Internet, that there were threats to her sorority sisters as well as to burn her sorority house down, that tires on a car belonging to a sorority sister were slashed, that she was called a "slut, whore, cleatchaser" and other vile obscenities, and that her parents' and brother's phone numbers and addresses were publicized).

Plaintiff does not allege, for example, that groups of campus rape activists followed him around campus screaming at him or calling him names. Indeed, we know for a fact that Ms. Sulkowicz did not do so since Plaintiff does not dispute that she was subject to a no-contact order and he does not allege that she violated it. (Moving Br. at 13.) There is not a single allegation that Plaintiff was provoked physically in any way: he was not pushed, shoved, hit, slapped or physically harmed at all. Indeed, but for two isolated Facebook comments by an unknown male (Compl. ¶¶ 86–87), Plaintiff does not allege that he was ever seriously threatened, physically or otherwise, and there is no allegation that the unknown male who he alleges posted threatening comments on Facebook was a Columbia student, much less someone whom the University could control.

5

Thus, Plaintiff has not alleged facts sufficient to show that the alleged sexual harassment rose to the "severe, pervasive and objectionably offensive" level actionable under Title IX. *Compare Davis*, 526 U.S. at 653–54 (reversing dismissal of Title IX claim where the alleged harassment occurred regularly over a period of five months and "included numerous acts of objectively offensive touching" for which the harasser ultimately pleaded guilty to criminal misconduct); *with Sauerhaft* v. *Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, No. 05 Civ. 09087, 2009 WL 1576467, at *5 (S.D.N.Y. June 2, 2009), *aff'd sub nom. R.S.* v. *Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 371 F. App'x 231 (2d Cir. 2010) (dismissing Title IX claim where plaintiff received multiple sexually explicit and disparaging emails, but "there was no physical . . . component to the harassment").

With respect to Plaintiff's purported denial of access to educational opportunities, the inadequacy of the Complaint is even more telling. In this regard, all that Plaintiff alleges (again, in merely conclusory fashion) is that: (i) he was "ostracis[ed]" from "social activities" (Compl. ¶¶ 105–06); (ii) that due to this "ostracism" and unspecified "threats to [his] physical safety," certain University resources were "not reasonably available" to him (*id.* ¶ 106); and (iii) that attending class became "problematic, as he endured constant harassment and would have his photo taken against his will while in class" (*id.*).³ But again, there is not a single specific or concrete allegation that Plaintiff was actually prevented from attending class, no allegation that his grades suffered in any way, and no allegation that he was actually denied access to any University facilities. Plaintiff does not dispute that he graduated on time and in good standing. (Moving Br. at 10.) Certainly, if Plaintiff had been yelled at, insulted, or otherwise harassed or assaulted while on his way to, from, or inside a Columbia classroom or other facility, he would

---

³ With respect to this allegation, Plaintiff is presumably referring to students taking photos on their smartphones, an everyday occurrence among today's college students. (Compl. ¶ 106.)

6

have remembered the incident so as to plead it with plausible specificity here. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's failure to do so here, even after ample opportunity to amend his Complaint, and compared to the far more detailed allegations elsewhere in his Complaint (*see, e.g.*, Compl. ¶¶ 98, 111), dooms his claim under Title IX. *Compare* Order Den. Mot. to Dismiss at 10–11, *Kinsman* v. *Fla. State Univ. Bd. of Trs.*, No. 15 Civ. 235 (N.D. Fla. Aug. 12, 2015), ECF No. 69 (denying motion to dismiss Title IX claim where the alleged harassment "forced [plaintiff] to leave school and prevented her from returning to continue her education"); *with Hawkins* v. *Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279, 1289 (11th Cir. 2003) (affirming dismissal of Title IX claim where there was "[n]o physical exclusion or denial of access to facilities" and plaintiffs did not suffer "a decline in grades").

### C. Defendants' Actions Were Not Clearly Unreasonable under the Circumstances

The United States Supreme Court has made it clear that "there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649. Here, Plaintiff does not dispute that Defendants made accommodations for him in response to his requests, including by issuing a no-contact order between Ms. Sulkowicz and Plaintiff. For example, Plaintiff does not dispute that when he requested a public safety escort on the National Day of Action (Compl. ¶ 112), he was provided with support from a University Public Safety officer that day. (Moving Br. at 13 n.7.) Nor does he dispute that he voluntarily attended a sexual respect workshop, even though he was offered the option of writing a paper instead. (*Id.*) Instead, Plaintiff takes the untenable position that no set of accommodations could have been sufficient to avoid liability under Title IX because any response short of "stop[ping] the gender-based harassment" was "clearly unreasonable." (Opp. at 17.) This, however, directly contradicts the Supreme Court's decision in *Davis*, which makes

7

it clear that school administrators are not required to effectively rid their schools of peer harassment. *See Davis*, 526 U.S. at 648.

While Plaintiff does not dispute that most of his allegations of harassment concern speech and expression by Ms. Sulkowicz and other students regarding the handling of her case by Columbia and the broader issue of campus sexual assault, and that the University needed to be mindful of the free speech rights of its students when responding to the alleged harassment, Plaintiff suggests that Ms. Sulkowicz's "words and actions labeling [Plaintiff] a rapist were not protected First Amendment expression," because "[f]alsely accusing a person" of rape "has been considered defamatory *per se* and not constitutionally protected." (Opp. at 18.) But in this regard, Plaintiff's repeated use of the word "defamatory" in his brief (*see, e.g.*, *id.* at 1, 12, 19–20), is as significant as it is revealing. None of the cases he cites even addresses the issue of free speech, much less suggests that a university must silence or otherwise punish any student who identifies his or her alleged rapist. *See Thomas H.* v. *Paul B.*, 965 N.E.2d 939 (N.Y. 2012) (cited at Opp. 18); *Liberman* v. *Gelstein*, 605 N.E.2d 344 (N.Y. 1992) (cited at Opp. 18). What those cases do suggest is that if an individual like Plaintiff believes that he has been falsely accused of rape, he has an obvious remedy at law—he can bring an action for defamation against his accusers. That, of course, is what the plaintiffs in the cases Plaintiff cites did, but it is not what Plaintiff has done here. Instead, he has tried the legal equivalent of an "end run" around the proof required to establish such a claim by suing these Defendants instead. *See Medcalf* v. *Walsh*, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013).

In any event, as discussed above, Plaintiff does not allege that Ms. Sulkowicz ever publicly identified Plaintiff as her alleged rapist. Although he argues that the Thesis Project "was focused on [Plaintiff] and not on the subject of sexual misconduct generally" (Opp. at 17),

8

numerous articles Plaintiff cites in the Complaint make clear that the Thesis Project was viewed as a form of protest against an epidemic of rape on college campuses, not an attack on Plaintiff personally.[4] Such protests are plainly protected by the First Amendment, and it was not "clearly unreasonable" for the University to take its students' freedom of speech and right to protest into consideration.

These same considerations apply to Ms. Sulkowicz's visual arts pre-commencement art exhibit. (Moving Br. at 14.) While Plaintiff suggests—without citing any authority—that "the First Amendment protection given to 'art'" does not apply to "graphic presentations that identify a specific male as a rapist in fact after he has been cleared of the accusation" (Opp. at 20), the law does not recognize any such exception. In any event, Plaintiff does not dispute that by the time of the exhibition, Ms. Sulkowicz's views about the University's handling of her complaint against Plaintiff had already become part of the larger public discourse, and that, by that point, Plaintiff *himself* had voluntarily spoken to the press about these issues. (Moving Br. at 14.)

Plaintiff also does not dispute that the University has sole discretion over its academic decisions, including whether and when to give academic credit to a student. (*Id.* at 14–15.) While Plaintiff attempts to factually distinguish the many cases stating that courts should refrain from second guessing the on-the-scene decisions of professors and university administrators (Opp. at 3), he offers no reason why the deference accorded in those cases should

---

[4] *See, e.g.*, Emma Bogler, *Emma Sulkowicz's Performance Art Draws Support From Campus Activists*, Columbia Spectator, Sept. 2, 2014, http://columbiaspectator.com/news/2014/09/02/emma-sulkowiczs-performance-art-draws-support-campus-activists; Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times, Dec. 21, 2014, http://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html (inspired by Ms. Sulkowicz, "students at more than 100 colleges carried their own mattresses (or pillows) to call attention to the problem of campus sexual assault").

not apply to Defendants here.[5] And although Plaintiff argues that "[l]aw . . . puts a limit on academic freedom" (*id.* at 20), nothing in Title IX precludes a university from awarding academic credit for a performance art project highlighting the issue of sexual assault on campus and criticizing the university's response to a sexual assault claim.

Finally, Plaintiff criticizes the University's attempts to prevent Ms. Sulkowicz from carrying her mattress to the Class Day ceremony as not "effective" (*id.*), but he does not dispute that grabbing the mattress out of Ms. Sulkowicz's hands would have disrupted the ceremony for everyone and could have been dangerous given the space limitations and the size of the crowd. (Moving Br. at 15–16.) Given those concerns, Columbia's decision not to engage in a disruptive physical altercation with Ms. Sulkowicz at the graduation ceremony was not "clearly unreasonable" under the circumstances.

## II. Plaintiff's State Law Claims Also Fail as a Matter of Law

Plaintiff's arguments in support of his state law claims are equally meritless.

Breach of Contract. Plaintiff does not dispute that if his Title IX claim fails (which it does, for the reasons discussed above), then his contract claim based on the University's gender-based harassment policy must also fail.[6] (*Id.* at 20.) Plaintiff's two remaining contract theories, based on alleged violations concerning confidentiality and retaliation, are similarly unavailing. Plaintiff simply does not—and cannot—identify a specific contractual obligation concerning confidentiality or retaliation that Columbia violated. Plaintiff ignores that the confidentiality provisions in the relevant policies do not prohibit a complainant

---

[5] As stated in our moving brief (Moving Br. at 24), the same arguments on Plaintiff's claims apply to all the defendants, including the individual defendants Kessler and Bollinger. It is noteworthy, however, that Plaintiff does not really make any effort in his brief to explain why his claims apply to them individually, as opposed to the University.

[6] Plaintiff does not dispute that his claims under New York Executive Law § 296(4) and § 296(6) must also fail for the same reason. (Moving Br. at 22; Opp. at 24.)

from discussing the conduct that underlies a gender-based misconduct complaint, and that even when a student has violated a provision, the policies do not give rise to a contractual obligation requiring the University to take disciplinary action, but instead leave that decision to Columbia in its sole discretion. (*Id.* at 16–19.)[7] And Plaintiff disregards that these policies must be balanced against other applicable University policies intended to protect free speech. (*Id.* at 19–20.)

GBL § 349. Plaintiff does not dispute that to state a claim under GBL § 349, he must allege that Defendants' challenged acts were "consumer-oriented" and "have a broad impact on consumers at large." (Moving Br. at 20.) He simply asserts that "Columbia undergraduate and graduate students" are "not a small population of people." (Opp. at 23.) But this does not satisfy the requisite pleading standard: Plaintiff does not—and cannot—claim that the entire student body of Columbia was impacted by the acts he complains of here. And Plaintiff does not dispute that the only circumstance in which GBL § 349 has been applied in the educational context is where an entity that purported to be a "college" in fact was a sham, and thus "d[id] not qualify as a college or institution of higher learning." (Moving Br. at 21 (quoting *New York* v. *Colo. State Christian Coll. of Church of Inner Power, Inc.*, 346 N.Y.S.2d 482, 484 (N.Y. Sup. Ct. 1973)).) Unlike that case, and others in which GBL § 349 applies, this is not a situation in which purchasers of goods were victimized by false and misleading advertising.

Breach of Implied Covenant of Good Faith and Fair Dealing. Plaintiff does not dispute that a claim for breach of the implied covenant of good faith and fair dealing must be dismissed where (as here) it is based on the same facts as a claim for breach of contract. (*Id.* at

---

[7] The distinction that Plaintiff seeks to draw between the January 2013 Policy and the August 2013 Policy is irrelevant for purposes of this motion, because regardless of which policy applies, Columbia was not contractually bound to discipline a student who breached the confidentiality/privacy or retaliation provisions of the policies.

11

22–23.) While he asserts, without any explanation, that the two claims are not duplicative (Opp. at 24), it is indisputable that they are based on the same alleged facts and seek the same damages. (*Compare, e.g.,* Compl. ¶¶ 219–27 *with* ¶¶ 252–56.) Plaintiff also fails to allege any "specific implied contractual obligation" that Defendants purportedly breached. *JFK Family Ltd. P'ship* v. *Millbrae Natural Gas Dev. Fund 2005, L.P.*, No. 07 Civ. 10591, 2008 WL 4308289, at *24 (N.Y. Sup. Ct. Sept. 16, 2008).[8]

<u>Negligence.</u>  Defendants' moving brief established that, under New York law, absent some separate voluntary undertaking, a university owes its students no other, non-contractual duty of care. (Moving Br. at 23.) Plaintiff cites no New York authority to the contrary. Instead, he suggests, relying solely on two cases applying Tennessee law, that a duty does exist "in the context of sexual misconduct college disciplinary processes." (Opp. at 25.) But the first case he cites, *Atria* v. *Vanderbilt Univ.*, 142 F. App'x 246 (6th Cir. 2005), involved a Professor's method of handing back graded answer sheets, and had nothing to do with sexual misconduct. *See id.* at 251. And the other case he relies on, *Doe* v. *Univ. of the South*, No. 09 Civ. 62, 2011 WL 1258104 (E.D. Tenn. Mar. 31, 2011), simply suggests that a duty could potentially arise where "the harm was severe: a wrongful conviction by a disciplinary committee." *Id.* at *21. Plaintiff has alleged no such harm here.[9]

## III. This Court's Diversity Jurisdiction

In this Court's September 24, 2015 Order, this Court asked Defendants to "identify whether any member of the board of trustees is or was at any relevant time a citizen of a foreign state, and if so, address the impact of that person's citizenship on this Court's diversity

---

[8] Plaintiff does not dispute that if his express and implied contract claims fail, then his promissory estoppel claim must also be dismissed. (Moving Br. at 23.)

[9] Plaintiff does not dispute that he fails to state a claim for intentional infliction of emotional distress. (Moving Br. at 23–24.)

12

jurisdiction." (Order, Dkt. No. 33.) Defendants respectfully submit that this issue does not affect the Court's diversity jurisdiction in this case.

Columbia University is a New York not-for-profit corporation that is incorporated under the name "The Trustees of Columbia University in the City of New York."[10] It was formed in 1754 pursuant to a royal charter granted by King George II which created a "Body Corporate" (originally known as Kings College) to establish and maintain a college in New York City.[11] In other words, Columbia was formed as the eighteenth-century British equivalent of a not-for-profit corporation. The current Charter was last amended by the New York State Legislature in 1810.[12]

Because the University is officially incorporated under the name "The Trustees of Columbia University in the City of New York," plaintiffs who seek to sue the University typically do so by naming "The Trustees of Columbia University" as a defendant. *See, e.g.*, *Bhandari* v. *Trs. of Columbia Univ.*, No. 00 Civ. 1735, 2000 WL 310344 (S.D.N.Y. Mar. 27, 2000); *see also Revell* v. *Lidov*, No. 00 Civ. 1268, 2001 WL 285253, at *2 (N.D. Tex. Mar. 20, 2001) ("Defendant Board of Trustees of Columbia University of the City of New York . . . is a not-for-profit corporation."). That is what Plaintiff has done here. As the Charter explains, "the present Trustees of [Columbia College] . . . shall be and remain forever hereafter, a body politic and corporate, in fact and in name, by the name of The Trustees of Columbia College in the City

---

[10] *See* Columbia University: Organization and Governance of the University, http://www.columbia.edu/cu/vpaa/handbook/organization.html (last visited Sept. 28, 2015).

[11] Charter and Statutes of Columbia University in the City of New York (the "Charter") at 3, *available at* http://secretary.columbia.edu/files/secretary/university_charters_and_statutes/University%20Charters%20and%20Statutes_June%202013.pdf (the "Charter").

[12] *See* Columbia University: Organization and Governance of the University, http://www.columbia.edu/cu/vpaa/handbook/organization.html (last visited Sept. 28, 2015). The only change to the University's charter since the legislative amendment in 1810 is a change in the name of the corporation from "The Trustees of Columbia College in the City of New York," to "The Trustees of Columbia University in the City of New York," by order of the New York Supreme Court in 1912. *See* Charter at 9.

of New York, and by that name shall and may have continual succession for ever hereafter, and shall be able in law to sue and be sued, implead and be impleaded, answer and be answered unto, defend and be defended, in all courts and places whatsoever."[13] The same is true with respect to a number of other Ivy League universities, including Harvard. *Gomez* v. *Trs. for Harvard Univ.*, No. 87 Civ. 148, 1987 WL 16335, at *1 (D.D.C. Aug. 18, 1987); *see also Cooper* v. *Trs. of Coll. of Holy Cross*, No. 13 Civ. 8064, 2014 WL 2738545, at *5 (S.D.N.Y. June 17, 2014) ("educational institutions . . . typically incorporate while utilizing a corporate name that references 'trustees'").

Although Plaintiff lists both "Columbia University" and "Trustees of Columbia University" in his caption for this case, as discussed above, they are one and the same. That Plaintiff intended to sue the corporate entity known as "The Trustees of Columbia University in the City of New York," not the trustees in their individual capacities, is evidenced by the fact that Plaintiff does not include a single allegation with respect to any of the individual trustees in the Complaint. Indeed, when the Court raised this issue at the conference on July 1, 2015, counsel for Plaintiff clarified that "the view we took when we did the complaint was that we were suing them in the capacity as trustees of Columbia University, that they were functioning as Columbia," and "that is why . . . we viewed them as New York in terms of diversity jurisdiction." (Tr. of Proceedings re: 7/1/2015 Conference at 14, Dkt. No. 17.)[14]

While the University does have one Trustee who is not a U.S. citizen, Defendants respectfully submit, for the reasons discussed above, that this fact is immaterial to whether the

---

[13] Charter at 4.

[14] In the event that Plaintiff takes the position in his sur-reply that he is seeking to sue the individual trustees, then we respectfully submit that Plaintiff's claims should be dismissed against those individuals not only for the reasons stated herein, but also because the Complaint does not contain a single allegation concerning any of the individual trustees, and thus cannot possibly state a plausible claim against those individuals under *Iqbal* and *Twombly*.

14

Court may exercise diversity jurisdiction here. We are not aware of any authority suggesting that a court should look to the citizenship of the individual board members of a corporation when analyzing diversity jurisdiction. To the contrary, it is clear that "[a] business organized as a corporation, for diversity jurisdiction purposes, is 'deemed to be a citizen of any State by which it has been incorporated' and . . . also 'of the State where it has its principal place of business.'" *Wachovia Bank* v. *Schmidt*, 546 U.S. 303, 306 (2006) (quoting 28 U.S.C. § 1332(c)(1)).

## CONCLUSION

For these reasons, and those in Defendants' moving brief, Defendants respectfully request that the Court grant their motion to dismiss the Complaint in its entirety, with prejudice.

Dated: September 28, 2015

        Respectfully submitted,

        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

    By:        */s/ Roberta A. Kaplan*

        Michele S. Hirshman
        Roberta A. Kaplan
        Darren W. Johnson

        1285 Avenue of the Americas
        New York, NY 10019-6064
        Main: 212.373.3000
        Fax: 212.757.3990
        mhirshman@paulweiss.com
        rkaplan@paulweiss.com
        djohnson@paulweiss.com

        *Attorneys for Columbia University,*
        *Trustees of Columbia University,*
        *Lee C. Bollinger and Jon Kessler*