112.   Just as the term "whore" used towards a woman <u>not</u> working as a prostitute, the terms "rapist" or "serial rapist" used <u>toward an innocent male</u> present "an act of verbal aggression, intimidation and hostility based on sex or sex-stereotyping"[110]. Such acts are according to the Office of Civil Rights defined as gender-based harassment and are actionable according to Title IX.

---

Source: Columbia Spectator, April 7, 2014: Columbia junior speaks at launch of Sen. Gillibrand's effort to fight sexual assault on college campuses (http://columbiaspectator.com/2014/04/07/columbia-junior-speaks-launch-sen-gillibrands-effort-fight-sexual-assault-college).

- With regard to the so-called "rapist list" on which Paul was listed as a "serial rapist": Sulkowicz identified him on the list, she is quoted as follows: *She said that she did not know who was behind the graffiti, but that the list included the name of the man who had assaulted her.*
  Source: New York Times, May 13, 2014: List of Names in Sex Assaults Roils Columbia (http://www.nytimes.com/2014/05/14/nyregion/list-of-names-in-sex-assaults-roils-columbia.html).

- Sulkowicz identified one of the men on the list as her attacker.
  *"<u>My rapist</u> is a part of this community. I don't feel safe knowing (he's) around," she said in a phone interview. <u>The man she identified as her rapist</u> has allegedly been the subject of three separate formal sexual assault complaints.*
  Source: Fusion, May 16, 2014: Students Allege That Rape Goes Unpunished at Columbia University (http://fusion.net/justice/story/students-allege-rape-unpunished-columbia-university-687212).

- *"I see him around campus, and it's really scary, because I know what he's capable of," Sulkowicz said. "... I know <u>he's going to continue to rape other women</u> on campus."*
  Source: Al Jazeera, May 19, 2014: Why college rape victims don't go to the police (http://america.aljazeera.com/watch/shows/america-tonight/articles/2014/5/19/why-college-rapevictimsdonatgotothepolice.html).

- *ES: (...) then I met another woman who said that <u>the same person who had raped</u> me had engaged with intimate partner violence with her over an extended period of time. And we ended up meeting <u>another woman who'd been raped by him</u>.*
  Source: The Indypendent, June 12, 2014: 'There Was No One For Me To Turn To' (https://indypendent.org/2014/06/12/%E2%80%98there-was-no-one-me-turn-to%E2%80%99).

- *One, Emma Sulkowicz, is a student at Columbia University and she said <u>she was raped by another student</u> in her dorm. She said <u>her attacker</u> was not punished and <u>he went on to sexually assault three other women</u>.*
  Source: WNYC, August 13, 2014: Senator Calls for Support, Transparency for Campus Sex Assault Victims (http://www.wnyc.org/story/gillibrand-support-sexual-assault/).

- *ES: The <u>man who raped me</u> <u>and all of these other women is a serial rapist</u>. It's not a hookup culture that's causing it. <u>He has systematically attacked women</u>.*
  Source: MSNBC, August 29: I Just Want My Campus Back (http://www.msnbc.com/ronan-farrow-daily/i-just-want-my-campus-back).

- *EMMA SULKOWICZ: I mean, in the end of the day, <u>my rapist</u> is still here. (...) And I feel like, what good are these policies when <u>my serial rapist is still on this campus potentially attacking more students</u>? (...)*
  *EMMA SULKOWICZ: Yeah, until—I will carry the mattress with me to all of my classes, every campus building, for as long as <u>my rapist stays on the same campus with me</u>.*
  Source: DemocracyNow, September 9, 2014: "We Will Not Be Silenced": Students Denounce Rape at Columbia as Schools Face Scrutiny for Inaction (http://www.democracynow.org/2014/9/16/we_will_not_be_silenced_students , Video and transcript)

[110] Dear Colleague Letter, Office of Civil Rights, October 26, 2010, Page 7 (http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf).

ii.   **The Term 'Rapist' as a Gendered Slur.**

113.   Sex-based and gender-based stereotypes are never constructed completely symmetrical. However, similar to "whore," "rapist" is a term, that can either describe a fact – a person is offering sexual service / a person having committed sexual violence against another person – or be used as a gendered slur[111]: "You dress / dance / act like a whore" is a gendered slur, a form of verbal abuse that is only directed at women, because it criticizes an alleged behavior that violates the social norms of "how a woman should behave." To describe a woman, who does not work as a prostitute, as a whore, aims to demean her and accuse her of violating assumed female virtues (like chastity, restraint in sexual activities, rejection of promiscuous behavior) and instead equates her with a standard, sex-based, misogynist stereotype ("women are whores"). *See Doe v. East Haven Bd. Of Education*, 200 F. App'x 4, 48 (2d Cir. 2006) (calling a woman "a slut" or "a whore" "reflect sex-based stereotypes").

a.   **"Rapist" is a Gender Specific Term.**

114.   Although persons of any gender may be perpetrators, or victims, of sexual assault,[112] "rapist" is a term that in common usage is exclusively applied to men.[113] This holds true despite the fact that jurisdiction has started to recognize that women also can be perpetrators

---

[111] Or as courts have rightly found: 'whore' is a name "that "reflect[ed] sex-based stereotypes"); *T.Z. v. City of New York*, 634 F. Supp.2d 263, 266 (E.D.N.Y. 2009). Compare *Nungesser vs. Columbia* Memorandum and Order, p. 12. Note that 'sex-based' is used in the meaning of 'gender-based' here, not in the meaning of "based on a sexual act".
[112] *Nungesser vs. Columbia*, Memorandum and Order, page 11, footnote 8.
[113] Just as the term "whore" in common usage needs a gender specific qualifier to apply it to males ("man-whore," "male-whore"), a female qualifier is used in most cases to describe a woman accused or convicted of rape ("female rapist"), even though the subsequent use of gender specific pronouns ("she," "her," etc.) makes sufficiently clear that the "rapist" in these cases is a female. Results from a Google search include the following quotes:
- "Seattle police acknowledged to KOMO-TV that an arrest of a female rapist is unusual." (http://www.huffingtonpost.com/2014/09/15/chantae-gilman-woman-rapes-man-seattle_n_5824456.html)
- "Female rapist faces jail after being found guilty of running paedophile ring which subjected five young children to horrific abuse over more than a decade." http://www.dailymail.co.uk/news/article-3176340/Woman-faces-jail-guilty-running-paedo-ring.html#ixzz445yjMEDF
- A FEMALE rapist could spend the rest of her life behind bars after helping to carry out an horrific two-hour sex attack on another woman. (http://www.thesun.co.uk/sol/homepage/news/75761/Female-rapist-is-caged-for-life.html)

of sexual violence and even rape and despite the fact that in reality men are just as likely to fall victim to sexual violence as females and that 46% of male victims of sexual violence report a female perpetrator. Stemple and Meyer observe that *"(t)he conceptualization of men as perpetrators and women as victims remains the dominant sexual victimization paradigm,"*[114] provided that crimes such as "made to penetrate" that are gender specific to male victims are included in surveys.[115]

### b.   <u>Dictionaries Provide Gendered Definitions of the Term "Rapist."</u>

115.   The common "conceptualization of men as perpetrators and women as victims" of rape / sexual violence is reflected by the following definitions.

116.   According to the Merriam-Webster dictionary, rape is *"unlawful sexual activity and usually sexual intercourse carried out forcibly or under threat of injury against the will <u>usually of a female</u> or with a person who is beneath a certain age or incapable of valid consent."* However, the two examples that the Merriam-Webster dictionary provides reference a male perpetrator and a female victim: *"<u>He is accused</u> of raping the girl"* and *"<u>She was raped</u> by a fellow student."*[116](Emphasis added.)

117.   While Black's Law Dictionary[117] points out that the victims of rape are "usually" females, it clearly uses a gender specific male pronoun ("his") to describe the perpetrator in its definition of the term "rape":

> Unlawful sexual activity with a person <u>(usu. a female)</u> without consent and usu. by force and by threat. Rape includes unlawful sexual intercourse without consent after the perpetrator has substantially impaired <u>his</u> victim by administering,

---

[114] Stemple, Meyer, p. e19.
[115] Ibid.
[116] http://www.merriam-webster.com/dictionary/rape (emphasis added).
[117] Regarding the validity of definitions provided by "Black's Law Dictionary" for legal arguments compare p. 9 of Nungesser vs. Columbia, Memorandum and Order.

without the victim's knowledge or consent, drugs or intoxicants for the purpose of preventing resistance.[118]

### c.   The Term 'Rapist' Used as a Slur.

118.   When not used in the factual sense, as defined above, "rapist" constitutes one of the worst insults, as the definitions provided by the "Urban Dictionary" prove. Most[119] explanations are like the following:

> "Somebody sad enough not to be able to get any sex, so they go about their business by forcing themselves on women."
> "The worst kind of scum on this cruel word next to pedophiles. Willing to hurt people (mainly of the female sex) mentally and physically to accomplish their own sick sexual needs."
> "A sick pervert who is obsessed with sex so much that he's willing to hurt women for it. "
> "Rapists fall in between child molester (the worst) and terrorist (the third worst) in the top ten SCUMBAGS list." [120]

### d.   Sulkowicz Used the Terms "Rapist" and "Serial Rapist" As Gendered Slurs.

119.   Other than claimed, Sulkowicz did not use the term "rapist" "because of his [Paul´s] conduct towards her"[121] – because there was no such conduct: Paul never raped Sulkowicz, Columbia exonerated him after a thorough lengthy investigation, the police declined to even investigate due to the lack of reasonable suspicion.

120.   Sulkowicz's use of the term "rapist" thus was not based on an actual event, rather she invented an event in order to stigmatize Nungesser as a rapist.[122] Phrased differently, Sulkowicz's behavior was in no way different to a person who tries to discredit a woman as a "whore" by using made up stories regarding her sexual behavior.

---

[118]  Black's Law Dictionary (Bryan Garner, et al., eds., 10th ed. 2014, p. 1450). Emphasis added.
[119]  Apart from the few factual and gender-neutral descriptions like "a person who forces sex upon another".
[120]  http://www.urbandictionary.com/define.php?term=rapist.
[121]  Nungesser vs. Columbia, Memorandum and Order, p.11
[122]  Even worse: she persuaded other women to level false accusations against him. These accusations were also found to be false by Columbia; however, they never included another accusation of rape.

121.    Particularly, Sulkowicz's use of the term 'serial rapist' makes this even more obvious. There was never an accusation of serial rape against Paul. The other allegations made against Paul in collusion with Sulkowicz – and from which Paul was similarly exonerated – made no mention of a non-consensual intercourse i.e. rape. Thus, a use of the term 'serial rapist' to describe a factual conduct is completely out of question.

### iii.    Spreading False Rumors of a Sexual Nature Constitutes Sexual Harassment.

122.    "Spreading rumors of a sexual nature," according to the Office of Civil Rights, is a form of sexual harassment prohibited by Title IX.[123] The defamation of an innocent male as a "rapist" / "serial rapist" verbally, in writing and drawing constitutes sexual harassment and is prohibited by Title IX. Defendant Columbia contributed to the spreading of these rumors – among others -- by publishing them on a university owned website.

### iv.    Threatening Former Sexual Partners Constitutes Intimate Partner Violence, A Form of Gender-Based Misconduct.

123.    In accordance with Title IX, Columbia University policy recognizes intimate partner violence[124] as a form of gender-based misconduct.

124.    As described above, Sulkowicz showed a pattern of behavior that intimidated, humiliated, isolated, threatened, blamed and frightened Paul, her former partner in an intimate relationship, which according to Columbia's definition constitutes intimate partner violence, a form of gender-based misconduct.

125.    Intimate partner violence is defined as

---

[123] Compare: „Thus, sexual harassment prohibited by Title IX can include conduct such as (…) spreading sexual rumors (…). Source: Dear Colleague Letter, 2010, page 6.
(http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf, accessed April 19, 2016). Emphasis added.
[124] Compare: "Gender-based misconduct comprises a broad range of behaviors focused on sex and/or gender discrimination that may or may not be sexual in nature. Sexual harassment, sexual assault, gender-based harassment, stalking, and intimate partner violence are forms of gender-based misconduct under this policy. (…) Gender-based misconduct can be committed by anyone regardless of gender identity, and it can occur between people of the same or different sex or gender."(2013-1 Policy, p. 4; 2013-8 Policy, p. 2, emphasis added)

The use of physical violence, <u>coercion, threats, intimidation, isolation</u>, stalking, or other forms of emotional, sexual or economic abuse directed towards a <u>partner in an intimate relationship</u> (…). This includes any <u>behaviors that intimidate</u>, manipulate, <u>humiliate, isolate, frighten</u>, terrorize, coerce, <u>threaten, blame, hurt</u>, injure, or wound someone. Intimate partner violence can be a single act or <u>a pattern of behavior in relationships</u>.

126.    The policy explicitly includes sexual relationships that have already ended and those that only existed briefly.[125]

### v.    <u>Sulkowicz's Pornographic Prints of Paul Constitute Sexual Harassment.</u>

127.    Sulkowicz's extremely graphic prints of Paul constitute sexual harassment and are prohibited by Title IX:

Thus, sexual harassment prohibited by Title IX can include conduct such as (…) <u>displaying or distributing sexually explicit drawings, pictures</u>, or written materials (…) of a sexual nature."[126]

128.    By exhibiting those prints on its campus and awarding credits for their production, Columbia was not only deliberately indifferent to sexual harassment on its campus, it became an active part in Sulkowicz's sexual harassment campaign against Paul.

### vi.    <u>Why False Accusations Constitute Gender-Based Harassment.</u>

129.    In criminal law false accusation is a serious crime, albeit rarely prosecuted in sexual assault cases. For the almost exclusively male victims a false accusation of rape is highly traumatic[127] and hugely damaging to their public reputation. All serious studies assume that false

---

[125] "Intimate partner relationships are defined as <u>short</u> or long-term relationships (current or <u>former</u>) between persons intended to provide some emotional/romantic and/<u>or physical intimacy</u>." (2013-1 Policy, p. 4; 2013-8 Policy, p. 2, emphasis added)
[126] Dear Colleague Letter, 2010, Page 6. Emphasis added.
[127] Families Advocating for Campus Equality (FACE): Proposed Amendments to the CAMPUS ACCOUNTABILITY AND SAFETY ACT (http://nebula.wsimg.com/8b866a2382352e7b8c644a811126e1dc?AccessKeyId=3095010B378753E0B4A8&dispos ition=0&alloworigin=1, accessed April 24, 2016) p. 5.

accusations occur – estimating at between 8 and 10%[128] of police reports of sexual violence are false accusations.[129]

130.    However, the Columbia University policy does not include any kind of investigation and sanctioning against those that file false accusations. False accusation plays no role whatsoever in Columbia's practice in dealing with gender-based misconduct, despite the fact that 1 out of 11 (9%) reports at Columbia in the category of "Non-consensual Sexual Intercourse"[130] in the 2013/2014 academic year[131] and 1 out of 10 (10%) in the 2014/2015 academic year[132] were admittedly false and recanted by the accusers.

131.    The complete absence of any recognition of that traumatizing experience is also the reason why Columbia has no procedure whatsoever to support those students that were exonerated of the accusation of sexual violence.[133]

132.    As shown above, Columbia's practice in dealing with sexual violence systematically precludes the possibility of female perpetrators and male victimization through – among others – "being made to penetrate" and "false accusation." Thus, Columbia's institutional practice is largely based on the stereotype of the active, voracious, aggressive male and the passive, restrained, non-aggressive woman -- in short: of male perpetrators and female victims,

---

[128] Phillip N.S. Rumney shows in his review of the literature on false rape charges that serious studies converge around a rate of eight to ten percent (Phillip N.S. Rumney: False Allegations of Rape in Cambridge Law Journal 65 (1), 2006, pp. 128-158. Online available under http://eprints.uwe.ac.uk/6478/1/Download.pdf, accessed April 19, 2016.)

[129] With college investigations these figure should be even higher, considering there are no real risks of punishment for the false accuser.

[130] "Non consensual sexual intercourse" is Columbia's term for rape in its policies and proceedings.

[131] Columbia University Gender-based Misconduct Prevention and Response, September 21, 2015, p. 27. These cases of admittedly false accusations are complimented with another 27% (3 out of 11) of the accusations that were found not credible and ended with a finding of „not responsible".

[132] Columbia University Gender-based Misconduct Prevention and Response, September 21, 2015, p. 15. In this year 30% (3 out of 10) of the allegations ended with a formal acquittal of the accused students after an investigation.

[133] Neither Columbia's policies nor their practice contain any provision for an accused once he is exonerated: In Paul's case the so-called interim measures were never factually lifted, thus punishing an innocent man, and he was never publicly rehabilitated. In fact, citing FERPA, Columbia admins repeatedly refused to comment on the case in Paul's favor, while no such limitations were in support of Sulkowicz when it came to Professor Kessler statements and the publication of defamatory statements on the website of the IRWGS.

which is a sex-based stereotyping and overgeneralization that is discriminatory and a clear violation of Title IX.

## D.   Columbia Applies its Speech Codes Differently to Men.

133.   Threatening, intimidating and isolating a former sexual partner, calling an innocent man a "rapist" and a "serial rapist," spreading rumors of a sexual nature and exhibiting pornographic material depicting a real person without consent constitute clear violations of both Title IX and Columbia's policies. Paul was constantly reminded of and held under a confidentiality order with the threat of disciplinary action that ultimately could endanger his college education and his visa status.[134] At the same time no such restrictions were imposed on Sulkowicz. On the contrary, her actions were endorsed and enabled by Columbia.

134.   According to its own policy, Columbia aims to allow "the maximum freedom of expression consistent with the rights of others."[135] However, Columbia University restricts this free speech on a daily basis, exactly in order to protect "the rights of others." While there is no known case of any females ever being disciplined for violations of these speech codes,[136] Columbia has in the past disciplined exclusively male students for phrases such as "Don't be a pussy" and enforced its speech codes[137]. The fact that Sulkowicz called Paul, who was found innocent by the university, countless times "a rapist" and "a serial rapist" for over a year in public, her threats to his safety and her attempts to isolate, intimidate and ridicule him by spreading false rumors, and publishing pornographic prints of him without his consent, went

---

[134] In case of suspension or expulsion Paul would have lost his visa status and would have had to leave the country immediately leaving him with no reasonable recourse to clear his name.

[135] Compare Nungesser vs. Columbia, Motion to dismiss, p.21.

[136] These speech codes are found in its policies that deal with gender-based misconduct as well as in the *Rules of Conduct.*

[137] Morey, Alex: Now That It's Being Sued, 'Red Light' Columbia Cozies Up to Free Speech. Fire, September 1, 2015 https://www.thefire.org/now-that-its-being-sued-red-light-columbia-cozies-up-to-free-speech/. Accessed April 24, 2016

[52]

without any university intervention shows Defendant's gender-based discriminatory application of university policy.

**E.    Paul Nungesser Was Deprived of Educational Opportunities.**

    **i.    Before Paul Became The Victim of Gender-Based Harassment, Paul Fully Took Advantage of Columbia's Educational Opportunities.**

135.   In April 2013, before the false accusations were leveled against him, Paul was an active participant in the Columbia community, taking full advantage of its campus resources, its social connections as well as professional and pre-professional opportunities. He had just finished filming his first short film as director of photography and was preparing to do more film work in Los Angeles through connections he had made at Columbia. His coursework only presented one part of his time spent engaging with Columbia -- his education there was complemented by participating in countless extracurricular activities, [138] optional academic opportunities and taking advantage of its incredible on-campus resources, such as COÖP, an outdoor orientation program, a film collective he co-founded, the John Jay Scholars program and receiving support from the Gatsby Arts Grant.

    **ii.    After the Beginning of the Harassment Campaign That Was Allowed and Supported by Columbia, Paul was Deprived of Numerous Educational Opportunities.**

136.   As a result of the gender-based hostile educational environment created by Columbia and Defendants Bollinger, Kessler, Vu-Daniel, and Hirsch, including but not limited to Columbia allowing Sulkowicz to carry around a mattress and to falsely accuse Paul of being a "rapist," everyday life for Paul was stressful, as he became socially isolated, subject to threats

---

[138] Paul among other activities hosted a weekly radio show on the WBAR college radio in fall 2011 and spring 2012. He designed the sets for two theatre productions, "The Blind" (April 2012) and "A Bright Room Called Day" (October 2012) as well as the set design for TEDx Columbia College (October 2012) and worked as an assistant to set designer and Barnard theatre professor Sandra Goldmark.

and was deprived of educational opportunities. Paul was treated as if he were effectively guilty, faced constant harassment and was left on his own to deal with the fallout of the Columbia supported campaign against him.

     a.    **Threats by Sulkowicz and Her Followers Made Paul Reasonably Fearful for His Safety and His Physical Well-Being.**

137.    The hostile educational environment fostered by Columbia and Defendants Bollinger, Kessler, Vu-Daniel and Hirsch resulted in Paul's suspensions from ADP and COOP and included threats made to Paul's safety and well-being. Sulkowicz publicly threatened Paul, stating, *"[i]t's not safe for him to be on this campus."*[139] Further threats to Paul were posted to Sulkowicz's public Facebook page, which has approximately 1,900 friends/followers. The first post was made by a friend of Emma Sulkowicz's named Jay Good, appearing in September 2014, which stated in relevant part, *"I'm only pissed that I'm not in NY to CUT HIS THROAT MYSELF."* Jay Good posted again on December 22, 2014, at 1:40 pm, stating in relevant part that Paul *"needs to practice silence or suicide before he gets dealt with accordingly."* Sulkowicz publicly "liked" the post by commenting with a "thumbs up" icon. This post and her "like" remained publicly posted:[140]

---

[139] See Kaminer, Ariel: *Accusers and the Accused, Crossing Paths at Columbia University.* NY Times, December 21, 2014. http://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html?_r=0, Accessed April 24, 2016.
[140] Statements evidenced by following screenshots from a) Jay Good's post and b) Sulkowicz's "like" of the same post as of April 22, 2015.

 **Marybeth Seitz-Brown** rage. fuck that abuser, and fuck the NYT for its scare quotes around IPV. this is bullshit. sending you love and fury and whatever else you need.
December 22, 2014 at 12:37pm · Like · 👍 6

 **Jay Good** didnt read the article but what I do know is that the he needs to practice silence or suicide before he gets dealt with accordingly. Happy Holidays!
December 22, 2014 at 1:40pm · Like · 👍 1

 **John Pulice** If only the Columbia process had worked so he'd be the subject of actual justice instead of "mob justice"
December 22, 2014 at 1:50pm · Edited · Like · 👍 1

 **Marybeth Seitz-Brown** rage. fuck that abuser, and fuck the NYT for its scare quotes around IPV. this is bullshit. sending you love and fury and whatever else you need.
December 22, 2014 at 12:37pm · Like · 👍 6

 **Jay Good** didnt read the [ **Emma Sulkowicz likes this.** ]at the he needs to practice silence or suicide ordingly. Happy Holidays!
December 22, 2014 at 1:40pm · Like · 👍 1

 **John Pulice** If only the Columbia process had worked so he'd be the subject of actual justice instead of "mob justice"
December 22, 2014 at 1:50pm · Edited · Like · 👍 1

138.   Multiple other threats were published on social media and in the commentary sections of media, including media in New York City and Columbia's student media, such as Columbia Spectator and Bwog[141], making Paul reasonably fearful for his safety on Campus. Among those were the following:

139.   Tumblr user "theatricalhomo" from New York City blogged the following text: *"We should all know his name. (…) his name is Jean-Paul Nungesser and Facebook is Jean Paul Ezhno"*[142] It was reblogged over 1200 times:

---

[141] Commentators in the student media frequently called for revenge on Paul and wallowed in revenge fantasies that endorsed prison rape for convicted rapists and also threatened Paul personally. Even though most of these offensive comments were later deleted by moderators, they made Paul reasonably fear for his safety since it was reasonable to suppose that while anonymous, most of the comments were written by students at Columbia.
[142] http://theatricalhomo.tumblr.com/post/96682277536/teenytigress-coketalk-i-am-deeply-angered-by



140.    A Tumblr user with the username athousandmistingsdawns blogged the following

text: *"The name of Emma Sulkowicz's rapist is Jean-Paul Nungesser. Don't let him have any*

*feeling of anonymity or security. Rapists don't get the luxury of feeling comfortable"*[143]. It was

reblogged almost 250 times by other Tumblr users, many from New York City:



―――――――――――――――――――――――
[143] http://athousandmistingdawns.tumblr.com/post/96599451549/anxius-the-name-of-emma-sulkowiczs-rapist-is

[56]

141.    Twitter user Jenny Treviso, an avid follower of Sulkowicz's Mattress Project "Carry that weight", tweeted: *"Jean-Paul Nungesser needs to fucking burn and the rest of the assholes at fucking Columbia. #carrythatweight"*[144]



142.    Commentator Sergio Arellano at the NYT-Facebook page suggested using gun violence against Paul: *"A 9mm pistol is way lighter and more effective to keep away rapists..."*[145]



143.    Twitter user @cosmicwangst from New York City enjoyed the idea of Paul committing suicide: *"Paul Nungesser, kill yourself. Seriously, kill yourself."*[146]



144.    Tumblr user jankyjana published the following text:

I hope Jean-Paul Nungesser (the rapist at Columbia University) fears for his life. There is no reason he should get anonymity. I hope he lays awake at night wondering what strangers have a vendetta against him. I hope he thinks that

---

[144] https://twitter.com/JennyTrevizo/status/520080066823213056
[145] https://www.facebook.com/nytimes/posts/10150463989714999?comment_id=10150463995889999&offset=0&total_comments=24
[146] https://twitter.com/cosmicwangst/status/547093589206241280

everyone in the world knows what he did. I hope he feels the shame every day. I hope he feels like he has to triple-check that the doors are locked. I hope that he feels like he can't walk home alone at night. I hope he never feels safe.



145.    Twitter user @aabeaton tweeted: *"While praising Emma Sulkowicz for her courage & bravery, let's not lose sight of making Jean-Paul Nungesser's life a living hell."* [147]



---

[147] https://twitter.com/aabeaton/status/507162989795872769

[58]

146.    The selection provided above is by no means exhaustive. Among those texts not included in this document were demands for pictures of him, which were eventually satisfied. Due to his pictures being available online and the overwhelming harassment he had to endure Paul reasonably feared for his safety and his well-being.

**b.    Paul Was Deprived of the Use of Campus Facilities.**

147.    Something as basic as walking across campus from one class to another became a constant concern. During "Collective Carry" events[148] when Sulkowicz carried her mattress across campus and was supported by her followers, Paul completely avoided being on campus unless he absolutely had to. Yet, Columbia refused to provide even the most basic level of support to Paul in form of a security escort, even after several threats to his physical well-being made publicly on campus.

148.    Due to the extensive harassment campaign, Paul was reasonably fearful to access the campus resources of the dining hall, athletic center, libraries as well as the center for career education, and he only did so when he absolutely had to. Prior to the gender-based hostile educational environment, Paul spent several hours a day in the libraries, but after Sulkowicz started her Mattress Project, Paul would only go there once or twice a week if he absolutely had to and leave as soon as possible.

149.    In two instances, Columbia specifically refused to protect Paul's safety despite the threats made against him, causing considerable emotional distress when he was obliged to use campus facilities without appropriate safety measures. First, Paul Nungesser requested a security escort for a sexual respect workshop he had to attend on March 26, 2015, which was part of a new Columbia initiative that was mandatory for all Columbia students. His request was denied.

---

[148] Between September 2014 and April 2013 there were at least 20 of these events, sponsored by various groups on campus, among them Columbia alumni groups, and officially registered Columbia student organizations. These events were regularly announced on IRWGS's Twitter account and on their website.

Columbia administrators suggested instead he should write an essay, which would have required substantially more time. As his participation in the program was a requirement for graduation, he ultimately decided to attend the workshop. Second, Paul requested from Columbia public safety a security escort during the "Second National Day of Action", scheduled for April 13, 2015, because he felt unsafe to walk around campus, after he was publicly defamed as a serial rapist and threatened by Sulkowicz and her befriended activists from "No Red Tape" and "Carry that weight".

### c.  Paul Was Harassed During Classes.

150.   Even attending classes had become problematic, as he endured constant harassment and would have his photograph taken against his will while in class.

151.   On occasion of the "Day of National Action" in the fall 2014, Paul attended his class "The American Graphic Novel." During the class, his picture was taken by supporters of Sulkowicz. Also several activists that were enrolled in the class had brought mattresses and pillows to class, were staring at him throughout the class, making him fearful to participate in class discussion thus depriving him of active participation in the class.

152.   On another occasion, Allison Herman, also a student in the graphic novel class and an avid supporter of Sulkowicz blogged online about being in class with him while repeating Sulkowicz's hurtful false allegations of Paul being a serial perpetrator which caused intense emotional distress. The fact that his every move and utterance in this class was subject to scrutiny and would be published online, made him fearful to participate in class discussion and even to attend class all together. Ultimately, he elected to take the class Pass / Fail only to avoid that his poor performance affected his GPA. During this time Paul had to live under constant fear that Sulkowicz would inspire more of her loyal followers to file false allegations against Paul. In

[60]

It was reasonable for Paul to do so: In December 2014, shortly after Paul had decided to publicly share his side of the story, Sulkowicz finally succeeded in convincing John Doe to file another false allegation in which he claimed among other things that Paul had sexually assaulted him by merely looking at him during class.

153.    In December 2013, Paul was admitted to a two-semester class about urban development and architecture of socialist and post-socialist cities. The summer 2014 part of the class consisted a four-week travelling course, visiting Berlin, Moscow and via the Trans Siberian Railway, Ekaterinburg and Ulaanbaatar as well as Beijing as the final destination.

154.    During the first station of the trip, Berlin, two Barnard students, Jane Doe#4 and Jane Doe#5, advocated among classmates and towards the professors that Paul should leave the course, since they felt that the prestige of the course had been lowered due to his "bad public reputation."

155.    Paul was also interrogated in detail by two other students, John  Doe#2 and John Doe#3 regarding the allegations, who then assembled in an unofficial tribunal, without Paul present, to discuss among the students how to proceed.

156.    Paul expressed his concerns about his mental and physical well-being on the forthcoming trip through countries like Russia and China, during a meeting with the professor of the class, Professor Cathy Nepomnyashchy. She dismissed his concerns, telling him that the people who were most upset with his presence were physically inferior to Paul and thus posed no threat to him. This remark exhibits the gender-based stereotype that male students should be able to fight for their safety, but were in no need of protection. This behavior, clearly motivated by gender bias, caused additional emotional distress for Paul.

157.    When   Paul   informed   her   about   emotional   distress,   Professor   Cathy
Nepomnyashchy recommended him leaving the class "since it would make everything easier for
everyone else in the class". This suggestion would rightfully be considered as "victim-blaming",
if it had been a female student who was a victim of mobbing by her peers.

158.    When Paul's parents wrote in despair to Columbia's President Lee C. Bollinger
about the inacceptable behavior by Professor Cathy Nepomnyashchy, they were dismayed to
read that according to the Office of the President "the administrators on Paul's study abroad
program acted appropriately."[149]

159.    Despite all efforts by students and teachers to make him leave the class, Paul
ultimately decided to complete the course because he had earned his place there as well as a
scholarship to pay for his expenses. As a person who had proved his innocence, he felt he
deserved to attend the class. However, due to this immense emotional distress he had problems
concentrating on discussions during the trip and finally was only able to submit his final research
paper late.

**d.    Paul Was Precluded From Non-Academic Educational Opportunities.**

160.    The value of a Columbia degree consists of more than just the final number of
credit points and one's GPA -- Columbia is very much aware of that fact and advertises itself by
highlighting its prestigious alumni network[150] and its non-academic opportunities, such as

---

[149] Email to Paul's parents from Susan Glancy from the Office of the President, June 26, 2014.

[150] The following quote from a workshop offered by Columbia's Center for Career Education to both current students and alumni highlights the importance of Columbia's alumni network and Columbia's awareness of this importance,: "It is proven that the number one way to secure a job is through networking, but where do you start? This session will focus on utilizing a resource immediately available at your fingertips - your CU alumni network! Learn how to strategically conduct successful searches of your fellow Columbians and start engaging conversations that will assist you with your job securement process." (https://calendar.columbia.edu/sundial/webapi/get.php?vt=detail&id=81572&con=embedded&br=cc_small, emphasis added).

membership at one of many student groups that are advertised on Columbia's website or at one of the Greek Organizations such as ADP. These opportunities all effectively vanished after Columbia started to foster and support Sulkowicz's gender-based harassment campaign against Paul.

161.    After his formal exoneration, Columbia never attempted to rehabilitate Paul in the eyes of the Campus Community. Thus his membership at COOP and ADP, his two main social peer groups before Sulkowicz filed the false allegation, effectively were terminated due to Columbia's failure to rehabilitate Paul. The fact that there was never any attempt to rehabilitate an innocent student is not an accident: As comprehensive as Columbia's policies are, they don't have any provisions for the rehabilitation of innocent students that went through the utterly damaging and shameful process of being falsely accused. Again, this is a clear violation of Title IX as well as any concept of basic fairness, since the overwhelming majority of the accused is male and in absence of any rehabilitation they are punished regardless whether they were found "responsible" or "not responsible" for the alleged violation of the policy.

162.    Even now, almost a year after graduation, Paul is still ostracized from the alumni network and professional opportunities that would arise from access to that network.

### e.    Paul Was Precluded From Attending On-Campus Career Events and Job Opportunities Were Destroyed.

163.    Due to Columbia's knowingly fostering and supporting a gender-based hostile educational environment for Paul Nungesser and the lack of public support for an innocent and

---

Another example comes from Columbia College's annual report under the section "Creating Community": "Columbia College strives to build strong connections for its current and former students: connections to the College, to one another and to their communities, both on and off campus. The College fosters connections through residential life, student life, admissions, career and alumni programming, including alumni mentorship and internship programs, creating a vast network that spans from College Walk across the globe." (http://www.college.columbia.edu/annualreport/2015)
Following the harassment and defamation campaign supported by Columbia all those resources de facto are no longer reasonably accessible to Paul.

exonerated student by Columbia, he was precluded from attending vital on-campus career recruiting events hosted at Columbia through the end of classes on May 8, 2015. Prior to these events Paul had approached Columbia's Center for Career Education for counsel on how to address what had happened to him including the fallout in the media connected with his name with any potential employer. It was made clear to him, however, that potential employers frequently look up applicants' names online and that this would effectively render any chances of employment void. The only advice he was given by Columbia, was not to broach the allegations against him – an advice that was meaningless at best. It also discouraged Paul to use Career events to present himself to potential employers, because he feared to be addressed with regard to the allegations and that he would not know how to answer.

164.    The following events took place during fall 2014/spring 2015. Due to the intense defamation campaign in the fall of 2014 and Columbia's refusal to provide even the slightest support to Paul discouraged him to attend them. The events included the following:

(a)    On Campus Interview (OCI) Program, entire 2014-2015 academic year, organized by Columbia's Center for Career Education. Many prestigious employers come to Columbia every year to recruit graduating students. The OCI includes detailed preparation, training, application as well as an on-campus interview process with the many employers that come to Columbia every year.  For a number of Paul's classmates, this resulted in employment, specifically for international students this is a way to specifically interview with employers that sponsor work visas. Paul, informed by his career advisor that it was common practice for prospective employers to look up their employee's online was daunted by the prospect of being questioned countless times regarding the false allegations against him. In addition, the OCI

presents a substantial time commitment – something Paul was unable to commit to as dealing with the effects of the harassment campaign took up nearly all of his free time.

(b)    During the Spring of 2015, Paul was interning 1½ days a week at the newly founded consultancy "Office:MG," and he was working closely with one of its founders on various projects.  During his internship there, Paul discussed employment options many times, including potential salary and earnings structure and considering his working remotely from Berlin or joining their London office if he were unable to secure a visa to stay in the United States. In early June, however, following the global publicity of Sulkowicz's actions at graduation as well as the subsequent publication of a pornographic video[151], the offer at "Office:MG" was rescinded.

(c)    Architecture Firm Tour Weiss/Manfredi held on February 13, 2015, at 200 Hudson Street, organized by Architecture Society (student-run). The architecture society, run by students in the Columbia and Barnard Architecture Department, organizes many types of events throughout the year, one of them being tours to architecture offices in New York. These tours often serve as a first contact with potential employers and give graduating students specific ideas and networks as to where they might like to work following graduation. As several other architecture students had made harassing comments online, Paul was fearful to spend time with them outside of class and without the supervision of a professor.

(d)    The F-1 OPT Workshop held on February 18, 2015, at Lerner Hall, organized by Columbia's International Students and Scholars Office. The F-1 Visa that Paul was granted upon his acceptance to Columbia includes up to 12 months of Optional Practical

---

[151] Following graduation, in June 2015, Sulkowicz published a video online that shows her and a fetish actor, she had hired, graphically enacting her made up allegations against Paul. The video was recorded in a Columbia dorm at a time when Sulkowicz was still an enrolled student at Columbia and in the comment section on the video's website Paul's name was repeatedly mentioned.

Training ("OPT") following graduation, which makes employment in a job related to one's degree possible without having to apply for a full-on work visa, as it is simply an extension of the current student visa. Columbia assists with the complex process and gives detailed advice regarding how to navigate the OPT application.

(e)     Employment-based Visa Options held February 20, 2015, 2.10-4pm, Northwest Corner Building, organized by Columbia's International Students and Scholars Office. A specialist immigration attorney is invited to give a presentation on the specifics of different visa statuses and what the path to transferring into a permanent work visa. These information sessions organized by Columbia focus specifically on various post-graduation visa options and give advice to international students looking to stay in the United States following graduation.

(f)     Post-Completion OPT Information Session, February 23, 2015 at Lerner Hall, organized by Columbia's International Students and Scholars Office. This session specifically focuses on applying for OPT after graduation. OPT is for most international students a critical stepping stone before transferring into a permanent work visa (H1B).

(g)     The Spring Career Fair held on March 3, 2015 at Lerner Hall, organized by Columbia's Center for Career Education. There were 91 employers having full-time entry level opportunities including Alcoa Inc., Bloomingdale's, Council on Foreign Relations, Facebook, the New York County District Attorney's Office and The New York Times. There were 82 companies are offering internships, including JetBlue Airways MTA NYC Transit, Social Science Research Council, Success Academy Charter Schools, Tommy Hilfiger and USA Unilever. There were 28 organizations offering to sponsor visas, including Booking.com, CitiBank, Optiver US LLC, Persado Team Detroit and Vmware. Paul did not attend the career fair after his career advisor had failed to provide him with any advice regarding how to address

the harassment campaign against him with potential employers. Paul was also fearful of being confronted by fellow students and activists attending the career fair.

    **f.**    **Paul's Academic Experience Suffered.**

165.    Due to Columbia's knowingly fostering and supporting a gender-based discriminatory hostile educational environment for Paul, his entire academic experience suffered heavily.  Paul had to rely on professors' goodwill to pass him even when he had missed a substantial amount of classes or not completed important coursework on time. All Columbia investigations were initiated during exam time of the semester, despite the initial complaints often having made many weeks before. Two hearings were held during exam time and dragged out unnecessarily.

166.    Due to Columbia's knowingly fostering and supporting a gender-based hostile educational environment for Paul, his education was negatively impacted in multiple ways, including but not limited to:

    (a)    Architectural Criticism course final presentations held on December 4, 2014 was missed. This class was part of the senior architecture requirement and consisted of a series of written and oral critiques of established architectural work.  Instead of a written exam, the final test consisted of an oral presentation as well as the requirement to critique the presentations held by classmates. The final presentations were held in two sessions. Paul was able to attend the first session and hold his own presentation, but missed the second session, because he suffered from sleep deprivation, depression and feelings of isolation due to the severe distress he had endured as a consequence of Sulkowicz's harassment campaign and the Columbia-fostered hostile environment; thus, he was unable to complete the second requirement (critiquing classmates´ work).

[67]

(b)     The General Physics Course Final Exam, December 19, 2014:  Just a few days after Paul became aware that new allegations had been leaked by Sulkowicz and her supporters, he was scheduled to take his final exam for General Physics on December 19, 2014. Because of the stress placed on Paul and the way those allegations were communicated to him, Paul was psychologically unable to take the exam as scheduled. Paul took the exam in January and received a grade of B+ after he had consistently scored much higher on homework assignments.

(c)     The Architecture Portfolio Workshop, held during the spring semester 2015, organized by a graduate of the CU architecture program, Mustafa Faruki: This workshop was a not-for-credit, voluntary course over the several weeks that focused on the re-working, finishing and structuring of our architecture portfolios. The portfolios are an important part of the architecture major graduation requirement as well as for job applications to architecture firms. Paul signed up for the workshop and attended most of the early sessions, but was unable to complete the final assignment as well as the last few sessions due to the emotional distress caused by the ongoing harassment on campus. As mentioned previously, Paul was also fearful spending time with his architecture peers outside of official class time, as they had made disparaging comments towards him online. In addition, Paul was unable to commit the additional time required on completing the assignments due to the massive time and energy required by him to attend to the harassment campaign against him.

**F.     Columbia Was and Is Legally Responsible Under Title IX For Gender Based Discrimination Depriving Paul Nungesser Of Educational Opportunities.**

167.    Columbia was legally responsible under Title IX for gender-based discrimination that deprived Paul of educational opportunities.  Columbia, in violation of Title IX, intentionally discriminated against Paul on the basis of his male sex by condoning a hostile educational

[68]

environment due to knowingly permitting Columbia student Sulkowicz and Defendants Bollinger, Kessler, Vu-Daniel and Hirsch to engage in a campaign of gender-based and sexual harassment and defamation against Paul, based on what Columbia had determined to be unsubstantiated allegations.

168.    At all times relevant hereto, Columbia, Defendants Bollinger, Kessler, Vu-Daniel, and Hirsch all had actual knowledge of and were deliberately indifferent to or in fact participated in and approved: (a) the significant and repeated uncorrected breaches of Columbia's Confidentiality Policy by Sulkowicz to falsely accuse Paul of rape; (b) Sulkowicz's public campaign to harass and defame Paul; (c) Columbia's approval of Sulkowicz's Mattress Project; (d) Columbia's approval of Sulkowicz's presentation, at a Columbia art gallery, of pornographic prints depicting Paul masturbating and as a rapist; and (e) Columbia's allowance and apparent approval of Sulkowicz's carrying the mattress at the graduation ceremony.  Despite their actual knowledge, actions were not taken to rectify Columbia's knowing fostering and support of gender-based severe, pervasive and objectively offensive discriminatory hostile educational environment for Paul that deprived him of to the educational opportunities, benefits and resources available to other students at Columbia in violation of Title IX. This failure and/or refusal to institute corrective measures can only be explained by a gender bias against Paul as the male accused of sexual misconduct, despite the fact that he was previously cleared of any wrongdoing, and as the male victim of gender-based harassment and sexual harassment of a female perpetrator.

169.    Columbia permitted this gender-based misconduct, consisting of gender-based and sexual harassment and intimate partner violence in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said gender-based

[69]

misconduct, with the consequence that Paul was effectively denied equal access to Columbia's resources and opportunities, thereby undermining and detracting from Paul's educational experience.

170.    Paul suffered from student-on-student gender-based harassment, sexual harassment and intimate partner violence when fellow Columbia student Sulkowicz engaged in a campaign of gender-based harassment and defamation, falsely labeled Paul a "serial rapist" and walked around campus with a mattress to protest his presence on campus. Yet, Columbia took no action to intercede and stop this gender-based harassment, sexual harassment and intimate partner violence. To the contrary, in complete disregard of Paul's rights, Columbia acted unreasonably when it allowed Columbia student Sulkowicz to carry the mattress into each of her classes, the library, and on campus-provided transportation and thereby endorsed and even provided course credit for the "Mattress Project."

171.    Paul suffered from teacher-on-student gender-based harassment and gender-based misconduct when Defendant Kessler assisted in the development of, and approved Sulkowicz's Mattress Project for course credit, publicly endorsed her gender-based harassment and defamation campaign against Paul, and made public statements endorsing Columbia student Sulkowicz's carrying around a mattress as "a powerful symbol". Paul also suffered from gender-based and sexual harassment and gender-based misconduct when pornographic art prints were displayed at a Columbia art gallery with the approval of Defendant Vu-Daniels identifying and depicting Paul as a rapist. Columbia took no action to intercede and stop this sexual and gender-based harassment and gender-based misconduct. To the contrary, Columbia acted with deliberate indifference and in complete disregard of Paul's rights when it permitted Defendant Kessler's granting of course credit to Sulkowicz for her Mattress Project and invoked the support of

[70]

Columbia for the campaign of sexual and gender-based harassment against Paul, allowed pornographic prints to be displayed depicting Paul as a rapist, allowed Sulkowicz to carry the mattress to the graduation, all of which created and sustained a gender-based hostile educational environment for Paul that deprived him of the educational opportunities available to other Columbia students.

172.   As a result of Columbia's failure to end the gender-based harassment, sexual harassment and gender-based misconduct against Paul, he was subjected to a severe, pervasive and offensive gender-based hostile educational environment that deprived him of the educational opportunities available to other Columbia students. The violations of Title IX are appropriate for declaratory relief, and Paul Nungesser was damaged in an amount to be determined at trial by the loss of educational and employment opportunities and the suffering of severe emotional distress.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Against Columbia For Violation Of New York Executive Law Section 296(4))

173.   Paul repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

174.   New York Executive Law, Article 15, Human Rights Law, section 296(4) provides in pertinent part:

> It shall be an unlawful discriminatory practice for an education corporation or association ... to permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age, or marital status[.]

175.   Based on the foregoing *supra,* at ¶¶ 1-172, Columbia permitted discrimination against Paul on the basis of his sex.

176.   Based on the foregoing *supra,* at ¶¶ 1-172 Columbia authorized, condoned, approved of and/or acquiesced to gender-based harassment against Paul.

[71]

177.    Based on the foregoing *supra,* at ¶¶ 1-172, Columbia had actual knowledge of such harassment and discriminatory conduct and failed to undertake any action to prevent or stop it.

178.    Specifically, Columbia, in violation of New York Executive Law, Article 15, Human Rights Law, section 296(4), intentionally discriminated against Paul on the basis of his male sex as follows: by condoning a hostile educational environment due to knowingly permitting and approving Columbia student Sulkowicz and Defendants Bollinger, Kessler, Vu-Daniel and Hirsch to engage in prolonged sexual and gender-based harassment[152] of, as to Paul based on what Columbia had determined to be untrue allegations of sexual misconduct; by permitting that sexual and gender-based harassment and gender-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to and an apparent approval of said sexual and gender-based harassment and misconduct; and by allowing such consequences that Paul has been effectively denied equal access to Columbia's resources and opportunities, thereby undermining and detracting from Paul's educational experience.

179.    Based on the foregoing, Columbia engaged in unlawful discriminatory practices in violation of N.Y. Exec. Law § 296(4).

180.    As a result of the foregoing, Paul is entitled to damages for past acts of gender-based harassment in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

---

[152] As mentioned previously gender-based harassment as used here for brevity's sake and in consistency with the usage in Columbia's policy includes both intimate partner violence and sexual harassment.

## AS AND FOR THE THIRD CAUSE OF ACTION
(Against Defendant Bollinger For Violation of New York Executive Law Section 296(6))

181.    Paul repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

182.    New York Executive Law, Article 15, Human Rights Law, section 296(6) provides in pertinent part:

> it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so.

183.    Based on the foregoing *supra* at ¶¶ 1-180, Defendant Bollinger actually and actively participated in the gender-based harassment against Paul Nungesser.

184.    Specifically, Defendant Bollinger aided, abetted, incited, compelled and/or coerced Columbia's gender-based harassment, sexual harassment and intimate partner violence and gender-based discrimination against Paul as follows:

- by publishing a statement in which he acquiesced to the activists' demands by announcing further measures to address the issue of sexual assault at Columbia, instead of addressing Sulkowicz's false and defamatory statements and her intimate partner violence against her former sexual partner Paul;

- by permitting Sulkowicz to actively earn course credit from Columbia for her outrageous display of sexual, gender-based harassment and defamation of Paul Nungesser, despite clear notice from Paul and his parents that Paul's well-being and future prospects were suffering immensely;

- by basking in the spotlight that Sulkowicz's display brought to Columbia rather than showing any regard for Paul, who was being victimized by Sulkowicz's campaign;

- by bowing down to the witch hunt against an innocent student instead of standing up for the truth that Columbia itself had determined in its hearing panel and taking appropriate steps to protect Paul from gender-based harassment, intimate partner violence, sexual harassment and gender-based misconduct;

- by encouraging, condoning and approving Defendant Kessler's granting of course credit to Sulkowicz for her Mattress Project, which was nothing more

[73]

than a ruse to further harass and defame Paul to the Columbia community and the public at large;

- by encouraging, condoning and approving Defendant Vu-Daniel's display of pornographic prints identifying Paul at the Columbia art gallery; and

- by encouraging, condoning and approving Defendant Hirsch directing the IRWGS to express public support for Sulkowicz's campaign and report Sulkowicz's allegations as fact on a Columbia-owned website and closure of the IRWGS for the duration of Sulkowicz's rally on campus.

185.    Based on the foregoing, Defendant Bollinger engaged in unlawful discriminatory practices in violation of N.Y. Exec. Law § 296(6).

186.    As a result of the foregoing, Paul is entitled to damages for past acts of gender-based harassment, sexual harassment and intimate partner violence and defamation in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### (Against Defendant Kessler For Violation of New York Executive Law Section 296(6))

187.    Paul Nungesser repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

188.    New York Executive Law, Article 15, Human Rights Law, section 296(6) provides in pertinent part:

it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so.

189.    Based on the foregoing *supra* at ¶¶ 1-186, Defendant Kessler actually and actively participated in the gender-based discrimination and harassment against Paul.

190.    Specifically, Defendant Kessler aided, abetted, incited, compelled and/or coerced Columbia's gender-based discrimination and harassment against Paul as follows:

[74]

- by directing Sulkowicz to transform her personal vendetta against Paul into a Columbia-sponsored and course-approved calumny;

- by approving Sulkowicz's Mattress Project for course credit;

- by publicly endorsing her harassment and defamation of Paul Nungesser;

- by actively encouraging Sulkowicz's campaign of gender-based harassment and defamation against Paul Nungesser; and

- by guiding Sulkowicz in developing the Mattress Project, knowing that her piece was targeted at a fellow Columbia student.

191.    Based on the foregoing, Defendant Kessler engaged in unlawful discriminatory practices in violation of N.Y. Exec. Law § 296(6).

192.    As a result of the foregoing, Paul is entitled to damages for past acts of gender-based harassment in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Against Defendant Vu-Daniel For Violation of New York Executive Law Section 296(6))

193.    Paul repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

194.    New York Executive Law, Article 15, Human Rights Law, section 296(6) provides in pertinent part:

it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so.

195.    Based on the foregoing *supra* at ¶¶ 1-192 Defendant Vu-Daniel actually and actively participated in the gender-based discrimination and harassment against Paul.

196.    Specifically, Defendant Vu-Daniel aided, abetted, incited, compelled and/or coerced Columbia's gender-based discrimination and harassment against Paul as follows:

[75]

- by facilitating and overseeing the senior thesis exhibition at Leroy Neiman Gallery in the Dodge Building on Columbia's campus between May 11, 2015 and May 15, 2015

- by approving Sulkowicz's pornographic prints to be exhibited in this exhibition; and

- by failing to put Paul on notice that pornographic prints closely resembling him and including his full name were exhibited on the Columbia campus for a full week.

197.   Based on the foregoing, Defendant Vu-Daniel engaged in unlawful discriminatory practices in violation of N.Y. Exec. Law § 296(6).

198.   As a result of the foregoing, Paul is entitled to damages for past acts of gender-based harassment in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Against Defendant Hirsch For Violation of New York Executive Law Section 296(6))

199.   Paul repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

200.   New York Executive Law, Article 15, Human Rights Law, section 296(6) provides in pertinent part:

> it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so.

201.   Based on the foregoing *supra* at ¶¶ 1-198 Defendant Hirsch actually and actively participated in the gender-based discrimination and harassment against Paul.

202.   Specifically, Defendant Hirsch aided, abetted, incited, compelled and/or coerced Columbia's gender-based discrimination and harassment against Paul as follows:

- by encouraging, condoning and approving the IRWGS closure for the duration of a solidarity march for Sulkowicz to encourage attendance;

[76]

- by encouraging, condoning and approving IRWGS@Columbia, the official Twitter account of Columbia's Institute for Research on Women, Gender and Sexuality tweeted about the mattress rally in support of "No Red Tape"; and

- by encouraging, condoning and approving a Columbia-owned website to present as a fact that Paul had raped Sulkowicz.

203.   Based on the foregoing, Defendant Hirsch engaged in unlawful discriminatory practices in violation of N.Y. Exec. Law § 296(6).

204.   As a result of the foregoing, Paul is entitled to damages for past acts of gender-based harassment in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### (Breach of Contract Against Columbia)

205.   Paul repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

206.   Based on the aforementioned facts and circumstances, Columbia breached its agreement with Paul as a matter of law.

207.   Columbia's acceptance of Paul into a degree program at Columbia and his subsequent enrollment and payment of tuition fees created an express contract or, alternatively, a contract implied in law or in fact between Columbia and Paul governed by, *inter alia,* its Policies.

A.   Columbia's Policies.

208.   Following Sulkowicz's sexual misconduct charge against Paul, Columbia provided him with a copy of its *Gender-Based Misconduct Policies for Students* (the "2013-1 Policy", Appendix A). Columbia amended this policy in August 2013 (the "2013-8 Policy", Appendix B). This policy was amended again in August 2014 (the "2014-8 Policy", Appendix C).

[77]

Also in place during the described course of events were the *Rules of University Conduct* (the "Rules of Conduct," Appendix D).

209.   As set forth below, Columbia materially breached these Policies and other contractual provisions which specifically promised to provide an environment free from gender-based discrimination and harassment.

## B.   Breach of the Obligation To Provide an Environment Free From Gender-Based Harassment and Discrimination.

### i.   Applicable Policies In Relevant Part.

210.   The 2013 Policies states in relevant part:

Columbia University, Barnard College, and Teachers College are committed to providing an environment free from gender-based discrimination and harassment. As such, the University does not tolerate any kind of gender-based misconduct, which includes sexual assault, sexual harassment, gender-based harassment, stalking, and intimate partner violence. The University is committed to fostering a healthy and safe environment in which every member of the community can realize her or his fullest potential. (2013-1 Policy, p.3, 2013-8 Policy, p.1; emphasis added)

211.   The 2014-8 Policy states in relevant part:

Columbia University, Barnard College, and Teachers College are committed to fostering an environment that is free from gender-based discrimination and harassment, including sexual assault and all other forms of gender-based misconduct. The University recognizes its responsibility to increase awareness of such misconduct, prevent its occurrence, support victims, deal fairly and firmly with offenders, and diligently investigate reports of misconduct. In addressing issues of gender-based misconduct, all members of the University must come together to respect and care for one another in a manner consistent with our deeply held academic and community values. (p.4; emphasis added)

### ii.   Columbia's Breach.

212.   Columbia's Regulations explicitly provide that Columbia is committed to fostering an environment that is free from gender-based discrimination and harassment. In the 2013-1 Policy, the 2013-8 Policy and the 2014-8 Policy, Columbia specifically identifies its

[78]

responsibility to prevent the occurrence of such gender-based misconduct and assures that it does not tolerate any form of gender-based misconduct.

213.    Nonetheless, Columbia tolerated, permitted and even condoned and even actively participated in Sulkowicz's campaign of intimate partner violence, gender-based harassment, sexual harassment and defamation against Paul. Specifically, Columbia breached its contractual obligations when it permitted Sulkowicz to receive course credit for her Mattress Project, which was unquestionably a mere ruse to further her campaign against Paul by publicly threatening, intimidating isolating, harassing and defaming him.

214.    Columbia acted with blindness regarding intimate partner violence against males: Columbia did not act to recognize that Sulkowicz's false allegations and her subsequent campaign constitute post-separation abuse and thus intimate partner violence according to Columbia's policies, thereby discriminating against Paul due to his male gender.

215.    Columbia failed to provide Paul with an environment free from gender-based harassment and discrimination when it did not notify Paul that he was listed on the so-called "rapist-list" that appeared in several bathrooms at Columbia in May of 2014, and that contained gender-based slurs by calling an innocent man a serial-rapist. Columbia knew that Paul was innocent, yet failed to prevent effectively the circulation of the same "rapist-list" at several Columbia student events.

216.    Columbia further breached its obligation when it failed to take any action with respect to Sulkowicz's outrageous displays of harassment and defamation against Paul, despite clear notice from Paul and his parents to Defendant Bollinger and other Columbia persons of authority, that Paul's legal rights were being violated and that his well-being and future prospects were suffering immensely.

[79]

217.    Columbia breached its obligations to Paul when it failed to take any steps to prevent Sulkowicz's repeated and public declarations that Paul was a "serial rapist," while gaining national and international attention in the mass media.

218.    In complete disregard of Paul's rights to be free of, among other things, gender-based harassment, Columbia breached its obligation to provide Paul with an environment free from discrimination and harassment when it allowed Sulkowicz to carry the mattress into each of her classes, the library, and on Columbia campus-provided transportation.

219.    Moreover, Columbia breached its obligation to provide Paul with an environment free from discrimination and harassment when it provided financial endorsement to the "Carry That Weight National Day of Action," by paying a portion of the clean-up fee for a Columba campus rally at which Sulkowicz publicly identified Paul as her alleged rapist.

220.    Columbia's effective sponsorship of the gender-based harassment of Paul resulted in an intimidating, hostile, demeaning, and offensive learning and living environment that deprived him of equal access to educational benefits and opportunities at Columbia on the basis of his gender.

221.    Based on the foregoing, Columbia's failure to provide Paul with an environment free from gender-based harassment and discrimination was a material breach of its own policies and the rights expressly guaranteed to Paul as a student accused of sexual misconduct.

**C.    Breaches With Regard To The Confidentiality and Retaliation Regulations.**

**i.    Applicable Policies In Relevant Part.**

222.    The 2013-1 Policy states in relevant part:

When a report of gender-based misconduct is filed, the complainant, the respondent, and all identified witnesses who are named in the investigation, will be notified of the University's expectation regarding confidentiality/privacy. The University will make all reasonable efforts to maintain the confidentiality/privacy

of parties involved in gender-based misconduct investigations. <u>Breaches of confidentiality/privacy or retaliation against any person involved in the investigation, including the complainant, respondent, witnesses, or the investigators, may result in additional disciplinary action.</u> (2013-1 Policy, p.12, emphasis added)

223.    The 2013-8 Policy states in relevant part:

When a report of gender-based misconduct is filed, the complainant, the respondent, and all identified witnesses who are named in the investigation, will be notified of the University's expectation regarding confidentiality, privacy, and non-retaliation.

The University will make all reasonable efforts to maintain the confidentiality and privacy of parties involved in gender-based misconduct investigations, restricting information to those with a legitimate need to know.

(…)

<u>Retaliation against any person involved in the investigation,</u> including the complainant, <u>respondent,</u> witnesses, or the investigators, <u>is strictly prohibited</u> and may result in disciplinary action, including additional interim or permanent measures. The University defines <u>retaliation as any adverse action taken against an individual who has participated in any manner in an investigation, proceeding, or hearing under these policies and procedures.</u>    (2013-8 Policy, pp. 10,11; emphasis added)

224.    The 2014-8 Policy states in relevant part (emphasis added):

The University strictly prohibits retaliation against and intimidation of any person <u>because of his or her reporting of an incident of gender-based misconduct or involvement in the University's response.</u> The University will take strong disciplinary action in response to any retaliation or intimidation. The University will pursue such discipline through the applicable student conduct policy or other disciplinary process and follow the applicable time frames within such policies or processes.

**ii.      <u>Applicable Other Regulations.</u>**

225.    In addition to these official Columbia policies, Paul was provided with regulations regarding confidentiality in the letters that notified him of the allegations against him.

226.    The notice of Sulkowicz's allegations from April 18, 2013 stated in relevant part:

Furthermore, I would like to direct your attention to the 'Confidentiality/Privacy and Non-Retaliation' section of the policy document. The University will make

[81]

all reasonable efforts to maintain the confidentiality/privacy of the involved parties. During the course of the investigation and process, you should use the utmost discretion <u>and not discuss the</u> incident with others, especially those who may be connected to the investigation. **Please be advised that <u>any retaliation against any person involved in the investigation,</u> including the complainant, witnesses, investigators or hearing panelists, is a violation of the policy and may result in additional disciplinary action.** (Bold letters original, underlined passages added)

227.    The notice of allegations by Jane Doe #1 from April 18, 2013 stated in relevant

part:

Furthermore, I would like to direct your attention to the "Confidentiality, Privacy and Non-Retaliation" section of the policy document. The University will make all reasonable efforts to maintain the confidentiality/privacy of the involved parties. During the course of the investigation and process, you should use the utmost discretion <u>and not discuss</u> the incident with others, especially those who may be connected to the investigation. <u>Please be advised that any retaliation against any person involved</u> in the investigation, including the complainant, witnesses, investigators or hearing panelists, <u>is a violation of the policy and may result in additional disciplinary action.</u>  (Emphasis added)

220.    The notice of allegations by Jane Doe #2 from May 3rd, 2013 stated in relevant

part:

Furthermore, I would like to direct your attention to the "Confidentiality, Privacy and Non-Retaliation" section of the policy document. The University will make all reasonable efforts to maintain the confidentiality/privacy of the involved parties. During the course of the investigation and process, you should use the utmost discretion <u>and not discuss</u> the incident with others, especially those who may be connected to the investigation. <u>Please be advised that any retaliation against any person involved in the investigation,</u> including the complainant, witnesses, investigators or hearing panelists, <u>is a violation of the policy and may result in additional disciplinary action.</u>  (Emphasis added)

221.    The notice of allegations by John Doe #1 from December 15, 2014 stated in

relevant part:

Lastly, I would like to direct your attention to the "Confidentiality, Privacy and Non-Retaliation" section of the Gender-Based Misconduct Policies for Students. The University will make all reasonable efforts to maintain the confidentiality / privacy of the involved parties. During the course of the investigation and process, <u>you should use the utmost discretion if you choose to discuss this investigation to</u>

<u>maintain the confidentiality and privacy of all parties.</u> Please do not discuss the incident with those who may be connected to the investigation to protect the integrity of this investigation. Be advised that any retaliation against any person involved in the investigation, including the complainant, witnesses, investigators or hearing panelists, is a violation of the policy and may result in additional disciplinary action.

**iii.**   **Breach of the Obligation To Maintain the Confidentiality and Privacy of Parties Involved in Gender-Based Misconduct Investigations.**

222.   Paul was placed under a confidentiality order: in the first three notification letters in which Paul was advised "not to discuss" at all. In the third letter, there was a reference to the "Confidentiality, Privacy and Non-Retaliation" section of the Gender-Based Misconduct Policies for Students. Notably, no such section exists anymore in the 2014-8 Policy.

223.   Paul was explicitly told by Ms. Rosalie Siler that he should not discuss the investigation and the incident with anybody on campus, since anybody could be a witness. She left absolutely no doubt that any breach of confidentiality and retaliation *would be* punished.

224.   Columbia's 2014 Policy explicitly provides that the University *"will protect and respect students' privacy to the greatest extent possible..."* and *"will reveal information about its investigations and adjudications of gender-based misconduct <u>only to those who need to know the information in order to carry out their duties and responsibilities</u>."* (Emphasis added.)

225.   Columbia breached its obligation to maintain Paul's confidentiality and privacy when it failed to discipline Sulkowicz for identifying Paul to reporters who subsequently ambushed him outside his residence in December 2013.

226.   Columbia further breached its obligation with respect to maintaining Paul's privacy and confidentiality when it failed to mete out any discipline, even though the *New York Post* article made clear that all three accusers had spoken to the author of the article and identified Paul as the respondent to reporters.

[83]

227.    Columbia breached its obligation to maintain Paul's confidentiality and privacy when it failed to prohibit the publication of Anna Bahr's article in Columbia's Student News Blog in January 2014, which made Paul easily identifiable as the student found not responsible for raping Sulkowicz.

228.    Notably, Columbia was well aware of the impending publication of such article, as demonstrated by the fact that Columbia advised Paul to stay silent when Anna Bahr reached out to him for comment. Nonetheless, Columbia further breached its obligation to maintain Paul's confidentiality and privacy when it failed to advise Paul that the article had appeared online and took no action to have such publication removed from Columbia's student blog website.

229.    Columbia further breached its contractual obligation to Paul when it permitted the publication of Sulkowicz's false rape allegation, which included Paul's name, in Columbia University's student newspaper, the Columbia Spectator.

230.    Columbia breached its contractual obligation to maintain Paul's confidentiality and privacy when it approved of and authorized Sulkowicz's "Mattress Project" for course credit, despite its knowledge that the piece was targeted at a fellow student, whose identity had become notorious at Columbia. Moreover, Columbia breached its obligation to protect and respect Paul's privacy when it failed to take any action to prevent Sulkowicz's repeated and public declarations to the mass media that Paul was a "serial rapist" and when Columbia sponsored the production and display of pornographic prints identifying Paul at the Columbia at gallery.

231.    Based on the foregoing, Columbia breached its contractual obligation to maintain Paul's privacy and confidentiality by condoning such breaches, by failing to take any actions to

remedy the breaches, and by failing to penalize any of the individuals who repeatedly and blatantly violated Columbia's policies.

### iv.   Breach of the Obligation To Prohibit Retaliation Against Any Person Involved In An Investigation.

232.   The 2013-8 Policy states:

Retaliation against any person involved in the investigation, including the complainant, respondent, witnesses, or the investigators, is strictly prohibited and may result in disciplinary action, including additional interim or permanent measures. The University defines retaliation as any adverse action taken against an individual who has participated in any manner in an investigation, proceeding, or hearing under these policies and procedures. (2013-8 Policy, pp. 10,11; Emphasis added.)

233.   Columbia amended the policy but not until in August 2014 – after the investigation of Sulkowicz's complaint and finding of Paul not being responsible.  The August 2014 Policy stated: *"The University strictly prohibits retaliation against and intimidation of any person because of his or her reporting of an incident of gender-based misconduct or involvement in the University's response."* As a result, the 2014-8 Policy may not be applicable for the events that are recounted herein because Sulkowicz's retaliatory behavior started before the 2014-8 Policy was in effect and Paul's continued presence on campus in 2014 was dependent upon his participation in the investigation and his being found not responsible. Sulkowicz's action from November 2013 on represented *"retaliation against and intimidation of any person because of his or her reporting of an incident of gender-based misconduct or involvement in the University's response."*

234.   Columbia's 2014-8 Policy covenants to protect its students by strictly prohibiting retaliation against, or intimidation of, any person involved in a sexual misconduct investigation. The Policy explicitly provides that *"[t]he University will take strong disciplinary action in response to any retaliation or intimidation."* Retaliation is defined as *"any adverse action, or*

[85]

*attempted adverse action, against an individual…because of their participation in any manner in an investigation…"* and can take various forms such as sustained abuse, threats or intimidation.

235.    Columbia breached this contractual obligation to Paul when it failed to penalize Sulkowicz for encouraging three other Columbia students to file false claims of sexual misconduct against Paul.

236.    Columbia breached its obligation to Paul when it failed to penalize Sulkowicz for coercing the President of ADP to notify its alumni board and several of its members that an alleged rapist was living at ADP.

237.    Columbia breached its obligation to Paul when it failed to prevent and/or penalize Sulkowicz for talking to a reporter of the *New York Post* in December 2013 and identifying him as her alleged assailant.

238.    Columbia breached its obligation to Paul when it failed to prevent and/or penalize Sulkowicz for making a public press statement in April 2014, at a press conference with Senator Gillibrand, stating that she lives in fear of seeing Paul every day.

239.    Columbia breached its obligation to Paul when it failed to prevent and/or penalize Sulkowicz for drafting an op-ed piece to be published in *Time Magazine* in May 2014, titled "My Rapist is Still on Campus."

240.    Columbia breached its obligation to Paul when it failed to prevent and/or penalize Sulkowicz for getting the Columbia Spectator to publish her false rape allegations and identify Paul by name.

241.    Columbia breached its obligation to Paul when it permitted Sulkowicz to proceed with her "Mattress Project" in an effort to further harass and publicly defame Paul and failed to penalize her for such acts of retaliation.

242.     Columbia breached its obligations to Paul when it repeatedly permitted Sulkowicz to engage in her campaign of publicly harassing and defaming Paul to the national and international media, and failed to penalize her for these acts of retaliation.

243.     Based on the foregoing, Columbia repeatedly breached its obligation to Paul when it failed to prohibit retaliation or intimidation against him and failed to dole out appropriate discipline to those involved in such retaliation.

**D.      Breach of the Obligation To Report Violations of the Gender-Based Misconduct Policies (Gender-Based Harassment, Sexual Harassment and Intimate Partner Violence) and To Notify the Complainant of Such Reports.**

   **i.     Applicable Policies In Relevant Part: Duty To Report.**

244.     The 2013 Policies state in relevant part:

Any University official (e.g., Student Affairs staff, Advising and Residential Programs staff, Officers of Administration, Full-time and Adjunct Faculty, Teaching Assistants, etc.) informed of an allegation of gender-based misconduct against a student is expected to file a report with Student Services for Gender-Based and Sexual Misconduct. Certain University officers who are serving in a privileged professional capacity (i.e., counselors, clergy, medical providers, and rape crisis counselors) are not bound by this expectation, except as required by law. (Policy 2013/1: p.4; Policy 2013/8: p.2)

245.     Columbia's Student Policies and Procedures on Discrimination and Harassment state, among other things:

Columbia University is committed to providing a learning, living, and working environment free from discrimination and harassment and to fostering a nurturing and vibrant community founded upon the fundamental dignity and worth of all of its members. The University does not tolerate discrimination or harassment on the basis of membership in a Protected Class, and it provides students who believe that they have been the subject of discrimination or harassment with mechanisms for seeking redress. Nothing in this policy shall abridge academic freedom or the University's educational mission. All members of the University community are expected to adhere to the applicable policies, to cooperate with the procedures for responding to complaints of discrimination and harassment, and to report conduct or behavior they believe to be in violation of these policies to EOAA. Management and supervisory personnel have a duty to act; they are responsible for taking reasonable and necessary action to prevent discrimination and

harassment and for responding promptly and thoroughly to any such claims. University officers who learn of an allegation of gender-based misconduct, discrimination, or harassment have a duty to report the allegation to EOAA or Student Services for Gender-Based and Sexual Misconduct. <u>All students are protected from retaliation for filing a complaint or assisting in an investigation under these policies.</u> Appropriate disciplinary action may be taken against any student or employee who violates these policies. (Emphasis added.)

## ii.   <u>Obligation To Notify The Complainant of Third Party Reports.</u>

246.   The 2013-1 Policy states in relevant part:

In cases where the gender-based misconduct is reported to Student Services for Gender-Based and Sexual Misconduct by a third party (e.g., faculty member, residence program staff member, advising dean, etc.), the <u>complainant[153] will be notified that a report has been received</u> by the Senior Manager for Student Services for Gender-Based and Sexual Misconduct. The Senior Manager will make every effort to meet with the complainant to discuss her/his options and resources at the University and in the community. (p.11; emphasis added.)

247.   The 2013-8 Policy states in relevant part:

In cases where the gender-based and Sexual Misconduct is reported to Student Services for Gender-Based and Sexual Misconduct by a third party (e.g., faculty member, residence program staff member, advising dean, etc.), the <u>complainant[154]   will be notified that a report has been received</u> by the Assistant Director for Student Services for Gender-Based and Sexual Misconduct. The Assistant Director will make every effort to meet with the complainant to discuss her/his options and resources at the University and in the community." (p. 10; emphasis added.)

248.   The 2014-8 Policy states in relevant part:

In cases where gender-based misconduct is reported to the Gender-Based Misconduct Office by other than the complainant (by a faculty member, resident advisor, friend or roommate, for example), <u>the Office will promptly notify the complainant that a report has been received. This Policy and the Procedures will apply in the same manner as if the complainant had made the initial report.</u> The Office will make every effort to meet with the complainant to discuss available options and on-campus and off-campus resources. Reports from an anonymous source will be treated in a similar fashion.  (p. 9; emphasis added.)

---

[153] A "complainant" is the student who files a report or the person who a report is filed on behalf of by a third party. A "respondent" is the student who is alleged to have violated a policy and is responding to the allegations. (Policy 2013-1, p.11)
[154] A "complainant" is the student who files a report or the person who a report is filed on behalf of by a third party. A "respondent" is the student who is alleged to have violated a policy and is responding to the allegations. (Policy 2013-1, p.10)

### iii.   **Breach of Duty.**

249.   Columbia should have investigated the gender-based misconduct (gender-based harassment, sexual harassment and intimate partner violence) committed by Sulkowicz because of the third party reports. Columbia did not even investigate those breaches or else Columbia would have needed to notify Paul, which did not happen.

250.   The letter and e-mails of Paul's parents should have been treated as third party reports and forwarded by Melanie Rooker, Title IX coordinator, to the Office of Gender-Based Misconduct.  Paul's advisor and professors were on notice of the harassment of Paul in class and under the Policies were expected to report it, but no report was made, or else Columbia would have needed to notify Paul, which did not happen.

251.   Paul repeatedly requested if he could file an official report, but Columbia's Melissa Rooker, Rosalie Siler and Jeri Henri all discouraged him from doing so, even though they issued formal letters that he could file a report. Paul was repeatedly told that his complaints concerning Sulkowicz's harassment campaign had no chance of being successful.

### E.   **Breach of the Obligation To Treat Complainants And Respondents Fairly and Equally.**

#### i.   **Applicable Policies In Relevant Part: Obligation To Provide Fair Process.**

252.   The 2014-8 Policy states in relevant part:

To further the goal of eliminating gender-based misconduct from its community, the University offers: ((…) accessible, prompt, and fair methods of investigation and resolution of reports of misconduct; … (p. 3, emphasis added))

#### ii.   **Rights of Respondents and Complainants.**

253.   The 2013 Policies state in relevant part:

*Complainants are afforded the following rights in this process:*

- To be treated with respect, dignity, and sensitivity throughout the process.

[89]

- To seek support services at the University.
- To confidentiality and privacy to the extent provided under the Family Education and Privacy Act (FERPA).[155] The University will make all reasonable efforts to ensure preservation of privacy, restricting information to those with a legitimate need to know.
- (…)
- To a prompt and thorough investigation of the allegations.
- (…)

*Respondents are afforded the following rights in this process:*
- To be treated with respect, dignity, and sensitivity throughout the process.
- To seek support services at the University.
- To confidentiality and privacy to the extent provided under the Family Education and Privacy Act (FERPA).[156] The University will make all reasonable efforts to ensure preservation of privacy, restricting information to those with a legitimate need to know.
- (…)
- To a prompt and thorough investigation of the allegations.
- (…)

(2013-1 Policy, pp.18, 19; 2013-8 Policy, pp. 17, 18; emphasis original)

254.    The 2014-8 Policy states in relevant part (p. 11):

Rights of the Complainant and Respondent[157]
In order to provide accessible, prompt, and fair methods of investigation and resolution of incidents of student gender-based misconduct, the University has developed a process for investigation and adjudication of misconduct reports. Throughout this process, both the complainant and respondent have the following rights:
- To respect, dignity, and sensitivity.
- To appropriate support from the University.
- To privacy to the extent possible consistent with applicable law and University policy.
- (...)
- To a prompt and thorough investigation of the allegations.
- (…)

---

[155] The 2013/8 Policy states slightly different: "To confidentiality and privacy to the extent provided under applicable law." (p. 17)
[156] The 2013/8 Policy states slightly different: "To confidentiality and privacy to the extent provided under applicable law." (p. 18)
[157] Complainants and Respondents are granted exactly the same rights.

iii.   **Breach of Duty**.

255.   Respondents and complainants are to have the same basic rights with regard to confidentiality and FERPA protections; however, in Paul's case, Columbia breached that duty because Sulkowicz and Paul were treated differently. Defendant Bollinger, Defendant Kessler and Defendant Hirsch at IRWGS commented expressly on the case in favor of Sulkowicz, but Columbia always declined to say anything in favor of Paul and, through Jeri Henri, Rosalie Siler and Melissa Rooker, informed Paul that FERPA disallowed any comment about the case by Columbia.  Also, in a phone conversation with Dean Terry Martinez on December 14, 2013 she told Paul's parents that the university was not allowed to comment on the case by law, not even as little as that the University investigated the case according to its policies – compare that to Kessler's and the IRWGS's comments on the case.

F.   **Failure To Treat Paul As Innocent Until Proven Guilty.**

256.   Columbia's Rules of Conduct state in relevant part:

The Rules of University Conduct are University-wide and underline supersede all other rules of any school or division.

(…)

University disciplines should not carry the same stigma as a criminal conviction. All members of the University community are assumed to be innocent until proven guilty.

(…)

The Rules of University Conduct shall apply to all members of the University community: administrators, administrative staff, research staff, library staff, supporting staff, faculty, and students.

(pp. 5,6; emphasis added.)

257.   One of the fundamental principles in American law is that a person is presumed innocent until proven guilty, and it is reflected in Columbia's Policies. Columbia breached that

[91]

duty by fostering and sustaining the hostile educational environment fostered and sustained. Columbia student Sulkowicz and Defendants Bollinger, Kessler, Vu-Daniel, and Hirsch treated Paul as guilty of rape, even though Columbia has found Paul not guilty of sexual misconduct in the complaint brought by Sulkowicz.

## G.   **Breach of Duty of Good Faith.**

258.   Implied in every contract under New York law is a duty of good faith, sometimes called a covenant of good faith and fair dealing. Based on the aforementioned facts and circumstances, Columbia breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with Paul. Paul fulfilled every part of his contract, performing academically and even fully cooperating with investigations into complaints of sexual misconduct for which Paul was found not responsible. In contrast, Columbia breached the implied duty of good faith by breaching its contractual obligations as detailed above and by intentionally discriminating against Paul on the basis of his male sex as follows: by condoning a hostile educational environment due to knowingly permitting Columbia student Sulkowicz and Defendant Bollinger, Kessler, Vu-Daniel, and Hirsch to engage in prolonged sexual and gender-based harassment of and gender-based misconduct against Paul based on what Columbia had determined after investigation to be untrue allegations; by permitting that gender-based harassment and gender-based misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to, and an apparent approval of said gender-based harassment and gender-based misconduct; and by allowing the foregoing conduct to effectively deny Paul equal access to Columbia's resources and opportunities, thereby undermining and detracting from Paul's educational experience.

[92]

H.     **Paul's Damages.**

259.     Based on the foregoing, Paul is entitled to recover damages for Columbia's breach of the express and/or implied contractual obligations described above. As a direct and foreseeable consequence of these breaches, Paul sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages. As a result of the foregoing, Paul is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
**(Unfair or Deceptive Trade Practices Against Columbia)**

260.     Paul repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

261.     Section 349(a) of New York General Business Law provides consumer protection by declaring as unlawful "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Columbia, in presenting itself as an institution of higher learning for students to attend in exchange for payment of tuition and having policies appropriate for such institution, is engaged in consumer oriented conduct. The "consumers" here are Columbia undergraduate and graduate students, which is a significant percentage of the population.

262.     Columbia's Student Policies and Procedures on Discrimination and Harassment state, among other things:

> Columbia University is committed to <u>providing a learning, living, and working environment free from discrimination and harassment</u> and to fostering a nurturing and vibrant community founded upon the fundamental dignity and worth of all of its members. The University does not tolerate discrimination or harassment on the basis of membership in a Protected Class, and it provides

[93]

students who believe that they have been the subject of discrimination or harassment with mechanisms for seeking redress. Nothing in this policy shall abridge academic freedom or the University's educational mission. <u>All members of the University community are expected to adhere to the applicable policies, to cooperate with the procedures for responding to complaints of discrimination and harassment, and to report conduct or behavior they believe to be in violation of these policies to EOAA.</u> Management and supervisory personnel have a duty to act; they are responsible for taking reasonable and necessary action to prevent discrimination and harassment and for responding promptly and thoroughly to any such claims. <u>University officers who learn of an allegation of gender-based misconduct, discrimination, or harassment have a duty to report the allegation to EOAA or Student Services for Gender-Based and Sexual Misconduct. All students are protected from retaliation for filing a complaint or assisting in an investigation under these policies.</u> Appropriate disciplinary action may be taken against any student or employee who violates these policies. (Emphasis added.)

263.   According to Columbia's Gender-Based Misconduct Policies for Students:

Columbia University, Barnard College, and Teachers College <u>are committed to providing a learning environment free from gender-based discrimination and harassment.</u> As such, the <u>University does not tolerate any kind of gender-based discrimination or harassment, which includes sexual assault, sexual harassment, and gender-based harassment.</u> The University community is committed to fostering a healthy and safe environment in which every member of the community can realize her or his fullest potential.

Gender-based misconduct is a serious concern on college campuses throughout the country. To address this problem, the University provides educational and preventive programs, <u>services for individuals who have been impacted by gender-based and sexual misconduct, and accessible, prompt, and equitable methods of investigation and resolution.</u>

Students who believe they have been subjected to gender-based discrimination or harassment are encouraged to report these incidents. Upon receiving a report, the University will respond promptly, equitably, and thoroughly. In addition, the University will take steps to prevent the recurrence of the discrimination or harassment and correct its effects, if appropriate. (Emphasis added.)

264.   According to Columbia University's Confidentiality, Privacy, & Non-Retaliation

Policy:

The University <u>will make all reasonable efforts to maintain the confidentiality and privacy of parties involved in gender-based misconduct investigations, restricting</u>

<u>information to those with a legitimate need to know.</u> Individuals participating in an investigation, proceeding, or hearing are encouraged to maintain the privacy of the process in order to assist the office in conducting a thorough, fair, and accurate investigation. Individuals are also encouraged to seek appropriate administrative support on-campus. Strictly confidential on-campus resources include counseling services, medical care providers, the Rape Crisis/Anti-Violence Support Center, and clergy members. All other University administrators, such as faculty and advising staff, cannot promise strict confidentiality but can provide private support. (Emphasis added.)

265.     Columbia has engaged in the following acts or practices that are deceptive or misleading in a material way, or committed deceptive acts or practices, which were aimed at the consumer public at large, that were a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances:

a.     by causing Paul Nungesser to believe that Columbia would follow its policies, copies of which were provided to Paul and are also available on Columbia's Internet website; and

b.     by causing Paul to believe that if he paid tuition and fees to Columbia, that Columbia would uphold its obligations, covenants and warranties to Paul described in its policies.

266.     Columbia had no intention of following its own policies and procedures when it condoned a hostile educational environment by knowingly permitting Columbia student Sulkowicz and Defendants Bollinger, Kessler, Vu-Daniel, and Hirsch to engage in prolonged gender-based harassment and misconduct as to Paul based on what Columbia had determined after investigation to be untrue allegations, permitted that gender-based harassment and misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to, and an apparent approval of said gender-based harassment and misconduct, and allowed Paul to be effectively denied equal access to Columbia's resources and opportunities.

[95]

267.    Columbia's stated policies and procedures, together with its violations thereof only with respect to Paul as a male and the male accused of sexual assault demonstrates Columbia's deceptive practices with respect to male students and male accused of sexual misconduct at Columbia.

268.    Based on the foregoing, Columbia engaged in unfair or deceptive trade practices in violation of Section 349(a) of the General Business Law.

269.    As a result of Columbia's deceptive acts and practices, Paul sustained tremendous damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.  As a result of the foregoing, Paul is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE NINTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress Against All Defendants)

270.    Paul repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

271.    Based on the foregoing facts and circumstances, Defendants intentionally discriminated against Paul when it condoned a hostile educational environment by knowingly permitting Columbia student Sulkowicz and Defendants Bollinger, Kessler, Vu-Daniel and Hirsch to engage in prolonged gender-based harassment and misconduct as to Paul based on what Columbia had determined after investigation to be untrue allegations, permitted that sexual and gender-based harassment and misconduct in the school's programs or activities with actual knowledge of, a deliberate indifference to, and an apparent approval of said gender-based harassment and misconduct, and allowed Paul to be effectively denied equal access to Columbia's resources and opportunities.

[96]