UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL NUNGESSER,<br><br>                        Plaintiff,<br><br>          v.<br><br>COLUMBIA UNIVERSITY,<br>TRUSTEES OF COLUMBIA UNIVERSITY,<br>LEE C. BOLLINGER, individually and as<br>agent of Columbia University, JON KESSLER,<br>individually and as agent of Columbia University,<br>THOMAS VU-DANIEL, individually and as agent of<br>Columbia University, and MARIANNE HIRSCH,<br>individually and as agent of Columbia University,<br><br>                        Defendants. | No. 15-cv-3216 (GHW)<br><br><u>Oral Argument Requested</u> |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE
# <u>SECOND AMENDED & SUPPLEMENTED COMPLAINT</u>

                                    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                    1285 Avenue of the Americas
                                    New York, New York 10019-6064
                                    (212) 373-3000

                                    *Attorneys for Columbia University, Trustees of Columbia*
                                    *University, Lee C. Bollinger, Jon Kessler, Tomas Vu-Daniel*
                                    *and Marianne Hirsch*

i

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ......................................................................................................... 1
RELEVANT FACTUAL BACKGROUND ........................................................................................ 2
ARGUMENT ........................................................................................................................................ 4
    I.    The "Paula-Emmet" Hypothetical Should be Stricken ........................................................ 5
    II.   Certain of Plaintiff's Allegations Regarding Gender Theory and Anti-Male Bias
        Should Also Be Stricken ...................................................................................................... 6
CONCLUSION ................................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Allocco* v. *Dow Jones & Co.*,
  No. 02 Civ. 1029, 2002 WL 1484400 (S.D.N.Y. July 10, 2002) ...............................................4

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).....................................................................................................................5

*Dent* v. *U.S. Tennis Ass'n, Inc.*,
  No. 08 Civ. 1533, 2008 WL 2483288 (E.D.N.Y. June 17, 2008)...............................................9

*Flagg* v. *Control Data*,
  806 F. Supp. 1218 (E.D. Pa. 1992), *aff'd*, 998 F.2d 1002 (3d Cir. 1993).................................9

*Gallop* v. *Cheney*,
  642 F.3d 364 (2d Cir. 2011).........................................................................................................5

*Garzon* v. *Jofaz Transp., Inc.*,
  No. 11 Civ. 5599, 2013 WL 783088 (E.D.N.Y. Mar. 1, 2013) ..................................................9

*Impulsive Music* v. *Pomodoro Grill, Inc.*,
  No. 08 Civ. 6293, 2008 WL 4998474 (W.D.N.Y. Nov. 19, 2008)........................................6, 8

*Lipsky* v. *Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976).........................................................................................................6

*Low* v. *Robb*,
  No. 11 Civ. 2321, 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012)..................................................6

*Lynch* v. *Southampton Animal Shelter Found. Inc.*,
  278 F.R.D. 55 (E.D.N.Y. 2011) ...................................................................................................6

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
  402 F. Supp. 2d 434 (S.D.N.Y. 2005).........................................................................................4

*Minority Police Officers Ass'n of S. Bend* v. *City of S. Bend, Ind.*,
  801 F.2d 964 (7th Cir. 1986) .......................................................................................................9

*New Dyckman Theatre Corp.* v. *Radio-Keith-Orpheum Corp.*,
  16 F.R.D. 203 (S.D.N.Y. 1954) ...................................................................................................6

*Pharmacy, Inc.* v. *Am. Pharm. Partners, Inc.*,
  No. 05 Civ. 776, 2007 WL 2728898 (E.D.N.Y. Sept. 14, 2007)...............................................4

*Prezzi* v. *Berzak*,
   57 F.R.D. 149 (S.D.N.Y. 1972) ................................................................................................7

*Rampersad* v. *Deutsche Bank Sec., Inc.*,
   No. 02 Civ. 7311, 2004 WL 616132 (S.D.N.Y. Mar. 30, 2004) ...........................................6, 8

*Reiter's Beer Distribs., Inc.* v. *Christian Schmidt Brewing Co.*,
   657 F. Supp. 136 (E.D.N.Y. 1987) ..........................................................................................9

*Salzmann* v. *Prudential Secs. Inc.*,
   No. 91 Civ. 4253, 1994 WL 191855 (S.D.N.Y. May 16, 1994) ...............................................6

*Sharpe* v. *Mental Health Sys. of U.S.*,
   357 F. App'x 373 (2d Cir. 2009) .............................................................................................8

*Vaigasi* v. *Solow Mgmt. Corp.*,
   No. 11 Civ. 5088, 2016 WL 6161386 (S.D.N.Y. Feb. 16, 2016) .............................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ............................................................................................................................1, 4

Fed. R. Civ. P. 12(f) ......................................................................................................................1, 4

Defendants Columbia University, the Trustees of Columbia University (together, "Columbia" or "the University"), Lee C. Bollinger, Jon Kessler, Tomas Vu-Daniel[1] and Marianne Hirsch respectfully submit this memorandum in support of Defendants' motion to strike portions of the Second Amended & Supplemented Complaint (the "Second Amended Complaint" or the "SAC") pursuant to Federal Rules of Civil Procedure 12(f) and 8(a).

## PRELIMINARY STATEMENT

Although he was given another chance to cure the deficiencies in his prior complaint (the "Amended Complaint") by repleading his claims, Plaintiff has failed to allege any new *facts* supporting his purported causes of action under Title IX and state law. The much longer Second Amended Complaint (100 pages, compared to 76 pages for the Amended Complaint) has instead been embellished with a series of immaterial, impertinent, and at times inflammatory *conclusions* that have no bearing on any claim brought by *this Plaintiff* against *these Defendants*.

Among other things, Plaintiff has now included a three-page hypothetical about fictional Columbia students "Paula" and "Emmet," presumably intended to show what Plaintiff thinks would have happened had the gender roles in this case been reversed. But pure speculation based on fictional characters and events does not belong in a complaint; a plaintiff must allege actual facts, not speculation or conjecture. Moreover, given that Mr. Nungesser was found to be "not responsible" for any sexual misconduct in the University disciplinary proceedings relating to Ms. Sulkowicz (SAC ¶ 11), the issue in this case is not whether male students accused of sexual misconduct at Columbia are treated differently than female students, but whether Mr. Nungesser was harassed by other students including Ms. Sulkowicz "on the basis" of his sex, and whether the University was "deliberately indifferent" to that alleged

---

[1] The SAC misspells Mr. Vu-Daniel's first name. It is Tomas, not Thomas.

student-on-student harassment. Hypothetical scenarios and articles about sexual violence are immaterial to that inquiry and threaten to distract the parties and the Court from the claims and defenses that are truly at issue. Because Defendants cannot possibly be expected to respond to impertinent allegations that have nothing to do with their alleged conduct and because Plaintiff's prolix pleading burdens this Court, the passages from the Second Amended Complaint identified by Defendants should be stricken.[2]

## RELEVANT FACTUAL BACKGROUND

In an effort to surmount the pleading deficiencies outlined in this Court's Order dismissing the Amended Complaint, Plaintiff filed a 280-paragraph, 100-page new complaint denominated the Second Amended and Supplemented Complaint on April 25, 2016. While the Amended Complaint spanned an already lengthy 76 pages, the Second Amended Complaint clocks in at 100 pages.

Although the Court had already found that the facts alleged in Plaintiff's Amended Complaint were insufficient to state a claim for peer-on-peer harassment under Title IX of the Education Amendments of 1972 ("Title IX") (Dkt. No. 36 (the "Order") at 9–16), Plaintiff does not allege any new material facts that suggest that the University was deliberately indifferent to known acts of harassment in his Second Amended Complaint. Rather than buttress his claims by marshaling new factual allegations regarding the underlying student-on-student harassment that he alleges he experienced while a student at Columbia, Plaintiff has supplemented his complaint with a gender-swapping hypothetical (SAC ¶¶ 92–104a)[3] that is totally divorced from the facts of the instant case. Plaintiff's hypothetical involves a student

---

[2] *See* Exhibit A to the Declaration of Roberta A. Kaplan In Support of Defendants' Motion to Strike Portions of the Second Amended & Supplemented Complaint ("Kaplan Decl."), which is a version of the SAC with highlighting indicating the portions of the SAC that Defendants seek, through this Motion, to have stricken.

[3] Inexplicably, the paragraph after Paragraph 104 of the SAC is numbered 98. For clarity, Defendants will refer to the first set of paragraphs 98 through 104 as 98a–104a and the second set of paragraphs 98 through 104 as 98b–104b.

2

named "Emmet" who falsely alleges that his former romantic partner, "Paula," is an escort who has been sleeping with Columbia professors to gain special treatment. (*Id.* ¶¶ 93, 100a.) "Emmet" decides to carry a "mannequin dressed in lingerie" around campus with the aim of forcing "Paula" to leave campus. (*Id.* ¶ 99a.) As part of the hypothetical, one of Emmet's "fan[s]" writes on Facebook: "This f-----g whore. A shame that I am not in New York – or else I would f--k her brains out," and "[t]his whore needs to practice silence or suicide before she gets dealt with accordingly." (*Id.* ¶ 101a.)

Plaintiff adds to the Second Amended Complaint a citation to the academic work of a professor of comparative literature regarding the "gendered grammar of violence." (*See id.* ¶ 23 n.13.) Plaintiff also cites various miscellaneous sources for the proposition that "almost as many males as females report being victims of sexual violence," and to show the alleged prevalence of false accusations of rape. (*Id.* ¶¶ 108(a), 129 & n.129.) These sources include, among others, a study by the Centers for Disease Control and Prevention on sexual violence, an article from the American Journal of Public Health on male sexual victimization, the results of a Google search of the phrase "female rapists,"[4] and purported "definitions" of the word "rapist" from the website, "Urban Dictionary." (*Id.* ¶¶ 24 n.14, 108(a) n.99, 108(c) n.102, 114 n.113, 118 n.120.)

As directed by the Court during the May 5, 2016 telephonic conference, on May 9, 2016, Defendants' counsel sent Plaintiff's counsel a copy of the Second Amended Complaint indicating the specific allegations Defendants sought to strike, offering to meet and confer. (Kaplan Decl. Ex. B.) Plaintiff's counsel responded by taking the position that "the only item

---

[4] According to the Second Amended Complaint, the result of this search included the following: "[f]emale rapist faces jail after being found guilty of running paedophile ring which subjected five young children to horrific abuse over more than a decade," and "[a] FEMALE rapist could spend the rest of her life behind bars after helping to carry out a horrific two-hour sex attack on another woman." (*Id.* ¶ 114 n.113.)

3

that Judge Woods seemed amendable [*sic*] to considering" was the 'Paula-Emmet' paragraphs." (*Id.*)  Defendants' counsel expressed disagreement with Plaintiff's interpretation of the Court's instructions, noting that "If you are . . . willing to strike at least some of the language highlighted, then we might be able to reach a resolution of the issue and not proceed with a motion to strike.  That, after all, is the point of reaching a compromise." (*Id.*)  It soon became clear, however, that Plaintiff was unwilling to engage in good faith, and so the parties were unable to reach any agreement that would have avoided the filing of this motion.[5]

## ARGUMENT

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule 12(f), in turn, a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005).

The decision to grant a motion to strike "is vested in the trial court's sound discretion." *Pharmacy, Inc.* v. *Am. Pharm. Partners, Inc.*, No. 05 Civ. 776, 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007).  Allegations may be stricken where "no evidence in support of the allegations would be admissible; . . . the allegations have no bearing on the issues in the case, and. . . to permit the allegations to stand would result in prejudice to the movant."  *Allocco* v. *Dow Jones & Co.*, No. 02 Civ. 1029, 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002).

---

[5] The emails attached as Exhibit B to the Kaplan Declaration speak for themselves.  In analogous situations, courts have not hesitated to grant a motion against the recalcitrant party on this basis alone.  *Cf. Vaigasi* v. *Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 6161386, at *11 (S.D.N.Y. Feb. 16, 2016).

I.      **The "Paula-Emmet" Hypothetical Should be Stricken**

As discussed above, the Second Amended Complaint contains an inflammatory 13-paragraph hypothetical about two fictional individuals (SAC ¶¶ 92–104a), the apparent objective of which is to demonstrate that the University would have responded differently to Ms. Sulkowicz's art project if she were a male and if Mr. Nungesser were a female.

This hypothetical should be stricken because it is just that—a hypothetical "devoid of any facts suggesting how Columbia might handle" this fabricated scenario. (Order at 11 n.9.) As such, it does not constitute "factual matter that, if taken as true, states a claim" for relief. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 666 (2009); *see also Gallop* v. *Cheney*, 642 F.3d 364, 368 (2d Cir. 2011). This Court has already rejected a prior attempt by Plaintiff to introduce speculative gender-swapping allegations such as these in connection with Ms. Sulkowicz's art exhibit. (*See* Order at 11 n.9 (finding that allegation that "[a] male student would not have been able to publicly display graphically nude prints of a female classmate showing female genitalia and female perpetrated sexual abuse without Defendant Columbia intervening" was "mere speculation" and "devoid" of sufficient facts).)

Permitting the hypothetical to stand prejudices Defendants by insinuating that they have engaged, or would engage, in conduct that is not the subject of any factual allegations in the Second Amended Complaint and by requiring them to respond not to factual allegations, but instead to fictional narratives. Even worse, the unnecessarily sordid and impertinent "Paula-Emmet" hypothetical distorts the allegations in the Second Amended Complaint and suggests a false equivalency between the *actual* alleged facts and the hypothetical scenario. More specifically, the implication of the hypothetical is that the facts underlying Ms. Sulkowicz's complaint are analogous to a rumor that a female student is carrying on a consensual sexual affair with a male professor. (*See* SAC ¶ 93.) They are not. Indeed, although the hypothetical

5

includes the inflammatory statement "This f-----g whore.  A shame that I am not in New York—or else I would f--- her brains out" (SAC ¶ 101a), the Second Amended Complaint does not allege that any of Plaintiff's peers at Columbia—or anyone else for that matter—ever threatened Plaintiff in this manner (*see, e.g.*, SAC ¶¶ 137–45).

Because the "Paula-Emmet" narrative cannot possibly be susceptible to proof, there is "no evidence in support of the[se] allegations [that] would be admissible." *Impulsive Music* v. *Pomodoro Grill, Inc.*, No. 08 Civ. 6293, 2008 WL 4998474, at *2 (W.D.N.Y. Nov. 19, 2008) (citation omitted); *see also Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 893–94 (2d Cir. 1976); *Lynch* v. *Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 68 (E.D.N.Y. 2011); *New Dyckman Theatre Corp.* v. *Radio-Keith-Orpheum Corp.*, 16 F.R.D. 203, 206 (S.D.N.Y. 1954); *Low* v. *Robb*, No. 11 Civ. 2321, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012).  Indeed, courts in this district have recognized a court's authority to strike allegations with no basis in fact.  *See Rampersad* v. *Deutsche Bank Sec., Inc.*, No. 02 Civ. 7311, 2004 WL 616132, at *3 (S.D.N.Y. Mar. 30, 2004); *see also Salzmann* v. *Prudential Secs. Inc.*, No. 91 Civ. 4253, 1994 WL 191855, at *13 (S.D.N.Y. May 16, 1994).

## II. Certain of Plaintiff's Allegations Regarding Gender Theory and Anti-Male Bias Should Also Be Stricken

Defendants also seek to strike paragraphs in the Second Amended Complaint which purport to describe various academic theories and studies regarding sexual violence.[6]

One article is cited to suggest that evidence of women acting "as perpetrators in the same realm towards male victims, is largely disregarded" (*see* SAC ¶ 23 & n.13), but the cited essay, written by a professor of comparative literature, does not purport to be an empirical study of sexual assault, nor does it conclude that male victimhood is "largely disregarded."  *Id.*

---

[6] In particular, Defendants seek to strike footnotes 13–14, 102–04, 113–15, 120 and 127–28 and paragraphs 108(a), 108(c), 114, and 118 of the SAC.  (Kaplan Decl. Ex. A.)

6

Instead, it concerns "poststructuralist theory" in the context of rape—one passage from the article states that: "We can avoid these self-defeating pitfalls by regarding rape not as a fact to be accepted or opposed, tried or avenged, but as a process to be analyzed and undermined. . . . Another way to refuse to recognize rape as the real fact of our lives is to treat it as a *linguistic* fact: to ask how the violence of rape is enabled by narratives, complexes and institutions which derive their strength not from outright, immutable, unbeatable force but rather from their power to structure our lives as imposing cultural scripts." Sharon Marcus, *Fighting Bodies, Fighting Words: A Theory and Politics of Rape Prevention, in Feminists Theorize the Political* 388 (Judith Butler & Joan Scott eds. 1992).[7]  Here, of course, the Court must be concerned with actual facts, not "linguistic facts."

Other material in the Second Amended Complaint is intended to show that men can be victims of sexual assault or that women can be perpetrators. (*See, e.g.*, SAC ¶¶ 11, 24 n.14, 108(a), 114.)  But there is really no disagreement about this.  As this Court has explained: "Persons of any gender may be perpetrators, or victims, of sexual assault.  The Second Circuit has long recognized that the gender of the parties involved in gender-based harassment cases can vary."  (Order at 11 n.8 (citations omitted).)  Surely, the results of Plaintiff's Google search of the term "female rapist," discussed above, have nothing to do with anything alleged in this case. (SAC ¶ 114 n.113.)  Plaintiff's citations to this extraneous matter appear to be his way of expressing his political dissatisfaction with perceived anti-male bias within contemporary American society at large.  While Plaintiff clearly has a strong viewpoint on these issues, which he has every right to express, this lawsuit is not the proper venue for doing so.  *See Prezzi* v.

---

[7] Defendants' belief that this article should be stricken from the SAC is in no way a comment on the quality of the academic work.  Indeed, Professor Marcus is a distinguished member of the Columbia faculty, holding the Orlando Harriman Chair of English and serving as the Dean for Humanities of Columbia's Faculty of Arts and Sciences.

*Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); *Sharpe* v. *Mental Health Sys. of U.S.*, 357 F. App'x 373, 374 (2d Cir. 2009).

Indeed, Plaintiff here does not purport to be a victim of rape, nor is he claiming that he was "made to penetrate" a fellow student. (*See* SAC ¶ 108(c).) To the contrary, he has alleged that no rape took place at all. (*See id.* ¶ 15.) Thus, these "allegations have no bearing on the issues in th[is] case." *Impulsive Music*, 2008 WL 4998474 at *2. But even if these studies were somehow material to Plaintiff's claims, as discussed below, Plaintiff appears to have willfully misrepresented the contents of the cited documents. *See Rampersad*, 2004 WL 616132 at *3.

Plaintiff asserts, for example, that "almost as many males as females report being victims of sexual violence" (*id.* ¶ 108(a)), but the CDC study he cites in support of that proposition found that 18.3% of women, as compared to 1.4% of men, reported having been raped in their lifetime, and "[n]early 1 in 2 women (44.6%)" though only "1 in 5 men (22.2%) experienced sexual violence victimization other than rape at some point in their lives." Michele C. Black et al., Ctrs. for Disease Control and Prevention, National Intimate Partner And Sexual Violence Survey: 2010 Summary Report 18–19 (2011), *available at* https://www.cdc.gov/violenceprevention/pdf/nisvs_report2010-a.pdf. Plaintiff also cites a study criticizing "[t]he conceptualization of men as perpetrators and women as victims" (SAC ¶ 114), but a principal goal of this study is to encourage consideration of the sexual victimization of *male prisoners by other prisoners*. *See* Lara Stemple and Ilan H. Meyer, *The Sexual Victimization of Men in America: New Data Challenge Old Assumptions*, 104 Am. J. of Pub. Health, June 2014, e19, e23, e25. While Plaintiff further relies upon notions of "women who cry rape" to suggest that there are higher levels of false accusations for sexual violence than other

8

crimes (*see* SAC ¶ 129 n.128), the statistic Plaintiff cites—that "between 8 and 10% of police reports of sexual violence are false accusations"—can be found *nowhere* in the article he cites. *See generally* Philip N.S. Rumney, *False Allegations of Rape*, 65 Cambridge L.J. 125 (2006), *available at* http://eprints.uwe.ac.uk/6478/1/Download.pdf.

Another focus of the Second Amended Complaint is discrimination against males in University adjudications of gender-based misconduct. (*See, e.g.*, SAC ¶ 108(a).) Such allegations however, are at most, material *only* to a hypothetical selective enforcement or erroneous outcome claim under Title IX. Plaintiff does not purport to allege such a claim; nor could he, as he was found "not responsible" by the University with respect to Ms. Sulkowicz's allegations. (*See* SAC ¶¶ 11, 12 n.3.) *See Garzon* v. *Jofaz Transp., Inc.*, No. 11 Civ. 5599, 2013 WL 783088, at *2 (E.D.N.Y. Mar. 1, 2013); *Reiter's Beer Distribs., Inc.* v. *Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 145 (E.D.N.Y. 1987). Even if this broader discussion about societal discrimination against males were somehow material to Plaintiff's claims here (and it is not), it is well-established that generalized academic discourse about perceived societal biases cannot evidence a specific actor's discriminatory intent. *See Flagg* v. *Control Data*, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992), *aff'd*, 998 F.2d 1002 (3d Cir. 1993); *Minority Police Officers Ass'n of S. Bend* v. *City of S. Bend, Ind.*, 801 F.2d 964, 967 (7th Cir. 1986); *Dent* v. *U.S. Tennis Ass'n, Inc.,* No. 08 Civ. 1533, 2008 WL 2483288, at *4 (E.D.N.Y. June 17, 2008).

Plaintiff's criticisms of the CDC's definition of intimate partner violence (SAC ¶ 24 n.14), the FBI's definition of rape (SAC ¶ 108 n.102), and his purported advocacy of a proposed set of amendments to the Campus Accountability and Safety Act (SAC ¶ 129 n.127), are arguably even further afield. Inclusion of such surplusage threatens to improperly broaden the scope of this litigation, requiring Defendants to respond to immaterial, collateral allegations

9

while distracting the parties and the Court from the issues in this case. It is worth noting that Plaintiff's counsel in this case has brought at least two lawsuits against the Department of Education which contain similar allegations. *Neal* v. *Col. State Univ.-Pueblo*, No. 16 Civ. 873 (D. Colo.); *Ehrhart* v. *U.S. Dep't of Educ.*, No. 16 Civ. 1302 (N.D. Ga.). While these issues may well be relevant in those cases, they are not material here.

Last but certainly not least, the citation to Urban Dictionary should also be stricken. (*See* SAC ¶ 118 & n.120.) Urban Dictionary is a crowdsourced online dictionary of slang words and phrases which are posted and defined by its readers. *See* www.urbandictionary.com ("Urban Dictionary is written by you.") The fact that an anonymous internet user thinks that "rapist" should be defined in a particular way does not and should not have any bearing on the outcome of this case.[8]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to strike portions of the Second Amended Complaint.

Dated: June 15, 2016

>Respectfully submitted,
>
>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
>
>By:        */s/ Roberta A. Kaplan*
>
>Michele S. Hirshman
>Roberta A. Kaplan
>Darren W. Johnson
>Caitlin E. Grusauskas

---

[8] Even if it were somehow relevant or appropriate, the "top definition" of rapist on Urban Dictionary, while distasteful, is *a compliment*: "Someone who is so good at something he absolutely rapes his opposition." The example included with this definition also uses the term "serial rapist" as a compliment: "Ted: Oh my god that guy is amazing at football, he is proper raping me up. Fred: Yeh man, he is a serial rapist…" http://www.urbandictionary.com/define.php?term=rapist. This absurd definition alone demonstrates why the allegations concerning Urban Dictionary should be stricken from the Second Amended Complaint.

>1285 Avenue of the Americas
>New York, NY  10019-6064
>Main: 212.373.3000
>Fax: 212.757.3990
>mhirshman@paulweiss.com
>rkaplan@paulweiss.com
>djohnson@paulweiss.com
>cgrusauskas@paulweiss.com
>
>*Attorneys for Columbia University, Trustees of Columbia University, Lee C. Bollinger, Jon Kessler, Tomas Vu-Daniel and Marianne Hirsch*