UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL NUNGESSER,<br><br>                              Plaintiff,<br><br>           v.<br><br>COLUMBIA UNIVERSITY,<br>TRUSTEES OF COLUMBIA UNIVERSITY,<br>LEE C. BOLLINGER, individually and as<br>agent of Columbia University, JON KESSLER,<br>individually and as agent of Columbia University,<br>THOMAS VU-DANIEL, individually and as agent of<br>Columbia University, and MARIANNE HIRSCH,<br>individually and as agent of Columbia University,<br><br>                              Defendants. | No. 15-cv-3216 (GHW)<br><br>Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED & SUPPLEMENTED COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Columbia University, Trustees of Columbia
University, Lee C. Bollinger, Jon Kessler, Tomas Vu-Daniel
and Marianne Hirsch*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    Plaintiff Fails to State a Title IX Claim .................................................. 2

    A.    The Second Circuit's Recent Decision in *Doe* v. *Columbia University* Does Not Alter the Pleading Standard on This Motion ................................... 2

    B.    The Alleged Conduct Was Not Sexual Harassment ............................... 6

    C.    Plaintiff Was Not Barred from Access to Educational Opportunities .................. 10

    D.    Columbia's Response Was Not "Clearly Unreasonable" ..................... 14

II.   Plaintiff's State Law Claims Also Fail as a Matter of Law ..................... 17

    A.    Plaintiff Fails to State a Claim for Breach of Contract ........................ 17

    B.    Plaintiff's Other State Law Claims Also Fail ...................................... 18

CONCLUSION .................................................................................................. 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abramson* v. *William Paterson Coll. of N.J.*,
   260 F.3d 265 (3d Cir. 2001)....................................................................................4

*Apgar* v. *Wyoming*,
   221 F.3d 1351 (table), 2000 WL 1059444 (10th Cir. 2000)......................................4

*Campisi* v. *City Univ. of N.Y.*,
   No. 15 Civ. 4859, 2016 WL 4203549 (S.D.N.Y. Aug. 9, 2016) ...............................5

*Davis* v. *Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)...........................................................................3, 4, 10, 14

*Doe* v. *Columbia Univ.*,
   No. 14 Civ. 3572, 2015 WL 1840402 (S.D.N.Y. Apr. 21, 2015).............................2

*Doe* v. *Columbia Univ.*,
   No. 15-1536, 2016 WL 4056034 (2d Cir. July 29, 2016)..............................1, 2, 3

*Doe* v. *East Haven Bd. of Educ.*,
   200 F. App'x 46 (2d Cir. 2006) ...........................................................................6, 7

*Eilenfeldt* v. *United C.U.S.D. #304 Bd. of Educ.*,
   30 F. Supp. 3d 780 (C.D. Ill. 2014) .....................................................................8, 9

*Gabrielle M.* v. *Park Forest-Chi. Heights, Ill. Sch. Dist. 163*,
   315 F.3d 817 (7th Cir. 2003) ..................................................................................12

*Gant ex rel. Gant* v. *Wallingford Bd. of Educ.*,
   195 F.3d 134 (2d Cir. 1999).................................................................................3, 5

*Hawkins* v. *Sarasota Cnty. Sch. Bd.*,
   322 F.3d 1279 (11th Cir. 2003) .......................................................................12, 13

*HB* v. *Monroe Woodbury Cent. Sch. Dist.*,
   No. 11 Civ. 5881, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012).........................13

*Henson* v. *City of Dundee*,
   682 F.2d 897 (11th Cir. 1982) .................................................................................4

*Herndon* v. *College of Mainland*,
   No. G-06-0286, 2009 WL 367500 (S.D. Tex. Feb. 13, 2009)................................14

*JFK Family Ltd. P'ship* v. *Millbrae Natural Gas Dev. Fund 2005, L.P.*,
No. 07 Civ. 10591, 2008 WL 4308289 (N.Y. Sup. Ct. Sept. 16, 2008) ..................................18

*Johnson* v. *Booker T. Washington Broad. Serv., Inc.*,
234 F.3d 501 (11th Cir. 2000) ........................................................................................4

*K.S.* v. *Nw. Indep. Sch. Dist.*,
No. 13 Civ. 188, 2015 WL 9450853 (E.D. Tex. Dec. 1, 2015) ............................................13

*Katz* v. *Dole*,
709 F.2d 251 (4th Cir. 1983) *abrogation on other grounds recognized by*
*Mikels* v. *City of Durham*, 183 F.3d 323 (4th Cir. 1999) ..............................................4

*Liberman* v. *Gelstein*,
605 N.E.2d 344 (N.Y. 1992) ..........................................................................................15

*Littlejohn* v. *City of New York*,
795 F.3d 297 (2d Cir. 2015) ....................................................................................2, 3, 4

*McDonnell Douglas Corp.* v. *Green*,
411 U.S. 792 (1973) ........................................................................................................2

*Medcalf* v. *Walsh*,
938 F. Supp. 2d 478 (S.D.N.Y. 2013) ............................................................................15

*Nassry* v. *St. Luke's Roosevelt Hosp.*,
No. 13 Civ. 4719, 2016 WL 1274576 (S.D.N.Y. Mar. 31, 2016) ........................................5

*New York* v. *Trump Entrepreneur Initiative LLC*,
26 N.Y.S.3d 66 (App. Div. 1st Dep't 2016) ..................................................................18

*No Hero Enters. B.V.* v. *Loretta Howard Gallery Inc.*,
No. 13 Civ. 8464, 2014 WL 10936545 (S.D.N.Y. May 28, 2014) ......................................1

*Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*,
633 F.3d 81 (2d Cir. 2011) ..............................................................................................4

*Pollard* v. *E.I. DuPont de Nemours Co.*,
213 F.3d 933 (6th Cir. 2000), *rev'd on other grounds*, 532 U.S. 843 (2001) ..................4

*Reynolds* v. *Barrett*,
685 F.3d 193 (2d Cir. 2012) ............................................................................................4

*Salau* v. *Denton*,
139 F. Supp. 3d 989 (W.D. Mo. 2015) ............................................................................8

*Spinka* v. *H.*,
No. 14 Civ. 583, 2016 WL 1294593 (S.D. Ill. Mar. 31, 2016) ..........................................12

*Thomas H.* v. *Paul B.*,
965 N.E.2d 939 (N.Y. 2012) ..................................................................................................15

*Yu* v. *Vassar Coll.*,
97 F. Supp. 3d 448 (S.D.N.Y. 2015) .......................................................................................3

*Yusuf* v. *Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994) ......................................................................................................3

*Zeno* v. *Pine Plains Cent. Sch. Dist.*,
702 F.3d 655 (2d Cir. 2012) ............................................................................................13, 14

## Other Authorities

Daily Pilot Staff, *Clothesline Project Airs Out Messages About Violent Crimes*,
L.A. Times, Apr. 15, 2016, http://www.latimes.com/socal/daily-pilot/news/tn-
dpt-me-0416-ivc-clothesline-20160415-story.html ...............................................................16

Mary Ann Swissler, *Using Student-Made Films to Confront Campus Sexual
Assault*, Women's Media Center, Nov. 6, 2013,
http://www.womensmediacenter.com/feature/entry/using-student-made-films-
to-confront-campus-sexual-assault ........................................................................................16

Tara Culp-Pressler, *Five Creative Ways That Students Are Fighting Rape Culture
on College Campuses*, ThinkProgress, Oct. 9, 2013,
http://thinkprogress.org/health/2013/10/09/2753931/creative-college-students-
consent/ ...................................................................................................................................16

Defendants Columbia University, the Trustees of Columbia University (together, "Columbia" or "the University"), Lee C. Bollinger, Jon Kessler, Tomas Vu-Daniel and Marianne Hirsch respectfully submit this reply memorandum in further support of Defendants' motion to dismiss the Second Amended & Supplemented Complaint (the "Second Amended Complaint" or "SAC").

## PRELIMINARY STATEMENT

Just as the factual allegations in Plaintiff's Second Amended Complaint are virtually indistinguishable from those in Plaintiff's Amended & Supplemented Complaint (the "Amended Complaint" or "AC"), in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. No. 59 ("Opp.")), Plaintiff repeats the arguments he made in opposing Defendants' prior motion to dismiss. This Court already considered and rejected those arguments in connection with that motion. Although there are a few inconsequential details in the Second Amended Complaint that are different from what was alleged in the Amended Complaint, the vast majority of the changes reflect arguments, not new facts. (*See generally* Defs.' Mot. to Strike Portions of the Second Am. & Supplemented Compl. ("Motion to Strike Moving Br."), Dkt. Nos. 55–57.)

In his opposition, Plaintiff either ignores this Court's prior order (Mem. Op. & Order Granting Defs.' Mot. to Dismiss, Dkt. No. 36 (the "Order")), or impermissibly seeks to reargue the Court's decision. *Cf. No Hero Enters. B.V.* v. *Loretta Howard Gallery Inc.*, No. 13 Civ. 8464, 2014 WL 10936545, at *1 (S.D.N.Y. May 28, 2014) ("'A motion for reconsideration may not . . . be used as a vehicle for relitigating issues already decided by the Court.'" (quoting *Davidson* v. *Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)). The Second Circuit's recent decision in *Doe* v. *Columbia University*, No. 15-1536, 2016 WL 4056034 (2d Cir. July 29,

2016), does not change the result here since, as explained below, it does not alter the pleading burden on this motion.

<u>**ARGUMENT**</u>

**I.      <u>Plaintiff Fails to State a Title IX Claim</u>**

Defendants' moving brief established that Plaintiff failed to plead a Title IX claim of student-on-student harassment.  Nothing about the Second Circuit's recent decision in *Doe* v. *Columbia University* alters this conclusion.

> **A.      The Second Circuit's Recent Decision in *Doe* v. *Columbia University* Does Not Alter the Pleading Standard on This Motion**

The Second Circuit recently issued a decision vacating Judge Furman's decision below, *Doe* v. *Columbia University*, No. 14 Civ. 3573, 2015 WL 1840402 (S.D.N.Y. Apr. 21, 2015), and addressing the appropriate pleading standard in a Title IX case based on allegations of erroneous outcome or selective enforcement.  *See Doe,* 2016 WL 4056034, at *1.  In that decision, the Second Circuit held that the burden-shifting framework for Title VII disparate treatment claims established by a line of cases beginning with *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), and the associated pleading burden articulated in *Littlejohn* v. *City of New York*, 795 F.3d 297 (2d Cir. 2015), apply to a Title IX erroneous outcome/selective enforcement claim.  The Court concluded that "a complaint under Title IX, alleging that plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent . . . if it pleads specific facts that support a minimal plausible inference of such discrimination."  *Doe*, 2016 WL 4056034, at *7.

The *Doe* holding, by its terms, is limited to Title IX claims challenging the "imposition of university discipline."  *Id.*  There are no such claims of erroneous outcome or selective enforcement in this case.  Plaintiff's case is based on a Title IX theory of deliberate

indifference to student-on-student harassment.  In its prior Order, this Court specifically noted this difference, observing that Plaintiff "does not argue that the disciplinary proceedings against him resulted in an erroneous outcome or that Columbia selectively enforced its policies regarding gender-based misconduct."  (Order at 9 n.3; *see* Opp. at 5–26 (defending Plaintiff's Title IX claim solely on the basis of the deliberate indifference factors set forth in *Davis* v. *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)).)  *See also Yusuf* v. *Vassar Coll.*, 35 F.3d 709, 714–16 (2d Cir. 1994).

This distinction is critical because the whole purpose of the *McDonnell Douglas* burden-shifting framework is to provide a temporary presumption of discriminatory *motive* or *intent*, an element that is essential in evaluating Title VII disparate treatment claims, as well as Title IX claims based on erroneous outcome/selective enforcement.  *See, e.g., Littlejohn*, 795 F.3d at 307–08 (plaintiff in Title VII disparate treatment case must show, among other things, "that the employer acted with discriminatory motivation"); *Yu* v. *Vassar Coll.*, 97 F. Supp. 3d 448, 461–62 (S.D.N.Y. 2015) (plaintiff in Title IX erroneous outcome/selective enforcement case must show, among other things, that "gender bias was a motivating factor" (internal citations and quotation marks omitted)).  Those claims are analytically distinct from Title IX claims based on deliberate indifference to student-on-student harassment.  *See Davis*, 526 U.S. at 633, 650; *Gant ex rel. Gant* v. *Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999) ("in cases of alleged student-on-student harassment, only deliberate indifference to such harassment can be viewed as discrimination by school officials themselves").

According to the Supreme Court in *Davis*, the closest Title VII analog to a Title IX deliberate indifference claim is a hostile work environment claim since both claims arise out of an alleged failure by an employer or university to prevent severe, pervasive peer

3

harassment.  *See Davis*, 526 U.S. at 651 (citing *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 67 (1986) and *Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)); *see also Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (observing that a "Title IX hostile education environment claim is 'governed by traditional Title VII "hostile environment" jurisprudence'" (quoting *Hayut* v. *State Univ. of New York*, 352 F.3d 733, 744 (2d Cir. 2003))).  The *McDonnell Douglas* burden-shifting framework and the associated *Littlejohn* pleading burden are generally not applied to hostile work environment claims because such claims do not require the plaintiff-employee to plead or prove discriminatory intent on the part of the employer-defendant.[1]

    This distinction is made clear in *Littlejohn* itself, where the Second Circuit, when faced with Title VII claims based on both disparate treatment and hostile work environment, applied the "minimal inference of discriminatory motivation" pleading burden *only* to the disparate treatment claim, and not to the hostile work environment claim.  *Littlejohn*, 795 F.3d at 313, 320–21; *see also Reynolds* v. *Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (recognizing distinction between *McDonnell Douglas* burden-shifting framework and hostile work

---

[1]    *See, e.g., Pollard* v. *E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000) ("The McDonnell Douglas framework is meant to prove that conduct which might have some otherwise legitimate motive (such as promoting a man instead of a woman) was in fact based upon discriminatory motive.  When a plaintiff proves that a hostile work environment existed, there is no legitimate justification for such an environment, and thus recourse to the McDonnell Douglas test is not warranted."), *rev'd on other grounds*, 532 U.S. 843 (2001); *Henson* v. *City of Dundee*, 682 F.2d 897, 905 n.11 (11th Cir. 1982) ("In contrast [to disparate treatment], the case of sexual harassment that creates an offensive environment does not present a factual question of intentional discrimination which is at all elusive."); *see also Abramson* v. *William Paterson Coll. of N.J.*, 260 F.3d 265, 281 n.11 (3d Cir. 2001) ("the [district court] erred by . . . stating that the exact same evidence applied to both [plaintiff's] religious discrimination claim and her hostile work environment claim . . . the two claims have entirely different prima facie cases . . ."); *Johnson* v. *Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 511 (11th Cir. 2000) ("We are unwilling to read the *McDonnell Douglas-Burdine* framework into non-retaliation sexual harassment cases at this point." (footnote omitted)); *Apgar* v. *Wyoming*, 221 F.3d 1351 (table), 2000 WL 1059444, at *7 (10th Cir. 2000) ("The analysis for a disparate treatment claim, which requires proof of discriminatory intent or motive, differs from the hostile work environment claim and is governed by the well-known *McDonnell Douglas* framework."); *Katz* v. *Dole*, 709 F.2d 251, 255 (4th Cir. 1983) ("Although such a claim of sexual harassment might be analyzed under the familiar Title VII disparate treatment formula, we think that a somewhat different order of proof is appropriate." (footnote omitted)), *abrogation on other grounds recognized by Mikels* v. *City of Durham*, 183 F.3d 323, 329 n.4 (4th Cir. 1999).

4

environment analysis); *Gant*, 195 F.3d at 140–41, 146 (applying burden-shifting to racial discrimination disparate treatment claim, but not to deliberate indifference claim based on *Davis*) (cited with approval in *Doe*); *Nassry* v. *St. Luke's Roosevelt Hosp.*, No. 13 Civ. 4719, 2016 WL 1274576, at *6–7, *8–10 (S.D.N.Y. Mar. 31, 2016) (Woods, J.) (applying burden-shifting to disparate treatment claim, but not to hostile work environment claim).

       *Doe* involves a Title IX erroneous outcome claim where an allegedly discriminatory motive was relevant. Plaintiff here has pled a deliberate indifference claim. As with an employee alleging a hostile work environment under Title VII, a student alleging deliberate indifference under Title IX need not plead or prove discriminatory bias on the part of the university. *Doe* does not apply the *McDonnell Douglas* burden-shifting framework and the associated presumption of discriminatory motive to a Title IX deliberate indifference claim and does not require, or even suggest, that the framework should be applied to the deliberate indifference claim Plaintiff has pleaded here.[2]

*       *       *

       Plaintiff has not adequately pleaded a student-on-student harassment claim under Title IX because: (1) the alleged harassment was not "sexual" or based on Plaintiff's gender; (2) the alleged harassment was not "so severe, pervasive, and objectively offensive" that it effectively "bar[red]" Plaintiff from access to educational opportunities or benefits; and (3) Defendants' actions in response to the alleged harassment were not "clearly unreasonable in light

---

[2] The recent decision in *Campisi* v. *City Univ. of N.Y.*, No. 15 Civ. 4859, 2016 WL 4203549 (S.D.N.Y. Aug. 9, 2016), affirms as much. The court in that case cites *Doe* in the context of discussing the "severe and pervasive" element of a Title IX deliberate indifference claim involving teacher-on-student harassment. It is unclear from the *Campisi* decision, however, what, if any, relevance the court intends to ascribe to *Doe* in the context of that element. The court simply notes that "as the Second Circuit recently held in the Title IX context, '[a] complaint under Title IX alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a *minimal plausible inference* of such discrimination.'" 2016 WL 4203548, at *6 (emphasis in original) (quoting *Doe*, 2016 WL 4056034, at *7). There is no further mention of *Doe*, and no discussion of how *Doe* might apply in the context of a Title IX deliberate indifference claim.

5

of the known circumstances."  (Moving Br. at 6–22 (quoting *Davis*, 526 U.S. at 633, 648, 651).)
As discussed below, Plaintiff's opposition only confirms that his Title IX claim should be
dismissed for these three independent reasons.

**B.      The Alleged Conduct Was Not Sexual Harassment**

As to whether the conduct alleged constituted "sexual harassment" for purposes
of Title IX, Plaintiff continues to rely mainly on his allegation that Ms. Sulkowicz "falsely"
accused him of being a "rapist" (SAC ¶¶ 111–21), which he claims "in the context of this case is
a gendered slur" (Opp. at 7).  This Court already rejected the notion that Plaintiff "was publicly
branded a serial rapist 'because he is male'" (Order at 11 (quoting AC ¶ 77)), and that falsely
calling someone a rapist is "inherently gendered."  (Order at 11.)  Plaintiff does not point to any
new factual allegation in his Second Amended Complaint that plausibly suggests that the
harassment he allegedly suffered was motivated by his gender.  Instead, he attempts to challenge
this Court's earlier finding by citing secondary sources that he claims stand for the proposition
that "calling an innocent male a 'rapist' or 'serial rapist'" is "'an act of verbal aggression,
intimidation and hostility based on sex-based stereotyping.'"  (Opp. at 7 (quoting SAC ¶ 112).)
As Defendants demonstrated in their moving brief, and as Plaintiff does not dispute in his
opposition, none of those authorities support Plaintiff's contention that the term "rapist" is a
form of verbal abuse that is directed only at men.  (Moving Br. at 8–9.)  Indeed, Plaintiff
effectively concedes that the term "rapist" is not inherently gender-based when he acknowledges
that "persons of any gender may be perpetrators . . . of 'sexual assault.'"  (Opp. at 7.)

Unable to cite any case in which calling someone a "rapist" has been deemed to
constitute "sexual harassment" under Title IX or to escape the binding decision of this Court on
this point, Plaintiff seeks to analogize this case to *Doe* v. *East Haven Board of Education*, 200 F.

App'x 46 (2d Cir. 2006), a case that was cited in Defendants' original moving brief.[3]  (*See, e.g.,* Opp. at 7–9.)  But the facts in that Second Circuit summary order are far different from those here.  In *Doe* v. *East Haven Board of Education*, plaintiff (a fourteen-year-old girl) was the victim of a rape by two other students at her high school, and beginning the day after she reported the rape, she was subjected to "other, primarily female, students" calling her "'[a] slut, a liar, a bitch, a whore.'"  *Id.* at 47–48.  The court understandably found that "[a] reasonable fact-finder could conclude that, when a fourteen-year-old girl reports a rape and then is persistently subjected by other students to verbal abuse that reflects sex-based stereotypes *and* questions the veracity of her account, the harassment would not have occurred but for the girl's sex."  *Id.* at 48 (emphasis in original).  Here, by contrast, Plaintiff was not the victim of an alleged rape, Plaintiff did not report being raped, and Plaintiff was not the subject of verbal abuse based on sex-based stereotypes.  Indeed, nothing in *Doe* v. *East Haven Board of Education* suggests that calling a male college student a "rapist" is somehow the same as calling a fourteen-year-old girl who was raped by two other high school students a "slut," a "bitch" and a "whore."

As Defendants established in their moving brief, Plaintiff's repeated attempts to equate the terms "rapist" and "whore" make no sense, because the term "whore," unlike the word "rapist," is susceptible to at least two different meanings:  It can be used either as a synonym for "prostitute" or as a derogatory term to describe someone who is "sexually promiscuous." (Moving Br. at 9.)  The term "rapist," on the other hand, despite Plaintiff's strange citation to the Urban Dictionary that is the subject of Defendants' motion to strike (*see* Motion to Strike

---

[3]    While Plaintiff charges that "Columbia never once cites much less addresses" *Doe* v. *East Haven Board of Education* (Opp. at 8), it was Defendants who first cited and discussed that decision in their original motion to dismiss.  (*See* Mem. of Law in Supp. of Defs.'s Mot. to Dismiss, Dkt. No. 29 at 9, n.6.)  Indeed, Plaintiff never cited *Doe* v. *East Haven Board of Education* in connection with the original motion to dismiss.  Defendants did not cite the case again in their new motion to dismiss because this Court already addressed and distinguished *Doe* v. *East Haven Board of Education* in its Order dismissing the Amended Complaint.  (Order at 12.)

Moving Br. at 10), has only a single definition—namely, someone who "forc[es] another person to submit to sex acts, esp. sexual intercourse." (Moving Br. at 9.) While Plaintiff attempts to downplay this distinction by labelling it a "*non sequitur*" (Opp. at 8), this difference is critical to understanding why the use of the term "whore" in *Doe* v. *East Haven Board of Education* constituted actionable sexual harassment under Title IX—namely, because it was used as a derogatory term to suggest that a fourteen-year-old girl was sexually promiscuous—and why Ms. Sulkowicz's use of the word "rapist" did not constitute sexual harassment here.

In any event, Plaintiff does not dispute that even if the word "rapist" were considered to be a gender-specific term, the use of that term does not constitute sexual harassment under Title IX unless the underlying motivation for using the term is hostility toward a plaintiff's gender. (Moving Br. at 9 (quoting *Wolfe* v. *Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 867 (8th Cir. 2011)).) Here, this Court has already concluded that Ms. Sulkowicz's use of the word "rapist" was "based on a particular event involving a particular male," "was not used as a generic term to disparage men, or [Plaintiff] as a man," and was not used "because of *his status* as a male." (Order at 11 (emphasis in original), 13.) Unable to respond to this Court's previous findings on this point, which are equally dispositive of the Title IX claim in his Second Amended Complaint, Plaintiff simply ignores them.

Plaintiff's attempt to distinguish the similar conclusions reached by the courts in *Eilenfeldt* v. *United C.U.S.D. #304 Board of Education*, 30 F. Supp. 3d 780 (C.D. Ill. 2014), and *Salau* v. *Denton*, 139 F. Supp. 3d 989 (W.D. Mo. 2015), fares no better. (Opp. at 8.) Plaintiff's only response to *Eilenfeldt* is to note that the verbal harassment suffered by the male plaintiff in that case "was but one part of the bullying." (*Id.*) That observation, however, does not alter the fact that the court in *Eilenfeldt* found that the plaintiff failed to state a claim under Title IX

because the harassing conduct—including the repeated use of the term "rapist"—was (as here) "unrelated to [the male student's] gender." 30 F. Supp. 3d at 788. And although Plaintiff's only purported basis for distinguishing *Salau* is that it involved claims of an adverse disciplinary outcome for sexual misconduct and of a hostile educational environment rather than deliberate indifference (Opp. at 8), he offers no explanation for why the discussion of "whether the harassment was based on sex" in the Title IX hostile educational environment context, 139 F. Supp. 3d at 1000, is any different from the application of that same factor in the context of a Title IX deliberate indifference claim. There, as here, dismissal of plaintiff's Title IX claim was warranted because the plaintiff "fail[ed] to indicate that he was sexually harassed on the basis of his gender, as opposed to experiencing harassment because he was believed to have sexually assaulted another student." *Id.*

Nor is there any merit to Plaintiff's suggestion that "Sulkowicz's carrying of a mattress around campus . . . , the display of Sulkowicz's pornographic prints . . . and Sulkowicz's public denunciations of [Plaintiff] as her rapist at the National Day of Action are words and actions of the type that" constitute sexual harassment under Title IX. (Opp. at 11.) Again, Plaintiff simply ignores the fact that this Court has already concluded that "[t]he Mattress Project, the National Day of Action, and Sulkowicz's public statements that she wanted her rapist off campus are not the type of conduct that creates an actionable Title IX claim." (Order at 13.) And Plaintiff further ignores that this Court previously concluded that Plaintiff's "allegations regarding the exhibition of Sulkowicz's prints prior to graduation" do not support a claim under Title IX. (*See id.* at 11 n.9.) Plaintiff also does not dispute, as Defendants established in their moving brief, that even if the Court were to conclude that the visual images in the prints constituted harassing content that is sexual in nature, that single instance of

harassment would still not be sufficient to state a Title IX claim.  (Moving Br. at 13, n.7.)  In other words, Plaintiff has cited no new factual allegations in the Second Amended Complaint that would somehow convert those nonactionable words and acts into plausible claims of sexual harassment under Title IX.

### C.      Plaintiff Was Not Barred from Access to Educational Opportunities

Defendants' moving brief also established that the alleged harassment was not "so severe, pervasive, and objectively offensive" as "to have the systemic effect of denying [Plaintiff] equal access to" education.  *Davis*, 526 U.S. at 652.  In response, Plaintiff argues that he satisfies this element of a student-on-student harassment Title IX claim because he allegedly (i) feared "for his physical well-being," (ii) "was deprived of the use of campus facilities," (iii) "was harassed during classes," (iv) "was precluded from the alumni network and from on-campus career events," and (v) "miss[ed] a substantial amount of class" and suffered "lowered grade performance."  (Opp. at 13.)  Despite his latest opportunity to replead, the Second Amended Complaint still does not include a single specific allegation that Plaintiff was actually prevented from attending class, that he was actually denied access to any University facilities, or that his grade point average declined materially.  (Moving Br. at 13–14.)

As to the purported "threats" that caused Plaintiff "concern[] for his safety and well-being" (Opp. at 17), Plaintiff overlooks the fact that most of those so-called "threats" were previously alleged in his Amended Complaint, and already found by this Court to be insufficient to support a claim under Title IX.  (*See* Order at 16.)  As Defendants demonstrated in their moving brief, the only purported "threats" that are new to the Second Amended Complaint come from social media posts that Plaintiff does not allege were posted by other Columbia students.  (Moving Br. at 16.)  Although Plaintiff suggests that because some of the posts were on Ms. Sulkowicz's Facebook page, they must have come from people who were Facebook "friends"

with her, and at least some of those people must have been students at Columbia (Opp. at 17), such allegations necessarily involve improper speculation.[4]   Similarly, there is no basis to Plaintiff's disingenuous argument that Ms. Sulkowicz publicly threatened him by saying "It's not safe for him to be on this campus."  (*Id.* at 18.)  As the full context of that quote makes crystal clear, Ms. Sulkowicz was referring to her own safety and the safety of other women at Columbia, not the safety of Mr. Nungesser.  (Moving Br. at 17.)

Although Plaintiff further argues (with little by way of detail or specifics) that he "was harassed during classes" by "activists bringing mattresses and pillows to class, being photographed and stared at" (Opp. at 13), nowhere in his Second Amended Complaint, or in his opposition, does Plaintiff plausibly allege that any of these actions somehow deprived him of equal access to educational opportunities at Columbia.  Plaintiff's opposition further claims that he was "told to leave a class by a professor for the sake of making it easier for everyone" (*id.*), but the actual allegation in his Second Amended Complaint makes clear that the professor simply "recommended him leaving the class," and that Plaintiff chose to remain in the course and complete it, which he was clearly permitted to do (SAC ¶¶ 157, 159).

Plaintiff's assertion that he was "effectively precluded from attending on-campus career events and job opportunities" (Opp. at 17) similarly lacks merit.  Despite being explicitly invited by this Court to do so, Plaintiff still fails to answer the specific questions posed by the Court in the Order, such as "did he even attempt to attend these events?" or "was he turned away at the door?"  (Order at 16.)  The bare assertion that he was "discouraged" from attending certain career events, or precluded from certain job opportunities, is insufficient to plausibly allege that Plaintiff was deprived of access to educational opportunities.  (Moving Br. at 15–16.)  While

---

[4]   Given the popularity of her art work and protests, as of August 11, 2016, Ms. Sulkowicz has 2,042 "friends" and 3,363 "followers" on Facebook.  Plaintiff's allegation that the "friends/followers" who allegedly threatened Plaintiff must have been fellow Columbia students is therefore speculative, at best.

Plaintiff now asserts that "the dorms, libraries, dining halls and the gym were not reasonably available to" him (Opp. at 16), that is almost identical to his prior conclusory allegations "that Columbia facilities were not 'reasonably available' to him," that this Court already found "are not sufficient to state a plausible claim." (*See* Order at 15 (citing AC ¶ 106); *compare* SAC ¶ 148.)

In addition, Plaintiff suggests that he "missed a substantial amount of classes" (SAC ¶ 165), but nowhere in the Second Amended Complaint does he allege that he missed any of those classes *because* of the alleged harassment he suffered, as opposed to for the numerous other reasons that students sometimes miss classes. Nor does Plaintiff allege that his absence from classes *increased* as a result of the alleged harassment. Although he claims that he received a lower than expected grade (B+) in a single course (Opp. at 14), Plaintiff effectively concedes that his grade point average was not significantly affected (*see* Moving Br. at 14).

As he did with the question of whether Ms. Sulkowicz's protests constituted actionable sexual harassment, Plaintiff also attempts to distinguish as "inapposite" certain cases cited in Defendants' moving brief. For example, Plaintiff asks the Court to disregard the decisions in *Hawkins* v. *Sarasota County School Board*, 322 F.3d 1279 (11th Cir. 2003), *Gabrielle M.* v. *Park Forest-Chicago Heights, Illinois School District 163*, 315 F.3d 817 (7th Cir. 2003), and *Spinka* v. *H.*, No. 14 Civ. 583, 2016 WL 1294593 (S.D. Ill. Mar. 31, 2016), on the purported basis that in each of those cases, the court found that there was no denial of access to education *because* "the school authorities took effective remedial action so as to prevent a systemic effect of denying equal access." (Opp. at 15.) The problem with Plaintiff's argument is that in none of those cases did the court suggest any connection between its finding that plaintiff was not denied educational opportunities and its completely separate finding that the school's

12

response was not clearly unreasonable.  In *Hawkins*, for example, the court based its dismissal of plaintiffs' Title IX claim *solely* on its finding that plaintiffs were not deprived of equal access to educational opportunities where there was "[n]o physical exclusion or denial of access to facilities" and "[n]one of the [plaintiffs] suffered a decline in grades."  322 F.3d at 1288–99 ("We have therefore decided . . . to rest our opinion on the denial of access issue.").  Plaintiff's attempts to distinguish *HB* v. *Monroe Woodbury Central School District*, No. 11 Civ. 5881, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012), and *K.S.* v. *Northwest Independent School District*, No. 13 Civ. 188, 2015 WL 9450853 (E.D. Tex. Dec. 1, 2015), are similarly misguided.  Plaintiff argues that *HB* is "very inapposite" because the court found that the harassment at issue was not motivated by plaintiff's gender.  (Opp. at 18.)  Plaintiff ignores, however, that the *HB* court separately analyzed whether the harassment deprived plaintiff of educational opportunities, and concluded that it did not, even though plaintiff's grades dropped and her performance on her soccer team declined.  *See* 2012 WL 4477552, at *17.  Although Plaintiff claims that *K.S.* is inapposite because the court in that case found that the school was not deliberately indifferent to plaintiff's complaints (Opp. at 18), the *K.S.* court separately concluded that plaintiff had not been denied access to educational opportunities based in part on the fact that his grades remained consistent with the grades he received at his prior school.  *See* 2015 WL 9450853, at *7–8.

Finally, Plaintiff directs the Court's attention to two decisions that he claims "are worth far more attention" (Opp. at 18), but in each case, the severity of the conduct complained of and the effect on the students' access to educational opportunities far exceeds anything alleged here.  In *Zeno* v. *Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012), for example, the plaintiff high school student was "taunted, harassed, menaced, and physically assaulted" for three-and-a-half years, called "a 'nigger' nearly every day," "received explicit threats as well as

implied threats, such as references to lynching," and was driven to leave the school without completing his education. *Id.* at 666–67. Similarly, in *Herndon* v. *College of Mainland*, No. G-06-0286, 2009 WL 367500 (S.D. Tex. Feb. 13, 2009), an African-American female student was the subject of "lurid, lewd, lascivious, primal and threatening" sexual comments, was repeatedly propositioned by male students even though she was married, and was called "'negative racial slurs' when she rejected their advances." *Id.* at *1. As a result, she suffered stress-related health issues that caused her grades to decline and ultimately caused her to withdraw from school. *See id.* at *26. Here, in contrast, Plaintiff was never physically assaulted, was not "taunted" or "menaced," was never subjected to any explicit sexual or racial comments, and was not forced to withdraw from school but instead graduated on time and in good standing. The dramatically different factual circumstances in *Zeno* and *Herndon* only further demonstrate the insufficiency of Plaintiff's Title IX allegations here.

### D.    Columbia's Response Was Not "Clearly Unreasonable"

The United States Supreme Court made it clear in *Davis* that "there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649. Here, Plaintiff does not dispute that Defendants made accommodations for him in response to his requests, including by issuing a no-contact order between Ms. Sulkowicz and Plaintiff. Instead, Plaintiff takes the untenable position that "Title IX imposes an obligation on [a] college to stop" student-on-student gender-based harassment. (Opp. at 23.) Such a requirement, however, would directly contradict the Supreme Court's decision in *Davis*, which makes it clear that school administrators are not required to effectively eliminate all peer harassment from their schools. *See Davis*, 526 U.S. at 648.

While Plaintiff does not dispute that most of his allegations of harassment concern speech and expression by Ms. Sulkowicz and other students regarding the handling of her case by Columbia and the broader issue of sexual assault on campus, and that the University needed to be mindful of the free speech rights of its students when responding to the alleged harassment, Plaintiff suggests that Ms. Sulkowicz's "words and actions labeling [Plaintiff] a 'rapist' and 'serial rapist' was not protected First Amendment expression," because "[a]ccusing a person" of rape "has been considered *defamatory* per se *and not constitutionally protected*." (Opp. at 22 (emphasis added).)  As the Court noted in its Order, however, Plaintiff's repeated use of the word "defamatory" in his brief is revealing. (*See* Order at 14.)  None of the cases he cites even addresses the issue of free speech in the university setting, much less suggests that a university must silence or otherwise punish any student who identifies his or her alleged rapist.  *See Thomas H.* v. *Paul B.*, 965 N.E.2d 939 (N.Y. 2012) (cited at Opp. 22); *Liberman* v. *Gelstein*, 605 N.E.2d 344 (N.Y. 1992) (cited at Opp. 22).  What those cases do suggest is that if an individual like Plaintiff believes that he has been falsely accused of rape, he has an obvious remedy at law—he can bring an action for defamation against his accusers.  That, of course, is what plaintiffs in the cases Plaintiff cites did, but it is not what Plaintiff has done here.  Instead, he has tried the legal equivalent of an "end run" around the proof required to establish such a claim by suing these Defendants instead.  *See Medcalf* v. *Walsh*, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013).

In any event, Plaintiff still does not allege that Ms. Sulkowicz's Mattress Project ever publicly identified Plaintiff as her alleged rapist.  Although he argues that the Mattress Project "was focused on [Plaintiff] and not on the subject of sexual misconduct generally" (Opp. at 21), numerous articles, including many that Plaintiff himself cites in the Second Amended

Complaint, make it clear that the Mattress Project was widely viewed as a form of protest against an epidemic of rape on college campuses.[5]   Such protests are plainly protected by the First Amendment, and it was not "clearly unreasonable" for the University to take into account its students' freedom of speech and right to protest.

These same considerations apply to Ms. Sulkowicz's visual arts pre-commencement art exhibit.  (Moving Br. at 20.)  While Plaintiff suggests—without citing any authority—that "the First Amendment protection given to 'art'" does not apply to "graphic presentations that identify a specific male as a rapist in fact after he has been cleared of the accusation" (Opp. at 24), the law does not recognize any such exception.  In any event, Plaintiff does not dispute that by the time of the exhibition, Ms. Sulkowicz's views about the University's handling of her complaint against Plaintiff had already become part of the larger public discourse, and that, by that point, Plaintiff *himself* had voluntarily spoken to the press about these issues.  (Moving Br. at 21.)

Plaintiff also does not dispute that the University has sole discretion over its academic decisions, including whether and when to give academic credit to a student.  (*Id.* at 21–22.)  While Plaintiff attempts to factually distinguish the many cases stating that courts should refrain from second guessing the on-the-scene decisions of professors and university

---

[5]   *See, e.g.*, Emma Bogler, *Emma Sulkowicz's Performance Art Draws Support From Campus Activists*, Columbia Spectator, Sept. 2, 2014, http://columbiaspectator.com/news/2014/09/02/emma-sulkowiczs-performance-art-draws-support-campus-activists; Ariel Kaminer, *Accusers and the Accused, Crossing Paths at Columbia University*, N.Y. Times, Dec. 21, 2014, http://www.nytimes.com/2014/12/22/nyregion/accusers-and-the-accused-crossing-paths-at-columbia.html (inspired by Ms. Sulkowicz, "students at more than 100 colleges carried their own mattresses (or pillows) to call attention to the problem of campus sexual assault").  Far from being unique, the Mattress Project is part of a growing movement of student activists across the country who are using performance and visual art projects to protest campus sexual assault.  *See e.g.,* Daily Pilot Staff, *Clothesline Project Airs Out Messages About Violent Crimes*, L.A. Times, Apr. 15, 2016, http://www.latimes.com/socal/daily-pilot/news/tn-dpt-me-0416-ivc-clothesline-20160415-story.html; Mary Ann Swissler, *Using Student-Made Films to Confront Campus Sexual Assault*, Women's Media Center, Nov. 6, 2013, http://www.womensmediacenter.com/feature/entry/using-student-made-films-to-confront-campus-sexual-assault; Tara Culp-Pressler, *Five Creative Ways That Students Are Fighting Rape Culture on College Campuses*, ThinkProgress, Oct. 9, 2013, http://thinkprogress.org/health/2013/10/09/2753931/creative-college-students-consent/.

administrators (Opp. at 25), he offers no reason why the deference accorded in those cases should not apply to Defendants here.  Plaintiff criticizes the University's attempts to prevent Ms. Sulkowicz from carrying her mattress to the Class Day ceremony as not "effective" (*id.* at 26), but he does not dispute that grabbing the mattress out of Ms. Sulkowicz's hands could have been dangerous given the space limitations and the size of the crowd, and would have disrupted the ceremony for everyone.  (Moving Br. at 22.)  And although Plaintiff argues that "[l]aw . . . imposes limits on academic freedom" (Opp. at 25), nothing in Title IX precludes a university from awarding academic credit for a performance art project highlighting the issue of sexual assault on campus and criticizing the university's response to a sexual assault claim.  Given these concerns, Columbia's decision not to engage in a disruptive physical altercation with Ms. Sulkowicz at the graduation ceremony, and its decision to award Ms. Sulkowicz academic credit for her senior thesis project, were not "clearly unreasonable" under the circumstances.

## II.      Plaintiff's State Law Claims Also Fail as a Matter of Law

Plaintiff's arguments in support of his state law claims are equally meritless.

### A.      Plaintiff Fails to State a Claim for Breach of Contract

Plaintiff does not dispute that his contract claim based on the University's gender-based harassment policy is indistinguishable from the claim he made in his previous complaint, which this Court rejected as "exactly the type of general policy statement that cannot form the basis for a breach of contract action" (Order at 19), and thus fails for the same reason (Moving Br. at 24).  The same is true of Plaintiff's contract claims based on alleged obligations to "treat complainants [] fairly and equally," and to "treat [Plaintiff] as innocent until proven guilty," which are also based on the sort of "general policy statements" that are insufficient to state a claim.  (*Id.* at 28–29.)  As for Plaintiff's contract theories based on alleged violations concerning confidentiality, retaliation, reporting and notification, Plaintiff simply does not—and cannot—

identify a specific contractual obligation that Columbia violated.  And Plaintiff does not dispute that his claim of breach based on the implied duty of good faith must be dismissed where (as here) it is based on the same facts as Plaintiff's other breach claims.  (*Id.* at 29–31.)[6]  Plaintiff also fails to allege any "specific implied contractual obligation" that Defendants purportedly breached.  *See JFK Family Ltd. P'ship* v. *Millbrae Natural Gas Dev. Fund 2005, L.P.*, No. 07 Civ. 10591, 2008 WL 4308289, at *24 (N.Y. Sup. Ct. Sept. 16, 2008).

### B.    Plaintiff's Other State Law Claims Also Fail

New York Human Rights Law.  Plaintiff does not dispute that if his Title IX claim fails (which it does, for the reasons discussed above), then his claims under New York Executive Law § 296(4) and § 296(6) must also fail for the same reason.  (Moving Br. at 23; Opp. at 26–27.)

GBL § 349.  Plaintiff does not dispute that to state a claim under GBL § 349, he must allege that Defendants' challenged acts were "consumer-oriented" and "have a broad impact on consumers at large."  (Moving Br. at 31.)  He simply asserts that "Columbia undergraduate and graduate students" constitute "a significant percentage of the population." (Opp. at 34 (citing SAC ¶ 261).)  Moreover, Plaintiff does not dispute that the only circumstance in which GBL § 349 has been applied in the educational context is where an entity that purported to be a "college" was in fact a sham, and thus "did not 'qualify as a college or institution of higher learning.'"  (Moving Br. at 32 (quoting *New York* v. *Colo. State Christian Coll. of Church of Inner Power, Inc.*, 346 N.Y.S.2d 482, 484 (N.Y. Sup. Ct. 1973)).)  Unlike that case, and others in which GBL § 349 applies, *see, e.g.*, *New York* v. *Trump Entrepreneur Initiative LLC*, 26

---

[6]   Plaintiff's argument that the "breach of good faith allegations are not intended to be duplicative" (Opp. at 33) is beside the point, since it is indisputable that his breach of duty of good faith theory is based on the same alleged facts and seeks the same damages as his other contract theories.  (*See, e.g.,* SAC ¶ 258 ("Columbia breached the implied duty of good faith by breaching its contractual obligations as detailed above[.]"); ¶ 259 (seeking same damages for duty of good faith claim as for other breach of contract claims).)

N.Y.S.3d 66, 69 (App. Div. 1st Dep't 2016), this is not a situation in which individuals who "enrolled" in what they believed at the time to be a legitimate educational institution were victimized by fraudulent advertising.

        <u>Intentional Infliction of Emotional Distress.</u>  Finally, Plaintiff does not dispute that the allegations in support of his claim for intentional infliction of emotional distress in the Second Amended Complaint are virtually identical to those in the Amended Complaint, and thus fail for the same reason.  (Moving Br. at 33–34; *compare* AC ¶¶ 276–77 *with* SAC ¶¶ 271–72.)

## **CONCLUSION**

        For these reasons, and those in Defendants' moving brief, Defendants respectfully request that the Court grant their motion to dismiss the Second Amended Complaint in its entirety, with prejudice.

Dated:  August 12, 2016

                Respectfully submitted,

                PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                By:             */s/ Roberta A. Kaplan*

                    Michele S. Hirshman
                    Roberta A. Kaplan
                    Darren W. Johnson
                    Caitlin E. Grusauskas

                    1285 Avenue of the Americas
                    New York, NY  10019-6064
                    Main: 212.373.3000
                    Fax: 212.757.3990
                    mhirshman@paulweiss.com
                    rkaplan@paulweiss.com
                    djohnson@paulweiss.com
                    cgrusauskas@paulweiss.com

                    *Attorneys for Columbia University, Trustees of Columbia University, Lee C. Bollinger, Jon Kessler, Tomas Vu-Daniel and Marianne Hirsch*